

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

NOV 3 0 2005

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 3:04-CR-240-G |
| | § | |
| HOLY LAND FOUNDATION FOR | § | |
| RELIEF AND DEVELOPMENT (1) | § | |
| also known as the "HLF" | § | Supersedes Indictment Returned On |
| SHUKRI ABU BAKER (2) | § | July 26, 2004 |
| MOHAMMAD EL-MEZAIN (3) | § | |
| GHASSAN ELASHI (4) | § | |
| HAITHAM MAGHAWRI (5) | § | |
| AKRAM MISHAL (6) | § | |
| MUFID ABDULQADER (7) | § | |
| ABDULRAHMAN ODEH (8) | § | |

## INDICTMENT

The Grand Jury Charges:

## INTRODUCTION

At all times material herein:

1. The Harakat al-Muqawamah al-Islamiyya is Arabic for "The Islamic Resistance

Movement" and is known by the acronym HAMAS. HAMAS, which is sometimes

referred to by its followers as "The Movement," is a terrorist organization based in the

West Bank and Gaza Strip (Gaza). HAMAS was founded in 1987 by Sheikh Ahmed

Yassin as an outgrowth of the Palestinian branch of the Muslim Brotherhood. The

Muslim Brotherhood is an international Islamic organization founded in Egypt in 1928

**Superseding Indictment - Page 1**

and is committed to the globalization of Islam through social engineering and violent *jihad* (holy war).  HAMAS' published charter states that HAMAS' purpose is to create an Islamic Palestinian state throughout Israel by eliminating the State of Israel through violent *jihad*.

2.  HAMAS achieves its goals through a military wing, known as the Izz el-Din al-Qassam Brigades, and a social wing, known as *Dawa* ("preaching" or "calling").  Although these two components have separate responsibilities, the organization operates seamlessly, with each component working to achieve the overall objectives of the terrorist group.

3.  HAMAS' military wing is responsible for carrying out suicide bombings and other terrorist attacks within Israel, the West Bank and Gaza.  These attacks have targeted civilians and have resulted in the death and injury of hundreds of individuals, including American citizens.  HAMAS' social wing operates as a social welfare agency, providing food, medical care and education to Palestinians in order to generate loyalty and support for the organization and its overall goals.  HAMAS supports religious and academic institutions that facilitate the teachings of HAMAS and introduce its radical and violent ideology at the earliest stages of spiritual and educational development.  This social engineering is critical to winning the hearts and minds of the Palestinian people and to creating a military and operational recruitment pool for HAMAS.  Additionally, HAMAS

rewards past terrorist acts, and provides incentive for future acts, by financially subsidizing family members of HAMAS operatives who are killed, injured or imprisoned, and ensuring that the families are revered in the community.

4. HAMAS' social services are, in large part, administered by local HAMAS affiliated zakat committees and other ostensibly charitable organizations. "Zakat," or "alms giving," is one of the pillars of Islam and is an act incumbent on all practicing Muslims. The membership of these committees and organizations consists of HAMAS members, operatives and activists. HAMAS' social infrastructure is supported by numerous financial sources located around the world, including individuals and entities in the United States. Additionally, due to HAMAS' substantial expenditures and the fungible nature of money, some of the money collected externally under humanitarian banners is routed to military and operational use, in addition to freeing up other funds for specific terrorist acts. Such uses include the provision of weapons, explosives, transportation services, safehouses, and job salaries for operatives.

5. HAMAS' Political Bureau sits above the social and military wings and serves as the highest ranking leadership body in the HAMAS organization. The Political Bureau is responsible for setting policies and guidelines regarding HAMAS' activities, including directing and coordinating terrorist acts. By design, several high-ranking members of the political bureau, such as  Khalid Mishal and Mousa Abu Marzook, have resided outside the West Bank and Gaza, and lived in such places as Jordan, Syria and the United States.

6. The International Emergency Economic Powers Act (IEEPA) confers upon the President the authority to deal with threats to the national security or foreign policy of the United States. On January 23, 1995, pursuant to this authority, the President issued Executive Order 12947, which declared a national emergency resulting from the grave acts of violence committed by foreign terrorists designed to disrupt the Middle East Peace Process. The Executive Order prohibits transactions, including financial transactions, with organizations and individuals named in the Annex to the Order or organizations and individuals declared to be Specially Designated Terrorists by the United States Department of Treasury pursuant to the criteria articulated in the Order. The Executive Order authorizes the Department of Treasury to block all property subject to United States jurisdiction in which there is any interest held by any organization or individual declared to be a Specially Designated Terrorist. Any United States person or entity who possesses any funds in which any interest is held by a Specially Designated Terrorist, must report such interest to the proper United States authorities. Any dealings in those funds after the designation date, or any attempt to avoid acknowledgment of the funds, is unlawful.

7. To implement Executive Order 12947, the United States Department of Treasury, through the Office of Foreign Assets Control, promulgated the Terrorism Sanctions Regulations, which are detailed at Title 31, Code of Federal Regulations, Section 595. Executive Order 12947 and the Terrorism Sanctions Regulations prohibit, among other things: (a) transferring, paying, exporting, withdrawing or otherwise dealing

in property or interests in property of a Specially Designated Terrorist that are in the United States, come within the United States, or come within the possession of or control of United States persons; (b) providing funds, goods or services to a Specially Designated Terrorist; © any transaction for the purpose of, or which has the effect of, evading or avoiding, or which facilitates the evasion or avoidance of the Terrorism Sanctions Regulations; (d) any conspiracy formed for the purpose of engaging in a prohibited transaction. A willful violation of any of these provisions is a criminal offense.

8. On January 25, 1995, HAMAS was designated as a Specially Designated Terrorist by the President in the Annex to Executive Order 12947. On August 29, 1995, former HAMAS Political Bureau Chief and current Deputy Chief Mousa Abu Marzook was designated as a Specially Designated Terrorist. On August 22, 2003, current HAMAS Political Bureau Chief Khalid Mishal was designated as a Specially Designated Global Terrorist  pursuant to Executive Order 13324. Executive Order 13324 was issued on September 23, 2001, pursuant to IEEPA, and prohibits transactions with organizations and individuals who, inter alia, commit, threaten to commit, or support certain acts of terrorism.

9. On October 8, 1997, by publication in the Federal Register, the United States Secretary of State designated HAMAS as a Foreign Terrorist Organization pursuant to Section 219 of the Immigration and Nationality Act (INA), as added by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).   Pursuant to the AEDPA, the

**Superseding Indictment - Page 5**

Secretary of State may designate a group as a Foreign Terrorist Organization if the group is (1) a foreign organization; (2) the organization engages in terrorist activity as defined by the INA; and, (3) the terrorist activity of the group threatens the national security of the United States. The AEDPA, and specifically 18 U.S.C. § 2339B, reflects Congress' recognition of the danger and design of terrorist movements such as HAMAS and, as a result, it is unlawful to provide material support and resources, to include currency or monetary instruments, financial services, personnel, transportation and other provisions, to any component of HAMAS.

10. The Muslim Brotherhood (HAMAS' parent organization) has maintained a presence in the United States since at least the early 1980s. During the times relevant to this Indictment, the Muslim Brotherhood in the United States had approximately ten to fifteen working committees, including a Palestinian Committee whose designed purpose was to support HAMAS. The Palestinian Committee had authority over several organizations, each with a specific purpose in its mandate to support HAMAS, such as propaganda, community relations and fundraising.

11. In or around 1988, shortly after the founding of HAMAS, **The Holy Land Foundation For Relief and Development** ("**HLF**") was created by, among others, the defendants **Shukri Abu-Baker, Mohammad El-Mezain** and **Ghassan Elashi,** to fulfill the fundraising component of the Palestinian Committee. From 1989 until 1992, the **HLF** was located in California and, until 1991, was known as the Occupied Land Fund

**Superseding Indictment - Page 6**

(hereinafter all references to the Occupied Land Fund will be as the **HLF**).  In 1992, the

**HLF** relocated to Richardson, Texas and became incorporated in Texas.  The **HLF**

represented itself to be a non-profit, tax exempt, charitable organization designed

primarily to assist needy individuals in the West Bank and Gaza.  In addition to the main

office in Richardson, Texas, the **HLF** maintained offices in New Jersey, California,

Illinois, Jerusalem, the West Bank and Gaza, and maintained a presence in other

locations, such as Lebanon and Jordan.

12.  The Islamic Association for Palestine (IAP) was the propaganda organization

of the Palestinian Committee.  It had offices in several cities throughout the United

States, including Dallas and Chicago.

13. The defendant **Shukri Abu Baker** was the President, Secretary and Chief

Executive Officer of the **HLF**.  The defendant **Shukri Abu Baker**'s brother is Jamal Abu

Baker, a.k.a Jamal Issa, the former HAMAS leader in the Sudan and the current HAMAS

leader in Yemen.

14.  The defendant **Mohammad El-Mezain** was the original Chairman of the

Board until in or about 1999, when he became Director of Endowments for the **HLF**.

The defendant **Mohammad El-Mezain** is a cousin of HAMAS Deputy Political Chief

and Specially Designated Terrorist Mousa Abu Marzook.

15.  The defendant **Ghassan Elashi** was the original Treasurer, and became the

Chairman of the Board of the **HLF** in 1999.  He was also an incorporator of the IAP.  The

defendant **Ghassan Elashi** is related by marriage to HAMAS Deputy Political Bureau Chief and Specially Designated Terrorist Mousa Abu Marzook.

16.  The defendant **Haitham Maghawri** was the Executive Director of the **HLF**.

17.  The defendant **Akram Mishal** was the Project and Grants Director for the **HLF**.  The defendant **Akram Mishal** is a cousin of HAMAS Political Bureau Chief and Specially Designated Global Terrorist Khalid Mishal.

18.  The defendant **Mufid Abdulqader** was a top fundraiser for the **HLF**.  The defendant **Mufid Abdulqader** is the half-brother of HAMAS Political Bureau Chief and Specially Designated Global Terrorist Khalid Mishal.

19.  The defendant **Abdulrahman Odeh** was the New Jersey representative of the **HLF**.

The HLF's Relationship with HAMAS

20.  During HAMAS' and the **HLF**'s beginnings, and in furtherance of their designed objective, the **HLF** provided significant financial resources to HAMAS leaders and key strategists.  In April 1988, prior to its incorporation, the **HLF** sent approximately $100,000 to HAMAS' future Political Bureau Chief Mousa Abu Marzook and his associates.  Additionally, from 1988 through 1989, the **HLF** wire transferred approximately $670,000 to an account held by the Islamic Center of Gaza, located in Gaza.  The Islamic Center of Gaza was established by HAMAS spiritual leader and founder Sheik Ahmed Yassin, and was used by him to coordinate and conduct HAMAS

**Superseding Indictment – Page 8**

activities. During the time that the funds were being transferred to the Islamic Center of Gaza from the **HLF**, Sheik Yassin was arrested and convicted in Israeli court for the kidnapping and murder of an Israeli soldier.

21. As previously described, the **HLF** was deeply involved with a network of Muslim Brotherhood organizations, including other organizations of the Palestinian Committee, such as the IAP, dedicated to furthering the radical violent agenda espoused by HAMAS. These organizations served in different capacities, such as propaganda development and distribution, banking, and creating fundraising forums through which the **HLF** and others raised money. Certain of these organizations, including the **HLF**, sponsored conventions, seminars, rallies and teleconferences in support of radical Islamic causes, including HAMAS. At these conventions, seminars, rallies and teleconferences, pro-HAMAS sheiks, Muslim Brotherhood members and HAMAS officials from overseas were employed to inflame the audience and enhance fundraising. The HLF paid for the travel to the United States of several of these speakers and HAMAS officials, including current HAMAS leader Mahmoud Zahar and former HAMAS spokesperson Jamil Hammami. At these events, participants, including the defendant **Mufid Abdulqader**, praised HAMAS through speeches, songs and violent dramatic skits depicting the killing of Jewish people.

**Superseding Indictment - Page 9**

22.   In October 1993, in response to a United States sponsored Middle East peace initiative between the Israeli government and the Palestinian Liberation Organization, known as the Oslo Accords, and other significant events, the principals of the **HLF** met with other members of the United States based Palestinian Committee in Philadelphia, Pennsylvania.  The purpose of the meeting was to determine their course of action in support of HAMAS' opposition to the peace plan and to decide how to conceal their activities from the scrutiny of the United States Government.  As noted in prior paragraphs, HAMAS is opposed to any peaceful solution to the Palestinian territorial conflict, as such a proposition is at odds with HAMAS' goal of annihilating the State of Israel and establishing an Islamic state in all of historic Palestine.  During the meeting, the defendants **Shukri Abu Baker, Ghassan Elashi** and **Haitham Maghawri,** and others known and unknown to the Grand Jury, expressed their support for "The Movement," (as previously stated, a term known to refer to HAMAS, whose full name is the Islamic Resistance Movement) and affirmed that the United States should be used as a fundraising platform to further "The Movement's" goals.  The attendees acknowledged the need to avoid scrutiny by law enforcement officials in the United States by masquerading their operations under the cloak of charitable exercise.  To that end, the attendees discussed the need to conceal their true motives and objectives by giving nominal amounts to other non-Palestinian charities.  The defendant **Shukri Abu Baker** reflected this understanding when he stated, "We can give $100,000 to the Islamists and

**Superseding Indictment - Page 10**

$5,000 to the others." The attendees noted the danger of attracting the terrorist perception, which would undoubtedly compromise their efforts in supporting the violent *jihad*.

23. In 1994, a dispute arose between the **HLF** and another HAMAS fundraising entity in the United States. Then HAMAS Political Chief Mousa Abu Marzook resolved the dispute and determined that the **HLF** would be the primary fund-raising organization for HAMAS in the United States.

24. One of the ways the **HLF** supported HAMAS was by subsidizing HAMAS' vital recruitment and reward efforts in the West Bank and Gaza. Although this financial initiative was spread broadly across the Palestinian population in order to promote HAMAS' appeal throughout the entire Palestinian community, those directly involved in furthering HAMAS' agenda were treated more favorably. In 1992, the Government of Israel deported over 400 members of HAMAS and other Islamic terrorist organizations to southern Lebanon in response to a surge in violence by HAMAS militants against Israeli soldiers, police and civilians. The **HLF** provided financial assistance to the deportees, and publically lauded itself for its response to the deportation. Deceased HAMAS leader Sheik Abdel Rantisi was one of the deportees whose family received financial assistance from the **HLF**.

25. In furtherance of HAMAS' goal of garnering the support of the Palestinian people, the **HLF** sponsored orphans and needy families in the West Bank and Gaza.

While the program was mantled with a benevolent appearance, the **HLF** specifically sought orphans and families whose relatives had died or were jailed as a result of furthering HAMAS' violent campaign, including suicide bombings.  This type of support was critical to HAMAS' efforts to win the hearts and minds of the Palestinian people and to create an infrastructure solidifying HAMAS' presence.

## COUNT ONE

Conspiracy to Provide Material Support to a Foreign Terrorist Organization -
(18 U.S.C. § 2339B(a)(1))

1. Paragraphs one (1) through twenty-six (26) of the Introduction to this Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2. Beginning from on or about October 8, 1997, and continuing until the date of the Indictment, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **Holy Land Foundation for Relief and Development (HLF), Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh**, and others known and unknown to the Grand Jury, knowingly conspired to provide material support and resources, as those terms are defined in Title 18, United States Code, Section 2339A(b), to wit, currency and monetary instruments, to HAMAS, a designated Foreign Terrorist Organization, in violation of Title 18, United States Code, Section 2339B(a)(1).

### MANNER AND MEANS OF THE CONSPIRACY

3. The defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** provided material support and resources to the designated Foreign Terrorist Organization HAMAS by raising funds in the United States and elsewhere, and sending those funds to organizations and programs in the West Bank and Gaza, and elsewhere,

**Superseding Indictment - Page 13**

which operated on behalf of, or under the control of, HAMAS.

4. In furtherance of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh**, participated in fundraising events at various forums, including conventions, services at mosques, seminars and other programs. The **HLF** sponsored speakers at these events whose mission was to raise funds for the **HLF**. Prior to the designation of HAMAS as a Foreign Terrorist Organization, the speakers sponsored by the **HLF** often praised the efforts of HAMAS and its violent activities against Israel, and encouraged financial support for those efforts. After HAMAS' designation, upon instruction by the **HLF**, the speakers changed tactics by using inflammatory language which was designed to support HAMAS and its violent activities without openly mentioning HAMAS. Some of the speakers sponsored by the **HLF** included founding HAMAS leaders, prominent HAMAS spokesmen and other speakers belonging to the Muslim Brotherhood. Furthermore, at some of the fund-raising events, the speakers, including the defendant **Mufid Abdulqader**, performed skits and songs which advocated the destruction of the State of Israel and glorified the killing of Jewish people.

5. In furtherance of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** provided financial support to the families of

**Superseding Indictment - Page 14**

HAMAS "martyrs", detainees and activists knowing and intending that such assistance would support HAMAS' terrorist infrastructure. In screening potential aid recipients and in providing funds, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** distinguished between needy Palestinian families generally, and those Palestinian families who had a relative "martyred" or jailed as a result of terrorist activities. In some cases, the defendants specifically targeted families for financial aid who were related to known HAMAS terrorists who had been killed or jailed by the Israelis. In this manner, the defendants effectively rewarded past, and encouraged future, suicide bombings and terrorist activities on behalf of HAMAS.

6. In furtherance of the conspiracy, and in order to conceal the existence of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh**, took several steps which were inconsistent with the activities of a legitimate charity. The defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** in following counter-surveillance measures outlined in a manual they possessed entitled "The Foundation's Policies and Procedures," did the following, among others: retained the services of a security company to search the premises of the **HLF** for listening devices; directed the defendant **Haitham Maghawri** to take training

Superseding Indictment - Page 15

on advanced methods in the detection of wiretaps; shredded documents; maintained incriminating documents at off-site locations, including on the premises of Infocom, a related entity of which the defendant **Ghassan Elashi** was an officer and HAMAS leader Mousa Abu Marzook was a major investor; the defendants **Shukri Abu Baker** and **Akram Mishal** traveled overseas while falsely posing as Infocom employees; and in conversations between themselves and others, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** often spoke in code in order to conceal the true nature of their conversation.

7. In order to provide the **HLF** with a cloak of legitimacy and to conceal its relationship to HAMAS, the defendant **Shukri Abu Baker** discussed with the defendant **Ghassan Elashi** and others, the need to provide minimal support to legitimate charitable causes. In furtherance of the conspiracy, and in order to conceal the existence of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** carried out this plan, while providing a substantial amount of their financial assistance to organizations and programs, which operated on behalf of, or under the control of, HAMAS, and to families of HAMAS "martyrs", detainees and others.

8. In furtherance of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid**

**Abdulqader** and **Abdulrahman Odeh** maintained information on the arrest and prosecution of HAMAS activists in Israel, the West Bank and Gaza, including individuals who were members of the zakat committees to which the **HLF** sent money.

9. In furtherance of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** wire transferred and caused to be wire transferred money from the **HLF** bank accounts in the Northern District of Texas, to zakat committees, and other organizations and programs, located in the West Bank and Gaza, and elsewhere, which were acting on behalf of, or under the control of, HAMAS.

10. In furtherance of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** wire transferred money from the **HLF** bank accounts in the Northern District of Texas, to the **HLF** offices in the West Bank and Gaza, and elsewhere, for further distribution to zakat committees, and other organizations and programs, located in the West Bank and Gaza, and elsewhere, which were acting on behalf of, or under the control of, HAMAS, as well as for direct payment to individuals whom the **HLF** supported on behalf of HAMAS, including the family members of "martyrs" and prisoners.

<u>OVERT ACTS (1) - (11)</u>

11. In furtherance of the conspiracy and to accomplish its purposes, on or about

**Superseding Indictment - Page 17**

the dates listed below, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** committed the following overt acts, among others, by issuing and causing to be issued wire transfers in the amounts indicated, among others, to be sent from the **HLF** bank accounts in the Northern District of Texas to the following organizations, which operated on behalf of, or under the control of, HAMAS:

| Overt Act | Date | Amount | Organization |
|-----------|------|--------|--------------|
| (1) | 11/7/97 | $9,691 | Qalqilia Zakat Committee |
| (2) | 1/6/98 | $50,000 | Dar El-Salam Hospital |
| (3) | 1/26/98 | $95,000 | Islamic Charity Society of Hebron |
| (4) | 3/27/98 | $7,218 | Tolkarem Zakat Committee |
| (5) | 3/27/98 | $11,773 | Nablus Zakat Committee |
| (6) | 1/12/99 | $50,000 | Islamic Charity Society of Hebron |
| (7) | 7/8/99 | $5,306 | Tolkarem Zakat Committee |
| (8) | 12/21/99 | $8,199 | Halhoul Zakat Committee |
| (9) | 4/11/00 | $12,604 | Ramallah Zakat Committee |
| (10) | 11/30/00 | $50,000 | Dar El-Salam Hospital |
| (11) | 6/14/01 | $40,586 | Jenin Zakat Committee |

## OVERT ACTS (12) - (17)

12. In furtherance of the conspiracy and to accomplish its purposes, on or about

**Superseding Indictment - Page 18**

the dates listed below, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain,  Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** committed the following overt acts, among others, by issuing and causing to be issued wire transfers in the amounts indicated, among others, to be sent from the **HLF** bank accounts in the Northern District of Texas to the **HLF** offices in the West Bank and Gaza, which were then further distributed to, among others, zakat committees and other organizations, and to family members of individuals who were either "martyred" or jailed for terrorist related activities:

| Overt Act | Date | Amount |
|-----------|------|--------|
| (12) | 11/24/98 | $47,376 |
| (13) | 12/21/99 | $117,506 |
| (14) | 11/20/00 | $200,000 |
| (15) | 12/7/00 | $220,660 |
| (16) | 3/8/01 | $374,755 |
| (17) | 6/11/01 | $192,403 |

In violation of Title 18, United States Code, Section 2339B(a)(1).

**Superseding Indictment - Page 19**                    -19-

## COUNTS TWO THROUGH TWELVE

Providing Material Support to a Foreign Terrorist Organization -
(18 U.S.C. § 2339B(a)(1))

1. Paragraphs one (1) through twenty-six (26) of the Introduction to this Indictment and paragraphs three (3) through ten (10) of Count One are hereby re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates set forth below, for each count below, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh**, aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly provide and attempt to provide material support and resources, as those terms are defined in Title 18, United States Code, Section 2339A(b), to wit, currency and monetary instruments, to HAMAS, a designated Foreign Terrorist Organization, by issuing and causing to be issued wire transfers in the amounts indicated, from the defendant **HLF** bank accounts in the Northern District of Texas, to the following organizations, which operated on behalf of, or under the control of, HAMAS:

| Count | Date | Amount | Organization |
|-------|------|--------|--------------|
| 2 | 8/18/98 | $11,962 | Ramallah Zakat Committee |
| 3 | 8/21/98 | $24,211 | Islamic Charity Society of Hebron |
| 4 | 12/31/98 | $8,389 | Jenin Zakat Committee |

**Superseding Indictment - Page 20**

| 5 | 5/21/99 | $12,115 | Ramallah Zakat Committee |
| 6 | 10/13/99 | $25,000 | Islamic Charity Society of Hebron |
| 7 | 12/10/99 | $10,152 | Jenin Zakat Committee |
| 8 | 12/30/99 | $50,000 | Dar El-Salam Hospital |
| 9 | 4/11/00 | $10,711 | Nablus Zakat Committee |
| 10 | 4/11/00 | $7,417 | Qalqilia Zakat Committee |
| 11 | 11/30/00 | $50,000 | Dar El-Salam Hospital |
| 12 | 1/17/01 | $16,674 | Nablus Zakat Committee |

In violation of Title 18, United States Code, Sections 2339B(a)(1) and 2.

## COUNT THIRTEEN

Conspiracy to Provide Funds, Goods and Services to a Specially Designated Terrorist -
(50 U.S.C. §§ 1701-1706)

1. Paragraphs one (1) through twenty-six (26) of the Introduction to this Indictment and three (3) through ten (10) of Count One are hereby re-alleged and incorporated by reference as though fully set forth herein.

2. Beginning from on or about January 25, 1995, and continuing until the date of the Indictment, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh,** and others known and unknown to the Grand Jury, knowingly and willfully conspired, confederated and agreed to violate Executive Order 12947, by contributing funds, goods and services to, and for the benefit of, a Specially Designated Terrorist, namely HAMAS, in violation of Title 50, United States Code, Sections 1701 through 1706, and Title 31, Code of Federal Regulations, Section 595.201 *et. seq.*

### MANNER AND MEANS OF THE CONSPIRACY

3. In furtherance of the conspiracy, on or about January 25, 1995, and continuing until the date of this Indictment, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain,  Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** made regular monetary payments to zakat committees and individuals located in the West Bank and Gaza, and elsewhere, who were acting on behalf

**Superseding Indictment - Page 22**

of, or under the control of, a Specially Designated Terrorist, namely HAMAS.

OVERT ACTS

4.  In furtherance of the conspiracy, and in order to accomplish its purposes, on or about the dates listed below, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** committed the following overt acts, among others, by contributing funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, to wit, by issuing and causing to be issued wire transfers in the amounts indicated, among others, from the **HLF** bank accounts in the Northern District of Texas, to the following organizations, which operated on behalf of, or under the control of, HAMAS:

| Overt Act | Date | Amount | Organization |
|-----------|------|--------|--------------|
| (1) | 4/3/95 | $30,000 | Islamic Charity Society of Hebron |
| (2) | 5/3/95 | $100,000 | Dar El-Salam Hospital |
| (3) | 4/22/96 | $9,758 | Islamic Science & Culture Com. |
| (4) | 11/20/96 | $8,434 | Islamic Charity Society of Hebron |
| (5) | 2/21/97 | $50,000 | Dar El-Salam Hospital |
| (6) | 8/5/97 | $34,563 | Ramallah Zakat Committee |
| (7) | 11/7/97 | $10,690 | Nablus Zakat Committee |
| (8) | 3/27/98 | $4,896 | Halhul Zakat Committee |

**Superseding Indictment – Page 23**

| (9)  | 3/27/98  | $12,179 | Qalqilia Zakat Committee          |
|------|----------|---------|-----------------------------------|
| (10) | 4/3/98   | $24,173 | Jenin Zakat Committee             |
| (11) | 6/26/98  | $75,000 | Islamic Charity Society of Hebron |
| (12) | 1/20/99  | $10,100 | Ramallah Zakat Committee          |
| (13) | 2/16/99  | $20,000 | Islamic Charity Society of Hebron |
| (14) | 3/3/99   | $38,385 | Islamic Charity Society of Hebron |
| (15) | 12/14/99 | $17,996 | Ramallah Zakat Committee          |
| (16) | 6/3/99   | $8,406  | Jenin Zakat Committee             |
| (17) | 1/17/01  | $11,450 | Tolkarem Zakat Committee          |

In violation of Title 50, United States Code, Sections 1701 through 1706 and Title 31, Code of Federal Regulations, Section 595.201 *et. seq.*

## COUNTS FOURTEEN THROUGH TWENTY-FIVE

Providing Funds, Goods and Services to a Specially Designated Terrorist -
(50 U.S.C. §§ 1701-1706)

1. Paragraphs one (1) through twenty-six (26) of the Introduction to this Indictment; paragraphs three (3) through ten (10) of Count One; and paragraph three (3) of Count Thirteen are hereby re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates listed below, for each count below, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh**, aided and abetted by each other and others known and unknown to the Grand Jury, willfully contributed funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, by issuing and causing to be issued wire transfers in the amounts indicated, from the **HLF** bank accounts in the Northern District of Texas, to the following organizations, which operated on behalf of, or under the control of, HAMAS:

| Count | Date | Amount | Organization |
|-------|------|--------|--------------|
| 14 | 10/20/98 | $12,342 | Ramallah Zakat Committee |
| 15 | 12/31/98 | $50,000 | Islamic Charity Society of Hebron |
| 16 | 12/31/98 | $11,138 | Nablus Zakat Committee |
| 17 | 5/21/99 | $4,230 | Halhul Zakat Committee |

**Superseding Indictment - Page 25**

| 18 | 6/3/99 | $8,408 | Jenin Zakat Committee |
| 19 | 9/23/99 | $12,308 | Ramallah Zakat Committee |
| 20 | 9/23/99 | $36,066 | Islamic Charity Society of Hebron |
| 21 | 12/13/99 | $8,049 | Tolkarem Zakat Committee |
| 22 | 12/14/99 | $12,570 | Nablus Zakat Committee |
| 23 | 4/27/00 | $20,500 | Dar El Salam Hospital |
| 24 | 1/17/01 | $10,494 | Qalqilia Zakat Committee |
| 25 | 6/11/01 | $6,225 | Qalqilia Zakat Committee |

In violation of Title 50, United States Code, Sections 1701 through 1706; Title 31, Code of Federal Regulations, Section 595.201 et. seq.; and Title 18, United States Code, Section 2.

## COUNT TWENTY-SIX

Conspiracy to Commit Money Laundering -
(18 U.S.C. § 1956(h))

1. The allegations of paragraphs one (1) through twenty-six (26) of the Introduction to this Indictment; paragraphs three (3) through ten (10) of Count One; and paragraph three (3) of Count Thirteen are hereby re-alleged and incorporated by reference as though fully set forth herein.

2. Beginning from on or about January 25, 1995, and continuing until the date of the Indictment, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** and others known and unknown to the Grand Jury, in offenses involving interstate and foreign commerce, transmitted and transferred, and attempted to transmit and transfer, funds from a place within the United States, namely the Northern District of Texas, to places outside the United States, including the West Bank and Gaza, and elsewhere, with the intent to promote the carrying on of a specified unlawful activity, to wit, by contributing funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, in violation of Title 50, United States Code, Sections 1701 through 1706 (IEEPA), and punishable under Section 206 of IEEPA (also known as Title 50, United States Code, Section 1705(b)).

3. In furtherance of the conspiracy, between January 25, 1995, through December

**Superseding Indictment - Page 27**

4, 2001, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** transmitted and caused to be transmitted and transferred at least $12,400,000 to various organizations and programs, which operated on behalf of, or under the control of, HAMAS.

OVERT ACTS

4.  In furtherance of the conspiracy, and in order to accomplish its purposes, on or about the dates listed below, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** committed the following overt acts, among others, by contributing funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, by issuing and causing to be issued wire transfers in the amounts indicated, among others, from the **HLF** bank accounts in the Northern District of Texas, to the following organizations located within the West Bank and Gaza, which operated on behalf of, or under the control of, HAMAS:

| Overt Act | Date | Amount | Organization |
| --- | --- | --- | --- |
| (1) | 4/3/95 | $30,000 | Islamic Charity Society of Hebron |
| (2) | 5/3/95 | $100,000 | Dar El-Salam Hospital |
| (3) | 4/22/96 | $9,758 | Islamic Science & Culture Com. |
| (4) | 11/20/96 | $8,434 | Islamic Charity Society of Hebron |

**Superseding Indictment - Page 28**

| (5)  | 2/21/97  | $50,000  | Dar El-Salam Hospital             |
|------|----------|----------|-----------------------------------|
| (6)  | 8/5/97   | $34,563  | Ramallah Zakat Committee          |
| (7)  | 11/7/97  | $10,690  | Nablus Zakat Committee            |
| (8)  | 3/27/98  | $4,896   | Halhul Zakat Committee            |
| (9)  | 3/27/98  | $12,179  | Qalqilia Zakat Committee          |
| (10) | 4/3/98   | $24,173  | Jenin Zakat Committee             |
| (11) | 6/26/98  | $75,000  | Islamic Charity Society of Hebron |
| (12) | 1/20/99  | $10,100  | Ramallah Zakat Committee          |
| (13) | 3/3/99   | $38,385  | Islamic Charity Society of Hebron |
| (14) | 12/14/99 | $17,996  | Ramallah Zakat Committee          |
| (15) | 4/11/00  | $8,409   | Jenin Zakat Committee             |
| (16) | 1/17/01  | $11,450  | Tolkarem Zakat Committee          |

In violation of Title 18, United States Code, Section 1956(h).

## COUNTS TWENTY-SEVEN THROUGH THIRTY-EIGHT

Money Laundering -
(18 U.S.C. § 1956(a)(2)(A))

1. The allegations of paragraphs one (1) through twenty-six (26) of the Introduction to this Indictment; paragraphs three (3) through ten (10) of Count One; and paragraph three (3) of Count Thirteen are hereby re-alleged and incorporated by reference as though fully set forth herein.

2. On or about each of the dates set forth below, for each count below, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh**, aided and abetted by each other and others known and unknown to the Grand Jury, in offenses involving interstate and foreign commerce, transmitted and transferred, and attempted to transmit and transfer, funds in the amounts indicated, from a place within the United States, namely the Northern District of Texas, to places outside the United States, including the West Bank and Gaza, and elsewhere, with the intent to promote the carrying on of a specified unlawful activity, to wit, by willfully contributing funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, in violation of Title 50, United States Code, Sections 1701 through 1706 (IEEPA), and punishable under Section 206 of IEEPA (also known as Title 50, United States Code, Section 1705(b)):

| Count | Date | Amount | Organization |
|---|---|---|---|
| 27 | 10/20/98 | $12,342 | Ramallah Zakat Committee |
| 28 | 12/31/98 | $50,000 | Islamic Charity Society of Hebron |
| 29 | 12/31/98 | $11,138 | Nablus Zakat Committee |
| 30 | 5/21/99 | $4,230 | Halhul Zakat Committee |
| 31 | 6/3/99 | $8,408 | Jenin Zakat Committee |
| 32 | 9/23/99 | $12,308 | Ramallah Zakat Committee |
| 33 | 9/23/99 | $36,066 | Islamic Charity Society of Hebron |
| 34 | 12/13/99 | $8,049 | Tolkarem Zakat Committee |
| 35 | 12/14/99 | $12,570 | Nablus Zakat Committee |
| 36 | 4/27/00 | $20,500 | Dar El Salam Hospital |
| 37 | 1/17/01 | $10,494 | Qalqilia Zakat Committee |
| 38 | 6/11/01 | $6,225 | Qalqilia Zakat Committee |

In violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

## COUNT THIRTY-NINE

Conspiracy to Impede and Impair the Internal Revenue Service and
to File False Return of Organization Exempt from Income Tax -
(18 U.S.C. § 371)

1. The allegations of paragraphs one (1) through twenty-six (26) of the Introduction to this Indictment; paragraphs three (3) through ten (10) of Count One; paragraph three (3) of Count Thirteen; and paragraphs one (1) and two (2) of the Introduction to this Count are hereby re-alleged and incorporated by reference as though fully set forth herein.

2. Section 501(c)(3) of the Internal Revenue Code grants authorized charitable organizations tax exempt status, which exempts them from having to pay any income tax on the donations they receive. The organizations are required to file an annual informational return, Form 990, entitled "Return of Organization Exempt from Income Tax," with the Internal Revenue Service. In that form, the organization must report the amount of their donations and how those donations are distributed. The return is signed under the penalty of perjury.

3. In September 1989, the defendant **Ghassan Elashi** filed an application with the Internal Revenue Service to obtain tax exempt status for the **HLF** pursuant to Section 501(c)(3) of the Internal Revenue Code. Tax exempt status was conferred on the **HLF** in January 1990.

**Superseding Indictment - Page 32**

4. In or around and between January 1990 and continuing until the date of the Indictment, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **Shukri Abu Baker** and **Ghassan Elashi**, and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate and agree together with themselves and others

a. to defraud the United States of America and the Internal Revenue Service ("IRS"), an agency thereof, by impeding, impairing, defeating and obstructing the lawful governmental functions of the IRS in the ascertainment, evaluation, assessment and collection of corporate income taxes, in violation of Title 18, United States Code, Section 371; and

b. to willfully make and subscribe, and aid and assist in the preparation and presentation of, United States Returns of Organization Exempt from Income Tax, Form 990, which were verified by written declarations that they were made under the penalties of perjury and were filed with the IRS, which returns they did not believe to be true and correct as to every material matter in that the returns reported payments to Program Services when in fact the payments were going to HAMAS, in violation of Title 26, United States Code, Section 7206(1).

## MANNERS AND MEANS OF THE CONSPIRACY

5. In furtherance of the conspiracy, between 1992 and 2001, the HLF received over $57,000,000 in contributions, gifts and grants.

6.  In furtherance of the conspiracy, between 1992 and 2001, the defendants **Shukri Abu Baker** and **Ghassan Elashi** reported approximately $36,230,891 on Line 13 of the HLF's "Returns of Organization Exempt from Income Tax"(Form 990), as payments to Program Services, which the HLF ostensibly distributed as grants to various legitimate projects, including assistance to non-profit medical/dental clinics, orphanages, schools, refugee camps and community centers overseas, when in fact the donations were distributed to individuals and programs associated with, and organizations operating on behalf of, or under the control of, HAMAS, a terrorist organization.

## OVERT ACTS

7.  In furtherance of the conspiracy, and in order to accomplish its purposes, on or about the dates listed below, the defendants **Shukri Abu Baker** and **Ghassan Elashi** committed the following overt acts, among others, by signing and filing the following false Returns of Organization Exempt from Income Tax, Form 990, with the Internal Revenue Service:

| Overt Act | Year | Date Filed |
|-----------|------|------------|
| (1) | 1995 | 8/19/96 |
| (2) | 1996 | 8/18/97 |
| (3) | 1997 | 4/13/98 |
| (4) | 1998 | 3/11/99 |

**Superseding Indictment - Page 34**

| (5) | 1999 | 5/8/00 |
|-----|------|--------|
| (6) | 2000 | 8/7/01 |

In violation of Title 18, United States Code, Section 371.

## COUNTS FORTY THROUGH FORTY-TWO

Filing False Returns of Organization Exempt from Income Tax -
(26 U.S.C. § 7206(1))

1. The allegations of paragraphs one (1) through twenty-six (26) of the Introduction to this Indictment; paragraphs three (3) through ten (10) of Count One; paragraph three (3) of Count Thirteen; paragraphs one (1) and two (2) of the Introduction to Count Thirty-Nine; and paragraphs five (5) and six (6) of Count Thirty-Nine are hereby re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates specified below, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants as listed below, did knowingly and willfully make and subscribe United States Returns of Organizations Exempt from Income Tax, Form 990, for the **HLF,** for the years listed below, which were verified by written declarations that they were made under the penalties of perjury and were filed with the Internal Revenue Service, which informational tax returns each defendant did not believe to be true and correct as to every material matter in that the returns reported payments to Program Services on Line 13 of said returns, whereas each defendant then and there well knew and believed the payments were not used for program services as required by their 501(c)(3) status:

| Count | Year | Date filed | Defendant |
|-------|------|------------|-----------|
| 40 | 1998 | 3/11/99 | **Shukri Abu Baker** |
| 41 | 1999 | 5/8/00 | **Ghassan Elashi** |

**Superseding Indictment - Page 36**

| 42 | 2000 | 8/7/01 | **Ghassan Elashi** |

In violation of Title 26, United States Code, Section 7206(1).

## FORFEITURE

As a result of committing one or more of the money laundering or monetary transaction offenses in violation of Title 18, United States Code, Section 1956, alleged in Counts Twenty-Six through Thirty-Eight of this Indictment, the defendants, as listed below, shall forfeit to the United States of America, all property, real and personal, involved in the money laundering or monetary transaction offenses, and all property traceable to such property, including but not limited to the following:

Defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** shall forfeit at least $12,400,000 in United States currency. That sum represents a portion of the sum of monies sent from a place within the United States, namely the Northern District of Texas, to places outside the United States, including the West Bank and Gaza and other places, as well as monies that were destined for places outside the United States, with the intent to promote the carrying on of a specified unlawful activity, to wit, willfully contributing funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, as set forth in Counts Thirteen through Thirty-Eight, for which the defendants are jointly and severally liable.

By virtue of the commission of one or more of the felony offenses charged in Counts Twenty-Six through Thirty-Eight of this Indictment by the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri,**

**Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh,** any and all interests which the defendants have in the above described sums are vested in the United States and are hereby forfeited to the United States pursuant to Title 18, United States Code, Section 982(a)(1).

In the event that any property, real or personal, involved in the offenses and described in Counts Twenty-Six through Thirty-Eight of this Indictment, or any property traceable to such property, as a result of any act or omission of the defendants:

      (1)    cannot be located upon exercise of due diligence;

      (2)    has been transferred or sold to, or deposited with a third party;

      (3)    has been placed beyond the jurisdiction of the court;

      (4)    has been substantially diminished in value; or

      (5)    has been co-mingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section
982(b)(1) to seek forfeiture of any other property of said defendants up to the value of the
above property.

# REDACTED

_____
FOREPERSON

RICHARD B. ROPER
United States Attorney

_____
JAMES T. JACKS
First Assistant United States Attorney
1100 Commerce St., Third Floor
Dallas, Texas 75242
214.659.8600
214.767.2846 (Facsimile)
Texas State Bar No. 10449500

_____
NATHAN F. GARRETT
Special Assistant United States Attorney
1100 Commerce St., Third Floor
Dallas, Texas 75242
214.659.8600
214.767.2846 (Facsimile)
Missouri State Bar No. 46500

_____
BARRY JONAS
Trial Attorney
Department of Justice,
Counter-terrorism Section
950 Pennsylvania Ave.
Washington, D.C. 20530
214.659.8600
214.767.2846 (Facsimile)
New York State Bar No. 2307734

_____
ELIZABETH J. SHAPIRO
Trial Attorney
Department of Justice
20 Massachusetts Ave.
Washington, D.C. 20530
214.659.8600
214.767.2846 (Facsimile)
Washington, DC Bar. No. 418925

**Superseding Indictment - Page 40**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS  DIVISION

THE UNITED STATES OF AMERICA

v.



HOLY LAND FOUNDATION FOR
RELIEF AND DEVELOPMENT (1)
aka "the HLF"
SHUKRI ABU BAKER (2)
MOHAMMAD EL-MEZAIN (3)
GHASSAN ELASHI (4)
HAITHAM MAGHAWRI (5)
AKRAM MISHAL (6)
MUFID ABDULQADER (7)
ABDULRAHMAN ODEH (8)

## SUPERSEDING INDICTMENT

Conspiracy to Provide Material Support to a Foreign Terrorist Organization
18 U.S.C. § 2339B(a)(1)

Providing Material Support to a Foreign Terrorist Organization
18 U.S.C. § 2339B(a)(1)

Conspiracy to Provide Funds, Goods and Services to a Specially Designated Terrorist
50 U.S.C. §§ 1701-1706

Providing Funds, Goods and Services to a Specially Designated Terrorist
50 U.S.C. §§ 1701-1706

Conspiracy to Commit Money Laundering
18 U.S.C. § 1956(h)

Money Laundering
18 U.S.C. § 1956(a)(2)(A)

Conspiracy to Impede and Impair the Internal Revenue Service and
to File False Return of Organization Exempt from Income Tax
18 U.S.C. § 371

Filing False Returns of Organization Exempt from Income Tax
26 U.S.C. § 7206(1)

Forfeiture
18 U.S.C. § 982(a)(1)
and 982(b)(1)

( 42  Counts )

A true bill rendered:

-------------- **REDACTED** ---------------------
DALLAS                                  OREPERSON

Filed in open court this 20 day of November A.D. 2005

---------------------------------------------------------------------------------
                                                                          Clerk

Holy Land Foundation for Relief and Development (also known as the HLF) on Bond
Shukri Abu Baker on Bond
Mohammad El-Mezain on Bond
Ghassan Elashi on Bond
Haitham Maghawri on Bond
Akram Mishal on Bond
Mufid Abdulqader on Bond
Abdulrahman Odeh on Bond
-----------------------------------------------------------------------------------------
UNITED STATES DISTRICT JUDGE/MAGISTRATE JUDGE
Criminal No. 3:04-CR-240-G

*Criminal Case Cover Sheet*                                        Revised 3/5/98

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

*ORIGINAL*

| Related Case Information | |
|---|---|
| Superseding Indictment: [x] Yes [ ] No   New Defendant: [ ] Yes [x] No | |
| Pending CR Case in NDTX: [x] Yes [ ] No  If Yes, number: 3:04-CR-240-G | |
| Search Warrant Case Number _____ | |
| R 20 from District of _____ | |
| Magistrate Case Number _____ | |

## 1. Defendant Information

Juvenile: [ ] Yes [X] No

If Yes, Matter to be sealed:

[ ] Yes   [ ] No

Defendant Name   Holy Land Foundation for Relief and Development

Alias Name   _____

Address   _____

_____

County in which offense was committed:   _____

## 2. U.S. Attorney Information

AUSA Nathan Garrett/Jim Jacks          Bar #   MO Bar No. 46500

## 3. Interpreter

[ ] Yes [x] No   If Yes, list language and/or dialect: _____

## 4. Location Status

Arrest Date On Bond

[ ] Already in Federal Custody as of ___ in _____
[ ] Already in State Custody
[ ] On Pretrial Release

RECEIVED

NOV 3 0 2005

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## 5. U.S.C. Citations

Total # of Counts as to This Defendant: __38__ [ ] Petty [ ] Misdemeanor [X] Felony

| Citation | Description of Offense Charged | Count(s) |
|---|---|---|
| 18 U.S.C. § 2339B(a)(1) | Conspiracy to Provide Material Support to a Foreign Terrorist Organization | 1 |
| 18 U.S.C. § 2339B(a)(1) | Providing Material Support to a Foreign Terrorist Organization | 2-12 |
| 50 U.S.C. §§ 1701-1706 | Conspiracy to Provide Funds, Goods and Services to a Specially Designated Terrorist | 13 |

| 50 U.S.C. §§ 1701-1706 | Providing Funds, Good and Services to a Specially Designated Terrorist | 14-25 |
| 18 U.S.C. § 1956(h) | Conspiracy to Commit Money Laundering | 26 |
| 18 U.S.C. § 1956(a)(2)(A) | Money Laundering | 27-38 |
| 18 U.S.C. § 982(a)(1) and 982(b)(1) | Forfeiture | |

Date  11/29/05        Signature of AUSA: _____

NATHAN GARRETT

*Criminal Case Cover Sheet*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

ORIGINAL

**Related Case Information**

Superseding Indictment: ☐ Yes ☒ No   New Defendant: ☒ Yes ☐ No

Pending CR Case in NDTX: ☒ Yes ☐ No   If Yes, number: ~~Misc. 972~~

Mo. To Compel Pending w/Solis

Search Warrant Case Number _____

R 20 from District of _____

Magistrate Case Number _____

## 1. Defendant Information

Juvenile: ☐ Yes ☒ No

If Yes, Matter to be sealed:

☐ Yes   ☐ No

Defendant Name   Shukri Abu Baker

Alias Name   _____

Address   _____

County in which offense was committed: _____

## 2. U.S. Attorney Information

AUSA Nathan Garrett                    Bar #   MO Bar No. 46500

## 3. Interpreter

☐ Yes ☒ No   If Yes, list language and/or dialect: _____

## 4. Location Status

Arrest Date _____

☐ Already in Federal Custody as of ____ in _____
☐ Already in State Custody
☐ On Pretrial Release

RECEIVED
NOV 3 0 2005
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## 5. U.S.C. Citations

Total # of Counts as to This Defendant: 40   ☐ Petty   ☐ Misdemeanor   ☒ Felony

| Citation | Description of Offense Charged | Count(s) |
|---|---|---|
| 18 U.S.C. § 2339B(a)(1) | Conspiracy to Provide Material Support to a Terrorist Organization | 1 |
| 18 U.S.C. § 2339B(a)(1) | Providing Material Support to a Terrorist Organization | 2-12 |
| 50 U.S.C. §§ 1701-1706; | Conspiracy to Deal in the Property of a Specially Designated Terrorist | 13 |

| 50 U.S.C. §§ 1701-1706 | Dealing in the Property of a Specially Designated Terrorist | 14-25 |
| 18 U.S.C. § 1956(h) | Conspiracy to Commit Money Laundering | 26 |
| 18 U.S.C. § 1956(a)(2)(A) | Money Laundering | 27-38 |
| 18 U.S.C. § 371 | Conspiracy to Impede and Impair the Internal Revenue Service and to File False Return of Organization Exempt from Income Tax | 39 |
| 26 U.S.C. § 7206(1) | Filing False Returns of Organization Exempt from Income Tax | 40 |
| 18 U.S.C. § 982(a)(1) and 982(b)(1) | Forfeiture | |

Date 11/29/05

Signature of AUSA: _____

NATHAN GARRETT

*Criminal Case Cover Sheet*                                    Revised 3/5/98

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

*ORIGINAL*

| | |
|---|---|
| **Related Case Information** | |
| Superseding Indictment: [x] Yes [ ] No    New Defendant: [ ] Yes [x] No | |
| Pending CR Case in NDTX: [x] Yes [ ] No  If Yes, number: 3:04-CR-240-G | |
| Search Warrant Case Number _____ | |
| R 20 from District of _____ | |
| Magistrate Case Number _____ | |

### 1.    Defendant Information

Juvenile: [ ] Yes [x] No

If Yes, Matter to be sealed:

[ ] Yes   [ ] No

Defendant Name     Mohammad El-Mezain _____

Alias Name         _____

Address            _____

                   _____

County in which offense was committed:    _____

### 2.    U.S. Attorney Information

AUSA Nathan Garrett/Jim Jacks              Bar #  MO Bar No. 46500

### 3.    Interpreter

[ ] Yes [x] No    If Yes, list language and/or dialect: _____

### 4.    Location Status

Arrest Date On Bond

[ ] Already in Federal Custody as of __ in _____
[ ] Already in State Custody
[ ] On Pretrial Release

RECEIVED
NOV 3 0 2005
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

### 5.    U.S.C. Citations

Total # of Counts as to This Defendant:    38    [ ] Petty [ ] Misdemeanor [X] Felony

| Citation | Description of Offense Charged | Count(s) |
|---|---|---|
| 18 U.S.C. § 2339B(a)(1) | Conspiracy to Provide Material Support to a Foreign Terrorist Organization | 1 |
| 18 U.S.C. § 2339B(a)(1) | Providing Material Support to a Foreign Terrorist Organization | 2-12 |
| 50 U.S.C. §§ 1701-1706 | Conspiracy to Provide Funds, Goods and Services to a Specially Designated Terrorist | 13 |

| 50 U.S.C. §§ 1701-1706 | Providing Funds, Good and Services to a Specially Designated Terrorist | 14-25 |
| 18 U.S.C. § 1956(h) | Conspiracy to Commit Money Laundering | 26 |
| 18 U.S.C. § 1956(a)(2)(A) | Money Laundering | 27-38 |
| 18 U.S.C. § 982(a)(1) and 982(b)(1) | Forfeiture | |

Date  11/29/05          Signature of AUSA:  _____

NATHAN GARRETT

*Criminal Case Cover Sheet*                                    Revised 3/5/98

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

**Related Case Information**

Superseding Indictment: ☒ Yes ☐ No   New Defendant: ☐ Yes ☒ No

Pending CR Case in NDTX: ☒ Yes ☐ No If Yes, number: <u>3:04-CR-240-G</u>

Search Warrant Case Number _____

R 20 from District of _____

Magistrate Case Number _____

1. ## Defendant Information

Juvenile: ☐ Yes ☒ No

If Yes, Matter to be sealed:

☐ Yes   ☐ No

Defendant Name   <u>Ghassan Elashi</u>

Alias Name   _____

Address   _____

County in which offense was committed: _____

2. ## U.S. Attorney Information

<u>AUSA Nathan Garrett/Jim Jacks</u>        Bar # <u>MO Bar No. 46500</u>

3. ## Interpreter

☐ Yes ☒ No   If Yes, list language and/or dialect: _____

4. ## Location Status

Arrest Date <u>On Bond</u>

☐ Already in Federal Custody as of ___ in _____
☐ Already in State Custody
☐ On Pretrial Release

RECEIVED

NOV 3 0 2005

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

5. ## U.S.C. Citations

Total # of Counts as to This Defendant: <u>41</u>   ☐ Petty ☐ Misdemeanor ☒ Felony

| Citation | Description of Offense Charged | Count(s) |
|---|---|---|
| 18 U.S.C. § 2339B(a)(1) | Conspiracy to Provide Material Support to a Foreign Terrorist Organization | 1 |
| 18 U.S.C. § 2339B(a)(1) | Providing Material Support to a Foreign Terrorist Organization | 2-12 |
| 50 U.S.C. §§ 1701-1706 | Conspiracy to Provide Funds, Goods and Services to a Specially Designated Terrorist | 13 |

| | | |
|---|---|---|
| 50 U.S.C. §§ 1701-1706 | Providing Funds, Good and Services to a Specially Designated Terrorist | 14-25 |
| 18 U.S.C. § 1956(h) | Conspiracy to Commit Money Laundering | 26 |
| 18 U.S.C. § 1956(a)(2)(A) | Money Laundering | 27-38 |
| 26 U.S.C. § 7206(1) | Filing False Returns of Organization Exempt from Income Tax | 41-42 |
| 18 U.S.C. § 982(a)(1) and 982(b)(1) | Forfeiture | |

Date 11/29/05          Signature of AUSA: _____

NATHAN GARRETT

ORIGINAL

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

**Related Case Information**

Superseding Indictment: [x] Yes [ ] No   New Defendant: [ ] Yes [x] No

Pending CR Case in NDTX: [x] Yes [ ] No  If Yes, number: 3:04-CR-240-G

Search Warrant Case Number _____

R 20 from District of _____

Magistrate Case Number _____

1.  **Defendant Information**

Juvenile: [ ] Yes [x] No

If Yes, Matter to be sealed:

[ ] Yes   [ ] No

Defendant Name    Haitham Maghawri _____

Alias Name        _____

Address           _____

                  _____

County in which offense was committed: _____

2.  **U.S. Attorney Information**

AUSA Nathan Garrett/Jim Jacks _____    Bar #  MO Bar No. 46500 _____

3.  **Interpreter**

[ ] Yes [x] No   If Yes, list language and/or dialect: _____

4.  **Location Status**

Arrest Date On Bond

[ ] Already in Federal Custody as of ___ in _____
[ ] Already in State Custody
[ ] On Pretrial Release

> RECEIVED
> NOV 3 0 2005
> CLERK, US DISTRICT COURT
> NORTHERN DISTRICT OF TEXAS

5.  **U.S.C. Citations**

Total # of Counts as to This Defendant: __38__   [ ] Petty  [ ] Misdemeanor  [X] Felony

| Citation | Description of Offense Charged | Count(s) |
|---|---|---|
| 18 U.S.C. § 2339B(a)(1) | Conspiracy to Provide Material Support to a Foreign Terrorist Organization | 1 |
| 18 U.S.C. § 2339B(a)(1) | Providing Material Support to a Foreign Terrorist Organization | 2-12 |
| 50 U.S.C. §§ 1701-1706 | Conspiracy to Provide Funds, Goods and Services to a Specially Designated Terrorist | 13 |

| 50 U.S.C. §§ 1701-1706 | Providing Funds, Good and Services to a Specially Designated Terrorist | 14-25 |
|---|---|---|
| 18 U.S.C. § 1956(h) | Conspiracy to Commit Money Laundering | 26 |
| 18 U.S.C. § 1956(a)(2)(A) | Money Laundering | 27-38 |
| 18 U.S.C. § 982(a)(1) and 982(b)(1) | Forfeiture | |

Date 11/29/05          Signature of AUSA: _____

NATHAN GARRETT

*Criminal Case Cover Sheet*                                          Revised 3/5/98

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

**Related Case Information**

Superseding Indictment: [x] Yes [ ] No   New Defendant: [ ] Yes [x] No

Pending CR Case in NDTX: [x] Yes [ ] No  If Yes, number: 3:04-CR-240-G

Search Warrant Case Number _____

R 20 from District of _____

Magistrate Case Number _____

1. **Defendant Information**

   Juvenile: [ ] Yes [x] No

   If Yes, Matter to be sealed:

   [ ] Yes   [ ] No

   Defendant Name    Akram Mishal _____

   Alias Name        _____

   Address           _____
                     _____

   County in which offense was committed: _____

2. **U.S. Attorney Information**

   AUSA Nathan Garrett/Jim Jacks            Bar #  MO Bar No. 46500

3. **Interpreter**

   [ ] Yes [x] No   If Yes, list language and/or dialect:_____

4. **Location Status**

   Arrest Date On Bond

   [ ] Already in Federal Custody as of __in_____
   [ ] Already in State Custody
   [ ] On Pretrial Release

   RECEIVED
   NOV 3 0 2005
   CLERK, U.S. DISTRICT COURT
   NORTHERN DISTRICT OF TEXAS

5. **U.S.C. Citations**

   Total # of Counts as to This Defendant:  38      [ ] Petty [ ] Misdemeanor [X] Felony

| Citation | Description of Offense Charged | Count(s) |
|---|---|---|
| 18 U.S.C. § 2339B(a)(1) | Conspiracy to Provide Material Support to a Foreign Terrorist Organization | 1 |
| 18 U.S.C. § 2339B(a)(1) | Providing Material Support to a Foreign Terrorist Organization | 2-12 |
| 50 U.S.C. §§ 1701-1706 | Conspiracy to Provide Funds, Goods and Services to a Specially Designated Terrorist | 13 |

| 50 U.S.C. §§ 1701-1706 | Providing Funds, Good and Services to a Specially Designated Terrorist | 14-25 |
|---|---|---|
| 18 U.S.C. § 1956(h) | Conspiracy to Commit Money Laundering | 26 |
| 18 U.S.C. § 1956(a)(2)(A) | Money Laundering | 27-38 |
| 18 U.S.C. § 982(a)(1) and 982(b)(1) | Forfeiture | |

Date  11/29/05          Signature of AUSA: _____

NATHAN GARRETT

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

ORIGINAL

**Related Case Information**

Superseding Indictment: ☐ Yes  ☐ No    New Defendant: ☐ Yes  x No

Pending CR Case in NDTX: ☒ Yes  ☐ No  If Yes, number: 3:04-CR-240-G

Search Warrant Case Number _____

R 20 from District of _____

Magistrate Case Number _____

### 1.    Defendant Information

Juvenile: ☐ Yes  ☒ No

If Yes, Matter to be sealed:

☐ Yes   ☐ No

Defendant Name    Mufid Abdulqader _____

Alias Name    _____

Address    _____

County in which offense was committed: _____

### 2.    U.S. Attorney Information

AUSA Nathan Garrett/Jim Jacks                Bar #  MO Bar No. 46500

### 3.    Interpreter

☐ Yes  ☒ No    If Yes, list language and/or dialect:_____

### 4.    Location Status

Arrest Date _____

☐ Already in Federal Custody as of ___ in_____
☐ Already in State Custody
☐ On Pretrial Release

RECEIVED
NOV 3 0 2005
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

### 5.    U.S.C. Citations

Total # of Counts as to This Defendant:__38_____ ☐ Petty  ☐ Misdemeanor  ☒ Felony

| Citation | Description of Offense Charged | Count(s) |
|---|---|---|
| 18 U.S.C. § 2339B(a)(1) | Conspiracy to Provide Material Support to a Foreign Terrorist Organization | 1 |
| 18 U.S.C. § 2339B(a)(1) | Providing Material Support to a Foreign Terrorist Organization | 2-12 |
| 50 U.S.C. §§ 1701-1706 | Conspiracy to Provide Funds, Goods and Services to a Specially Designated Terrorist | 13 |

| 50 U.S.C. §§ 1701-1706 | Providing Funds, Good and Services to a Specially Designated Terrorist | 14-25 |
| 18 U.S.C. § 1956(h) | Conspiracy to Commit Money Laundering | 26 |
| 18 U.S.C. § 1956(a)(2)(A) | Money Laundering | 27-38 |
| 18 U.S.C. § 982(a)(1) and 982(b)(1) | Forfeiture | |

Date __11|29|05__        Signature of AUSA: _____

NATHAN GARRETT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

ORIGINAL

1.   **Defendant Information**

Juvenile: ☐ Yes  ☒ No

If Yes, Matter to be sealed:

☐ Yes  ☐ No

Defendant Name  ___Abdulrahman Odeh_____

Alias Name  _____

Address  _____

_____

County in which offense was committed:  _____

| Related Case Information |
|---|
| Superseding Indictment: ☒ Yes ☐ No   New Defendant: ☐ Yes ☒ No |
| Pending CR Case in NDTX: ☒ Yes ☐ No If Yes, number: 3:04-CR-240-G |
| Search Warrant Case Number _____ |
| R 20 from District of _____ |
| Magistrate Case Number _____ |

2.   **U.S. Attorney Information**

AUSA Nathan Garrett/Jim Jacks            Bar #  MO Bar No. 46500

3.   **Interpreter**

☐ Yes  ☒ No   If Yes, list language and/or dialect: _____

4.   **Location Status**

Arrest Date On Bond

☐ Already in Federal Custody as of __ in_____
☐ Already in State Custody
☐ On Pretrial Release

RECEIVED
NOV 3 0 2005
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

5.   **U.S.C. Citations**

Total # of Counts as to This Defendant:_38_____ ☐ Petty ☐ Misdemeanor ☒ Felony

| Citation | Description of Offense Charged | Count(s) |
|---|---|---|
| 18 U.S.C. § 2339B(a)(1) | Conspiracy to Provide Material Support to a Foreign Terrorist Organization | 1 |
| 18 U.S.C. § 2339B(a)(1) | Providing Material Support to a Foreign Terrorist Organization | 2-12 |
| 50 U.S.C. §§ 1701-1706 | Conspiracy to Provide Funds, Goods and Services to a Specially Designated Terrorist | 13 |

| 50 U.S.C. §§ 1701-1706 | Providing Funds, Good and Services to a Specially Designated Terrorist | 14-25 |
| 18 U.S.C. § 1956(h) | Conspiracy to Commit Money Laundering | 26 |
| 18 U.S.C. § 1956(a)(2)(A) | Money Laundering | 27-38 |
| 18 U.S.C. § 982(a)(1) and 982(b)(1) | Forfeiture | |

Date __4/29/05__

Signature of AUSA: _____

NATHAN GARRETT