

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

DEC - 9 2005

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 3:04-CR-240 G |
| | § | |
| HOLY LAND FOUNDATION FOR | § | |
| RELIEF AND DEVELOPMENT (1) | § | **REQUEST** |
| also known as the "HLF" | § | **TO BE FILED UNDER SEAL** |
| SHUKRI ABU BAKER (2) | § | |
| MOHAMMAD EL-MEZAIN (3) | § | |
| GHASSAN ELASHI (4) | § | |
| HAITHAM MAGHAWRI (5) | § | |
| AKRAM MISHAL (6) | § | |
| MUFID ABDULQADER (7) | § | |
| ABDULRAHMAN ODEH (8) | § | |

## GOVERNMENT'S REPLY TO DEFENSE'S RESPONSE TO MOTION FOR RETURN OF CLASSIFIED MATERIAL

### I. INTRODUCTION

According to the defense, the Holy Land Foundation for Relief and Development's (HLF) repeated failure to prevail in the legal challenge to its administrative designation requires this Court to circumvent the carefully constructed mechanism that Congress created for challenging searches conducted pursuant to the Foreign Intelligence Surveillance Act (FISA). 50 U.S.C. §§ 1801-1811. FISA is clear that if a defendant moves to suppress or discover the fruits of electronic surveillance, and if the Attorney General files an affidavit stating that disclosure of the FISA material would harm national security, the court must conduct an *ex parte*, *in camera* review of the FISA materials to

determine whether the FISA collection was lawfully authorized and conducted. Only if

the court determines that it cannot make an "accurate determination" as to the legality of

the surveillance can the court then order disclosure of the portion of the FISA materials

that are "necessary." 50 U.S.C. §1806. None of these events has occurred in this case.

Instead, the defense is attempting to obscure the fundamental issue presented by the

government's motion – return to the government of information produced by mistake –

with a litany of immaterial grievances in the hope that the resulting confusion might cause

the Court to violate Congress' mandate under FISA and order the release of FISA

material prior to the fulfillment of any of the statutory prerequisites. The government's

motion is not about whether the defense prefers a "primary purpose" test, or whether

FISA's *ex parte* review provision is fair, or even whether the four judges (and three

courts) who roundly upheld the HLF's designation as a Specially Designated Terrorist

and a Specially Designated Global Terrorist under Executive Orders 12947 and 13224

were correct. Rather, the government seeks the return of property that was mistakenly

produced to the defense and to which the defense is not entitled. While that production

was regrettable, it was nonetheless in error.

At bottom, the defendants have invited this Court to rewrite a statute that was

carefully crafted by Congress, signed into law by the President, and upheld as

constitutional by every court to consider it. The Court should decline the invitation,

return the parties to the position they were in prior to the inadvertent disclosure, and

permit the litigation of any future motion to suppress to proceed in accordance with the mandatory provisions of FISA.

## II. ARGUMENT

### FISA Applications, Orders and Other Materials That Were Inadvertently Produced Must Be Returned to the Government Pending Appropriate Proceedings Under FISA as to the Legality of the Surveillance

Defendant's response to the Government's Motion for Return of Classified Material ("Def. Resp.") is divided approximately into two parts. In the first part, the defense devotes more than twenty pages to rehashing the same arguments that HLF made in its failed attempt to reverse the administrative designation imposed by the Treasury Department. See *Holy Land Foundation for Relief and Development v. Ashcroft*, 219 F. Supp. 2d 57 (D.D.C. 2002), aff'd, 333 F.3d 156 (D.C. Circuit 2003), *rehearing and rehearing en banc denied* (Aug. 22, 2003), *cert. denied* 540 U.S. 1218 (2004); Def. Resp. at 3-23. Every judge to consider these same arguments and exhibits concluded that the government's action to close HLF was amply supported. Although the defense particularly criticizes the District of Columbia courts for failing to credit the sworn denials of HLF's principals, despite their "personal knowledge," Def. Resp. at 15, 18, HLF's principals will soon have the opportunity to testify on their own behalf. For now, however, HLF's denials are irrelevant to the motion pending before this Court.

In the second half of its response, the defense contends that it is entitled to the materials in question for essentially three reasons: (1) the material is helpful to the defense in a future effort to suppress fruits of the electronic surveillance; (2) the material

contains information that the prosecution is required to disclose pursuant to *Brady* and its progeny; and (3) defense counsel have security clearances. None of these arguments entitles the defense to retain the mistakenly produced materials.

## A. The FISA Procedures Must Be Followed and Are Constitutional

The Court cannot order disclosure of FISA materials outside the procedures prescribed by the FISA. H.R. Rep. No. 95-1283, 95th Cong. 2d Sess. Pt. 1, at 91(procedures set forth in section 1806 of FISA "must be used."); *U.S. v. Belfield*, 692 F.2d 141, 146 (D.C. Cir. 1982) (the "carefully drawn procedures" in FISA are not to be "bypassed by the inventive litigant using a new statute, rule or judicial construction."). Here, the defense is attempting to take advantage of an inadvertent disclosure to bypass the explicit procedural mechanisms of FISA.[1] There has been no defense motion to suppress or discover FISA information, 50 U.S.C. § 1806(e), no affidavit by the Attorney General, 50 U.S.C. § 1806(f), and no *in camera, ex parte* consideration by the Court. *Id.* Once an appropriate motion is made by the defense, and if an affidavit is executed by the Attorney General, all of the relevant materials will be provided to the Court *in camera* and *ex parte*. Only at that time will it be appropriate for the Court to consider whether, pursuant to section 1806(f), the collection at issue was lawfully authorized and conducted,

---

1 Requiring the defense to follow the procedures mandated by FISA is more than simply a question of form. FISA's legislative history is replete with careful consideration of how the review of FISA materials should proceed. <u>See</u>, *e.g.*, S.Rep.No. 95-604, 95th Cong.2d Sess., pt.1 at 58 (1978). Congress made it absolutely clear that these carefully constructed procedures were not to be circumvented. In addition, an orderly process under FISA is necessary to protect the government's appellate rights. FISA provides that any order disclosing FISA material or finding FISA collection unlawful is final, and thus subject to immediate appeal. 50 U.S.C. 1806(h).

and, if the Court is unable to do so, whether disclosure of any FISA material is warranted.[2]

The defense argues at length that the court should not review the FISA materials *ex parte* because to do so would offend the Constitution. Def. Resp. at 32-41. But the law requires that FISA materials be reviewed *in camera* and *ex parte*, and the courts have unanimously upheld that requirement as constitutional. See, *e.g.*, *U.S. v. Damrah*, 412 F.3d 618, 624 (6th Cir. 2005) (FISA's requirement that the district court conduct an in camera, ex parte review of FISA materials "does not deprive a defendant of due process"); *U.S. v. Ott*, 827 F.2d 473, 475 (9th Cir. 1987) (same); *U.S. v. Belfield*, 692 F.2d at 148-49 (*in camera, ex parte* review consistent with Congressional intent and Fifth and Sixth Amendments).

Notwithstanding this established precedent, the defense cites *Mathews v. Eldridge*, 424 U.S. 319 (1976), for the proposition that due process requires disclosure and an adversarial evidentiary hearing. Def. Resp. at 32-42. *Mathews*, however, has no

---

2 Defendants argue that this case "presents the most compelling case conceivable" for disclosure under section 1806(f). Def. Resp. at 24. The government disagrees, and is prepared to defend vigorously the legality of any surveillance that the defense may seek to suppress. In particular, defendants' attempt to characterize the entire investigation of the HLF as the invention of one rogue agent is wholly misguided. Although no motion has been filed, and the issue is not presently joined, the agent in question was cleared of wrongdoing. The government respectfully submits that, after the Court reviews all the materials, it will be able to make an accurate determination as to the legality of the FISA collection at issue without ordering disclosure, as has every other court to review FISA material. Indeed, a judge in this district, in response to a motion to suppress, has already reviewed some of the very same FISA materials that were inadvertently disclosed in this case and found "no abuse within the areas of scrutiny articulated in Senate Report 95-604 and discussed in *Duggan*," and further found that "all the statutory requirements were satisfied," and that "the surveillances were lawfully authorized and conducted." *United States v. Elashi, et al.*, Crim. Action No. 3:02-CR-052-L (N.D. Tx)(Apr. 15, 2005) (attached) at 15, 17. (Although originally sealed, said Memorandum Opinion and Order was unsealed on April 14, 2005. (# 327).

Government's Reply to Defense's Response to Motion for Return of Classified Material - Page 5

application to FISA, and "does not provide the appropriate framework" for assessing the

validity of FISA's procedures in the context of a criminal case. *Medina v. California*, 505

U.S. 437, 443 (1992). Indeed, the Sixth Circuit recently rejected the notion that *Mathews*

can supply the analytical framework under FISA. *U.S. v. Damrah*, 412 F.3d at 624

(reliance upon Mathews is misplaced because FISA's requirement that the district court

conduct an *in camera, ex parte* review of FISA materials does "not deprive a defendant of

due process.")[3]

Defendants' reliance on *Alderman v. United States*, 394 U.S. 165 (1969) is

similarly misplaced. Def. Resp. at 35-37. In *Alderman*, the defense argued that

surveillance materials should be produced and an adversarial hearing conducted to

examine whether the prosecution planned to use "tainted" evidence from a surveillance

already found to be unlawful by the district court that was examining the surveillance.

*Alderman* does not stand for the proposition that the production of surveillance materials

and an adversarial hearing is always required before a district court can determine

whether electronic surveillance was lawfully authorized and conducted. Again, the Sixth

Circuit recently rejected this identical argument. *U.S. v. Damrah*, 412 F.3d at 624 ("no

---

3 *Mathews*, moreover, is factually inapposite. In *Mathews*, the issue was whether the administrative
procedures established by the Secretary of Health, Education and Welfare to assess whether certain social
security benefits could be terminated comported with the Due Process Clause of the Fifth amendment.
*Mathews*, 424 U.S. at 323. By way of contrast, FISA governs the procedure by which a district court may
determine whether electronic surveillance previously authorized by another federal court was 'lawfully
authorized and conducted." 50 U.S.C. § 1806(f). Thus, the *Mathews'* factors have no application to the
"considered legislative judgment" that went into the "carefully balanced" statutory scheme set forth in
FISA. See *Medina*, 505 U.S. at 443.

merit" to the application of *Alderman* to a court's review of FISA surveillance unless the surveillance has "already been deemed unlawful.")[4]

In short, Congress has carefully constructed a statutory scheme through which the courts can determine the legality of electronic surveillance. Defendants will have every opportunity to avail themselves of that procedure should they determine to challenge the legality of any electronic surveillance in this case. Defendants cannot, however, seize upon an inadvertent disclosure to circumvent the controlling law.[5]

## B. Discoverable Material, Including Exculpatory Information, Will Be Produced In the Ordinary Course

Defendants' second argument for retaining the inadvertently produced material is that they are entitled to it under *Brady v. Maryland*, 373 U.S. 83 (1963). But this argument makes little sense. The government is under an obligation to produce information material to a defendant's guilt or punishment in time for effective use at trial, and the government obviously intends to comply with that obligation. As the government pointed out in its opening memorandum, however, nothing requires that Brady material be produced in a particular form. Government's Motion for Return of Classified Material

---

4 Defendants' discussion of *Franks v. Delaware*, 438 U.S. 154 (1978), is premature, as there has been no motion to suppress, let alone a showing by the defendants that would warrant a *Franks* hearing. In any event, the defendants make no showing that *Franks* would apply once the government produced all of the information, both favorable and unfavorable, that was material to the court's *in camera, ex parte* consideration under FISA.

5 Defendants also rely on CIPA as an independent reason for retaining the inadvertently produced material. Def. Resp. at 42-46. To the extent information is classified and discoverable, CIPA provides a mechanism for its use. But CIPA is beside the point where the defense is not entitled to the information in the first instance.

Government's Reply to Defense's Response to Motion for Return of Classified Material - Page 7

at 20-21; *U.S. v. Wooten*, 377 F.3d 1134, 1142 (10th Cir. 2004) (*Brady* does not require

the prosecution to disclose information in a specific form or manner).  For all its volume,

defendants' response does not take issue with this unremarkable truism.  Accordingly, it

is sufficient to provide the defense with any *Brady* information in a format other than

highly sensitive FISA applications, orders and related material.[6]

Defendants also argue that the Court can order the disclosure of alleged *Brady*

material under 50 U.S.C. §1806(g).  Def. Resp. at 31.  Again, however, defendants ignore

the controlling statutory procedure.  Not only have defendants not made a motion under

section 1806(e), but to even get to section 1806(g) the Court must have already

considered the FISA materials *in camera and ex parte* under section 1806(f) and

concluded that the surveillance was lawfully authorized and conducted.  Only then would

the Court consider whether, despite the legality of the surveillance, due process requires

disclosure of any of the FISA material.  50 U.S.C. § 1806(g).

**C.    Defense Counsel's Clearance Does Not Establish a "Need to Know" Within the Meaning of FISA and the Relevant Executive Order.**

Defendants repeatedly assert in their response that they are "cleared" to see the

documents in questions, and suggest that the requisite "need to know" is "moot" because

they have already seen the materials.  Def. Resp. at 2.  Defendants misunderstand FISA

and the relevant Executive Order.  Under that Order, no person (including government

---

6 In their classified addendum, defendants do not identify any exculpatory information, *i.e.*, evidence going to either the guilt or punishment of the defendants.  Even if they had, however, it would not bear on whether defendants can retain inadvertently produced FISA materials.

Government's Reply to Defense's Response to Motion for Return of Classified Material - Page 8

personnel) is cleared to see classified information unless he or she possess both the requisite eligibility determination clearance **and** a need to know as defined by the Executive Order. See Executive Order 13292, 68 Fed. Reg. 15315 (March 25, 2003), section 4.1(a) and 6.1(z) (requiring that a "need to know" determination be made prior to the disclosure of classified information to anyone, including those who possess a security clearance); see also Protective Order, ¶¶ 1, 12-13. Simply having a "secret" clearance does not entitle defense counsel to see every document within that classification. *U.S. v. Bin Laden, et al.*, 126 F. Supp. 2d 264, 287 n.27 (S.D.N.Y. 2000). As described above, defendants are not entitled to FISA information that was produced by mistake. This Court has not made a determination under 50 U.S.C. 1806(f) to disclose these materials, and *Brady* information, to the extent any exists, will be produced in a different form. Accordingly, defendants have no "need to know," nor can such a prerequisite be "moot."[7]

For defendants to insist that they can view the materials simply because they have a security clearance is tantamount to rewriting FISA, and contrary to established law. Moreover, disclosure represents a real danger to national security. Defendants belittle the notion that disclosure of information to "cleared" counsel can cause harm to intelligence gathering. Def. Resp. at 34, n.27. But defendants are not in the business of intelligence gathering. Rather, courts have long recognized that, in matters of national security, courts

---

7 Had materials classified at the "top secret" level been mistakenly produced, defendants would presumably agree that they are not entitled to the information, and that such information must be returned. It is no different with respect to materials for which the defense does not have a need-to-know, an equally important prerequisite to access under the Executive Order.

must give great deference to the predictive judgments of appropriate executive branch officials. As the Supreme Court has stated,

> it is the responsibility of the Director of Central Intelligence, not that of the judiciary, to weigh the variety of subtle and complex factors in determining whether the disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process.

*CIA v. Sims*, 471 U.S. 159, 179-80 (1985).

FISA applications, orders and related materials are extremely sensitive intelligence documents. They discuss sources and methods, and often refer to targets, investigations, and other foreign and domestic intelligence unrelated to subjects or charges in any particular criminal case. Thus, the risk to intelligence gathering is acute regardless of whether defense counsel has a security clearance. See Govt's Motion at 14 (describing risk to intelligence sources and methods and chill to the willingness of foreign countries to share information once confidentiality is betrayed). Indeed, Judge Lindsay has already found, after careful examination of some of the same FISA applications and orders at issue here, that "disclosure or an adversary hearing with respect to the classified materials would be detrimental to national security." *U.S. v. Elashi, et al.* at 15. Judge Lindsay made that finding despite the fact that a designated defense counsel in that case had obtained a security clearance.

In light of the very sensitive nature of these documents, defendants' claim that they should retain the inadvertently produced material because they have already seen it rings particularly hollow. The protection of national security is not advanced, nor the inadvertent disclosure of classified information cured, by simply relinquishing the

**Government's Reply to Defense's Response to Motion for Return of Classified Material - Page 10**

information and compounding the harm already caused by the inadvertent disclosure. Conversely, returning the parties to position they were in prior to the inadvertent disclosure, while not entirely undoing the damage already caused, will at least mitigate it. As defendants concede, absent continued access to the materials, their knowledge of the detailed intelligence information will remain "only from memory." Def. Resp. at 1, n.1.

Finally, defendants attempt to deflect attention from the fundamental fact that they lack legal entitlement to retain the inadvertently produced material by trying to recast the discussion as one of privilege. Def. Resp. 46-49. While traditional government privileges obviously attach to the materials in question, see Govt's Motion at 18, n.12, privilege is separate from the fact that defense counsel have no legal right to this classified information under FISA. The defense claims it has no way to know whether the material was in fact intended for the defense, or really a mistake. Def. Resp. at 3. But that argument is nonsensical given that the government's motion is premised on the assertion that the information was mistakenly produced, and Special Agent Robert Miranda has executed a sworn declaration to that effect. How that mistaken production occurred is not germane to the question of legal entitlement under FISA.[8] As defense

---

8 The inadvertent disclosure occurred at a time when all of the prosecutors and the principal case agents were in trial in the case of the *United States v. Ghassan Elashi, et al*, CR3-02-052-L, in the court of United States District Judge Sam Lindsay. In an effort to meet the then discovery deadline of March 31, 2005, an additional FBI agent and support personnel were called from their other assigned duties not related to this case to copy the documents designated for production to the defense in this case. As the government stated in its opening memorandum, the only items intended for production in the April 5th delivery were CD's or cassette recordings of conversations and written summaries of some of those conversations. Due to an apparent mis-communication between the principal case agents and those personnel who were asked to assist with the copying process, several files were mistakenly copied and included in the materials turned over to defense counsel. Because they were in trial, the materials were not reviewed by agents and attorneys familiar with the case prior to their being turned over to defense counsel. Counsel deeply regret that this occurred, and have taken steps to ensure that it will not be

**Government's Reply to Defense's Response to Motion for Return of Classified Material - Page 11**

counsel themselves point out, something was amiss with the production – not only were FISA applications, orders and related material included, an unprecedented event in and of itself, but the production was in disarray. Def. Resp. at 4.   At that point, defense counsel had an ethical obligation to cease reviewing the material and alert the prosecution.  The fact that no defense counsel called government counsel, despite their admitted surprise at the state of the production, reinforces the likelihood that the defense knew they were in possession of mistakenly produced information and did not want to alert the government to the disclosure.   Even if this were not the case, defense counsel should not be permitted to take advantage of a plainly inadvertent disclosure to circumvent the exclusive statutory scheme governing the disclosure of FISA materials and the ordinary rules governing discovery.

repeated.
**Government's Reply to Defense's Response to Motion for Return of Classified Material - Page 12**

## III. CONCLUSION

For all the foregoing reasons, the government respectfully requests that its motion be granted, that the parties be returned to the status quo ante, that the inadvertently produced material be returned to the government, and that the case be permitted to proceed in the ordinary course.

DATED this 9th day of December, 2005.

Respectfully submitted,

RICHARD B. ROPER
United States Attorney

JAMES T. JACKS
First Assistant United States Attorney
1100 Commerce St., Suite 300
Dallas, TX. 75242
State Bar No. 10449500
214.659.8600 (telephone)
214.767.2898 (facsimile)

NATHAN GARRETT
Special Assistant United States Attorney

BARRY JONAS
Trial Attorney - DOJ

ELIZABETH J. SHAPIRO
Trial Attorney - DOJ

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this Government's Reply to Defense's Response to Motion for Return of Classified Material has been served upon Counsel for each of the Defendants by facsimile and by placing the same in the United States Mail this   9th   day of December, 2005.

_____
James T. Jacks
First Assistant United States Attorney



ORIGINAL

SEALED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NORTHERN DISTRICT OF TEXAS
FILED

APR 8 2005

CLERK, U.S. DISTRICT COURT
By
_____
Deputy

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal Action No. 3:02-CR-052-L |
| | § | |
| BAYAN ELASHI          (1) | § | |
| GHASSAN ELASHI        (2) | § | **Attachment** |
| BASMAN ELASHI         (3) | § | |
| and | § | |
| INFOCOM CORPORATION | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court are Defendants' Joint Motion to Suppress Evidence – Foreign Intelligence

Surveillance Act [FISA] Conversations, filed February 27, 2004; and Unopposed Defendants'

Motion to Withdraw Motion to Suppress Evidence – Foreign Intelligence Surveillance Act (FISA)

Conversations, filed February 25, 2005. After careful consideration of the motions, record, and

applicable law, the court **denies** Unopposed Defendants' Motion to Withdraw Motion to Suppress

Evidence – Foreign Intelligence Surveillance Act (FISA) Conversations and **denies** Defendants'

Joint Motion to Suppress Evidence – Foreign Intelligence Surveillance Act [FISA] Conversations.

**I.     <u>Procedural and Factual Background</u>**

Defendants Bayan Elashi, Ghassan Elashi, Basman Elashi, and Infocom Corporation

("Infocom") (collectively, "Defendants") are charged with several counts[1] of violating the

International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-1706 ("IEEPA"), and violating

regulations concerning prohibited transactions with Specially Designated Terrorists under Executive

---

[1]The second phase of this trial, to which the FISA materials pertain, encompasses Counts twenty-six
through forty-six of the August 21, 2003 Superseding Indictment.

**Memorandum Opinion and Order - Page 1**

Order 12947. In the prosecution of its case, the Government seeks to introduce into evidence conversations that were intercepted pursuant to the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. § 1801, *et. seq.* ("FISA" or "Act") involving Nadia Elashi, Shukri Ahmad Abubaker ("Abubaker"), and Ghassan Elashi. Nadia Elashi and Abubaker were targets of the FISA authorized electronic surveillances. Defendant Ghassan Elashi, though not a target of the FISA surveillances, was party to communications intercepted in the FISA court-authorized surveillances of Abubaker and Nadia Elashi.[2]

Defendants, seeking to suppress evidence derived from conversations between (1) Ghassan Elashi and Abubaker and (2) Ghassan Elashi and Nadia Elashi obtained from FBI electronic surveillances, filed a joint motion to suppress evidence obtained or derived from the FISA-court authorized electronic surveillances of Nadia Elashi and Abubaker.[3] In their motion, Defendants request that (1) the court suppress the Government's evidence obtained or derived by the Federal Bureau of Investigation's ("FBI") electronic surveillances of Nadia Elashi and Abubaker; and (2) allow defense counsel, Richard A. Anderson ("Mr. Anderson"), to view the search warrants and affidavits underlying the original FISA applications and challenge them for lack of probable cause. The Government opposes Defendants' motion to suppress and asks that the court (1) conduct an *ex parte* and *in camera* review of the relevant classified documents; (2) find that each FISA surveillance at issue was lawfully authorized and conducted; and (3) order that none of the classified documents,

_____

[2]Nadia Elashi is a named Defendant in the Superseding Indictment of August 21, 2003, but as of this date she has not appeared before the court and is considered a fugitive. Abubaker is not a defendant in this case.

[3]To be precise, there are seven surveillance orders on review: three as to Nadia Elashi (the original order and two orders renewing it); and four as to Abubaker (the original order and three orders renewing it).

**Memorandum Opinion and Order - Page 2**

nor any of the classified information contained therein, be disclosed to Defendants or their counsel, but rather maintained under seal.

Defendants Ghassan Elashi, Basman Elashi, and Bayan Elashi were arrested on charges alleged in the December 18, 2002 Superseding Indictment.[4] On December 23, 2003, the Government notified Defendants and the court of its intent to use material derived from the FISA court-authorized surveillances of Nadia Elashi, Abubaker, and the Holy Land Foundation for Relief and Development in the prosecution of its case. Since that time, the Government disclosed evidence resulting from the FISA surveillances to Defendants. Following its disclosure, the Government decided that it would not seek to introduce evidence obtained during the FBI's FISA surveillance of the Holy Land Foundation. The court will, therefore, limit its review to the FISA applications for the surveillances of Nadia Elashi and Abubaker. The court now sets forth the application standards and procedures under FISA.

## II. FISA Standards and Procedures

FISA "permits federal officials to obtain orders authorizing electronic[] surveillance 'for the purpose of obtaining foreign intelligence information.'"[5] *United States v. Duggan*, 743 F.2d 59, 77 (2d Cir. 1984) (quoting 50 U.S.C. § 1802(b)). FISA established the Foreign Intelligence

---

[4]The original sealed indictment in this case was filed on February 20, 2002 and was superseded by an indictment filed on December 18, 2002. The indictment of December 18, 2002 has been superseded by the indictment filed on August 21, 2003.

[5] Effective October 26, 2001, the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 ("Patriot Act") amended FISA by expanding the "purpose requirement" to require that "a significant purpose of the surveillance" be to obtain foreign intelligence information. Pub.L. No. 107-56, 115 Stat. 272 (October 26, 2001). The surveillances at issue in this case were conducted prior to Congress's passage of the Patriot Act. The court, therefore, unless otherwise specified, will reference the statute as it was in effect prior to the passage of the Patriot Act.

Memorandum Opinion and Order - Page 3

Surveillance Court ("FISA court") with "jurisdiction to hear applications for and grant orders approving electronic surveillance anywhere within the United States"[6] in order to assist in "protecting the United States against attack by foreign governments or international terrorist groups." *United States v. Rahman,* 861 F.Supp. 247, 249 (S.D.N.Y 1994), *aff'd,* 189 F.3d 88 (2d Cir. 1999); *see also* 50 U.S.C. §§ 1801(e), 1803.

### A. FISA Application

Each FISA application submitted to the FISA court must be made under oath by a federal officer and must be accompanied by the Attorney General's approval "based upon his finding that it satisfies the criteria and requirements of such application as set forth" in 50 U.S.C. § 1804(a). The application must include (1) the identity of the Federal officer making the application; (2) the identity, if known, or a description of the electronic surveillance target; (3) the facts and circumstances relied upon by the applicant in his belief that the target of the electronic surveillance is a foreign power or an agent of a foreign power and that each of the facilities or places at which the surveillance is directed is being used, or is about to be used, by a foreign power or agent of a foreign power; (4) a statement of the proposed minimization procedures; (5) a detailed description of the nature of the information sought and the type of communications or activities to be subjected to the surveillance; (6) a statement of the means by which the surveillance will be effected and whether physical entry is required to effect the surveillance; (7) a statement concerning the previous applications sought; and (8) a statement of the period of time for which the electronic surveillance is required to be maintained. 50 U.S.C. §§ 1804(a)(1)-(11).

---

[6] 50 U.S.C. § 1803(a).

**Memorandum Opinion and Order - Page 4**

### B.    Foreign Power

Under the Act, a "foreign power" means

> (1) a foreign government or any component thereof, whether or not recognized by the United States;
> (2) a faction of a foreign nation or nations, not substantially composed of United States persons;
> (3) an entity that is openly acknowledged by a foreign government or governments to be directed and controlled by such foreign government or governments;
> (4) a group engaged in international terrorism[7] or activities in preparation therefor;
> (5) a foreign-based political organization, not substantially composed of United States persons; or
> (6) an entity that is directed and controlled by a foreign government or governments.

50 U.S.C. § 1801(a).  An "[a]gent of a foreign power" under the statute means

> (1) any person other than a United States person, who –
> > (A) acts in the United States as an officer or employee of a foreign power, or as a member of a foreign power as defined in subsection (a)(4) of this section;

---

[7]"International terrorism" means activities that –

> (1) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or any State;
> (2) appear to be intended –
> > (A) to intimidate or coerce a civilian population;
> > (B) to influence the policy of a government by intimidation or coercion; or
> > (C) to affect the conduct of a government by assassination or kidnapping; and
> (3) occur totally outside the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to coerce or intimidate, or the locale in which their perpetrators operate or seek asylum.

50 U.S.C. § 1801(c).

**Memorandum Opinion and Order - Page 5**

(B) acts for or on behalf of a foreign power which engages in clandestine intelligence activities in the United States contrary to the interests of the United States, when the circumstances of such person's presence in the United States indicate that such person may engage in such activities in the United States, or when such person knowingly aids or abets any person in the conduct of such activities or knowingly conspires with any person to engage in such activities; or

(2) any person who –

(A) knowingly engages in clandestine intelligence gathering activities for or on behalf of a foreign power, which activities involve or may involve a violation of the criminal statutes of the United States;

(B) pursuant to the direction of an intelligence service or network of a foreign power, knowingly engages in any other clandestine intelligence activities for or on behalf of such foreign power, which activities involve or are about to involve a violation of the criminal statutes of the United States;

(C) knowingly engages in sabotage or international terrorism, or activities that are in preparation therefor, for or on behalf of a foreign power;

(D) knowingly enters the United States under a false or fraudulent identity for or on behalf of a foreign power or, while in the United States, knowingly assumes a false or fraudulent identity for or on behalf of a foreign power; or

(E) knowingly aids or abets any person in the conduct of activities described in subparagraph (A), (B), or (C) or knowingly conspires with any person to engage in activities described in subparagraph (A), (B), or (C).

50 U.S.C. § 1801(b).

## C.  Executive Certification

The application for FISA surveillance must also include certification from a high ranking national security or defense executive officer. 50 U.S.C. § 1804(a)(7). The certification must (1) set forth that the certifying official deems the information being sought is foreign intelligence

information; (2) set forth that "the purpose[8] of the surveillance is to obtain foreign intelligence information"; (3) set forth that the information sought cannot be obtained reasonably by normal investigative techniques; (4) designate the type of foreign intelligence information being sought according to the categories described in 50 U.S.C. § 1804(e); and (5) set forth the basis of the certification that the information being sought is the type of foreign intelligence information designated and cannot reasonably be obtained by normal investigative techniques. 50 U.S.C. §§ 1804(a)(7)(A)-(E).

### D.  Application to the FISA Court

Prior to issuing an order authorizing the requested electronic surveillance, a FISA judge must find that (1) the President has authorized the Attorney General to approve applications for electronic surveillance for foreign intelligence information; (2) the application has been made by a Federal officer and approved by the Attorney General; (3) the facts submitted by the applicant establish sufficient probable cause to believe that the target of the electronic surveillance is a foreign power or an agent of a foreign power and that each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power; (4) the proposed minimization procedures meet the statutory requirements under the Act; and (5) the application contains all statements and certifications required under § 1804 and, if the target is a United States person,[9] the certification or certifications are not clearly erroneous on

---

[8]As stated before, this standard applies to electronic surveillances conducted prior to the passage of the Patriot Act on October 26, 2001 and is therefore applicable in this case. Certifications for electronic surveillances conducted after the passage of the Patriot Act must set forth that "a significant purpose of the surveillance is to obtain foreign intelligence information." 50 U.S.C. § 1804(a)(7)(B).

[9] Under FISA, a "'United States person' means a citizen of the United States, an alien lawfully admitted for permanent residence . . . , an unincorporated association a substantial number of members of which are citizens of the United States or aliens lawfully admitted for permanent residence, or a corporation

the basis of the statement made under § 1804(a)(7)(E) and any other information furnished under § 1804(d). 50 U.S.C. §§ 1805(a)(1)-(5).

###### E.     FISA Court Order

When the FISA court determines that an application for electronic surveillance meets the statutory requirements under FISA, it must issue an *ex parte* order as requested or as modified approving the electronic surveillance and specifying (1) the identity, if known, or a description of the target of the electronic surveillance; (2) the nature and location, if known, of each of the facilities or places at which the electronic surveillance will be directed; (3) the type of information sought and the type of communications or activities to be subjected to surveillance; (4) the means by which the electronic surveillance will be effected and whether physical entry will be used to effect the surveillance; (5) the period of time during which the electronic surveillance is approved; and (6) the authorized coverage of the devices involved, whenever more than one electronic, mechanical, or other surveillance device is to be used under the order, and what minimization procedures shall apply to information subject to acquisition by each device. 50 U.S.C. §§ 1805(a), (c)(1)(A)-(F). Orders authorizing electronic surveillance generally last 90 days, and extensions of the order may be granted upon application for an extension and new findings made in the same manner as required for an original order. 50 U.S.C. §§ 1805(e)(1)-(2).

###### F.     FISA Evidence in Criminal Proceedings

FISA electronic surveillance evidence may be used in criminal proceedings only with the advanced authorization of the Attorney General. 50 U.S.C. § 1806(b). Before the Government

---

which is incorporated in the United States, but does not include a corporation or an association which is a foreign power . . . ." 50 U.S.C. § 1801(i). Based on the classified materials submitted to the court, it determines that Nadia Elashi and Abubaker are United States persons under FISA.

introduces such evidence in a trial, hearing, or other proceeding in or before any court, it must notify
the aggrieved person and the court of its intention to use or disclose such information. 50 U.S.C. §
1806(c). An aggrieved person[10] may seek to suppress evidence obtained or derived from such
electronic surveillance by filing a motion to suppress alleging that (1) the information was
unlawfully acquired or (2) the surveillance was not made in conformity with a FISA court order of
authorization. 50 U.S.C. § 1806(e).

### G.      Motion to Suppress

Upon an aggrieved person's motion to suppress evidence or information obtained or derived
from FISA court-authorized electronic surveillance, and upon the Attorney General's filing of an
affidavit under oath stating that disclosure or an adversary hearing would harm the national security
of the United States, the district court shall "review in camera and ex parte the application, order,
and such other materials relating to the surveillance as may be necessary to determine whether the
surveillance of the aggrieved person was lawfully authorized and conducted." 50 U.S.C. § 1806(f).
In making its determination, the court may disclose to the aggrieved person "portions of the
application, order, or other materials relating to the surveillance only where such disclosure is
necessary to make an accurate determination of the legality of the surveillance." *Id.* If the court
"determines that the surveillance was not lawfully authorized or conducted," it must suppress the
evidence which was unlawfully obtained or derived from electronic surveillance of the aggrieved
person, or otherwise grant the motion of the aggrieved person. 50 U.S.C. § 1806(g). If the court,
however, determines that the surveillance was lawfully authorized and conducted, it shall deny the

---

[10]An "[a]ggrieved person" is defined as "a person who is the target of an electronic surveillance or
any other person whose communications or activities were subject to electronic surveillance." 18 U.S.C. §
1801(k).

Memorandum Opinion and Order - Page 9

motion, except to the extent that due process requires discovery or disclosure. *Id.* The court now

addresses the issues raised by Defendants' motions.

### III.  Analysis

#### A.  Defendants' Motion to Withdraw Their Motion to Suppress

The court first addresses Defendants' motion to withdraw their motion to suppress. In their

motion to withdraw, Defendants state that they (1) withdraw their previously filed motion to

suppress evidence; (2) waive their constitutional rights to object to the admission of the FISA

conversations into evidence; (3) and will not object to the admission of the FISA conversations at

trial. The government argues that the court must still conduct an *in camera, ex parte* review of the

submitted materials despite Defendants' motion to withdraw. The government contends that the

court must review the material regardless of whether Defendants waive their rights to suppress

evidence. The court disagrees. Indeed, if one can waive a constitutionally protected right, *see*

*Hatfield v. Scott*, 306 F.3d 223, 229-30 (5th Cir. 2002), the court knows of no impediment to waiving

a right provided under the Act.

Defendants filed their motion to withdraw on the eve of trial – February 25, 2005 –

approximately one year after the filing of their motion to suppress evidence. While the court

appreciates this magnanimous gesture on the part of Defendants, it comes at the eleventh hour after

the court has already engaged in an extensive review of the FISA materials and the merits of

Defendants' motion to suppress evidence.[11] Although Defendants have the stronger argument on this

---

[11]In their response, filed March 7, 2005, Defendants contend that because they have withdrawn their
motion to suppress, the court's "review of the applications is not only unnecessary[,] but should be
prohibited." Defs.' Resp. to Government's Mem. of Law Regarding the Ct.'s Review of the FISA
Applications Currently Before the Ct. at 4. Defendants explain further that an *ex parte, in camera* review
of "unknown and unchallenged conclusions and accusations brought forth by the [G]overnment would violate

issue, no authority prohibits the court from conducting a review under the circumstances of this case. Accordingly, given the importance of this case, out of an abundance of caution, and to ensure that all the relevant constitutional and statutory requirements have been met, the court elects to review the submitted FISA materials to determine the validity and legality of the FISA surveillances and the admissibility of the evidence obtained or derived from such surveillances. Accordingly, the court **denies** Unopposed Defendants' Motion to Withdraw Motion to Suppress Evidence – Foreign Intelligence Surveillance Act (FISA) Conversations and now addresses Defendants' motion to suppress.

### B. Defendants' Joint Motion to Suppress

Defendants' joint motion to suppress raises three issues the court must address with respect to the Government's evidence derived or obtained from the FISA court-authorized surveillances of Nadia Elashi and Abubaker:

(1) whether Defendants have standing to challenge the admissibility of evidence obtained or derived from the FISA court-authorized electronic surveillances of Nadia Elashi and Abubaker;

---

Due Process and set up a dangerous tactic in which the Government could be allowed to present secret allegations before a Court, unchallenged and unreviewed." *Id.* at 3. The materials submitted to the court, however, are beyond "conclusions and accusations." As the court will explain further, there is sufficient evidence to justify the issuance of the FISA court orders authorizing the electronic surveillances of Abubaker and Nadia Elashi. The crux of Defendants' contentions is that the court's *ex parte, in camera* review of evidence would prejudice them. The court fails to see the validity of Defendants' argument regarding prejudice. First, Defendants seek to withdraw their motion to suppress and in their response waive any right with respect to the lawfulness of the authorization to conduct surveillances and the actual surveillances conducted. As Defendants state in their response and stated in court during the March 23, 2005 pretrial conference, they waive their right to challenge the validity of the FISA applications. The court determines, therefore, they cannot be harmed if the court elects to undertake a review of such FISA applications. Second, this is a jury trial, and the jury will make the determination of whether Defendants committed the acts as alleged in the superseding indictment. Consequently, the court's review of the FISA application process causes no prejudice to Defendants.

Memorandum Opinion and Order - Page 11

(2) whether the court should allow Defendants' counsel to view portions of the application, order, or other materials relating to the surveillances; and

(3) whether sufficient probable cause existed for the FBI's surveillances of Defendants Nadia Elashi and Abubaker under FISA.

### 1. Standing to Challenge Legality of FISA-court Authorized Wiretap

The court must first determine whether Defendants Ghassan Elashi, Bayan Elashi, Basman Elashi, and Infocom have standing to seek to suppress the evidence obtained or derived through the FISA electronic surveillances of Nadia Elashi and Abubaker. Under the Act, only an aggrieved person, defined as a person who is the target of an electronic surveillance or person whose communications or activities were subject to electronic surveillance, may challenge the legality of a FISA-court authorized wiretap. *See* 50 U.S.C. §§ 1801(k), 1806(e); *U.S. v. Cavanaugh*, 807 F.2d 787, 789 (9th Cir. 1987) (party to an intercepted communication was an "aggrieved person" under the Act). Defendants Ghassan Elashi, Bayan Elashi, Basman Elashi, and Infocom were never targets of the FISA-court authorized surveillances. Further, Bayan Elashi, Basman Elashi, and Infocom never had their communications intercepted during the electronic surveillances of Nadia Elashi and Abubaker. Defendant Ghassan Elashi is the only Defendant before the court whose communications were intercepted during the electronic surveillances of Nadia Elashi and Abubaker. Accordingly, the court determines that Ghassan Elashi, although not a target of the FBI's surveillances, has standing as an aggrieved person under the Act to challenge the admissibility of the electronic surveillances, as he is a person whose communications were subject to electronic surveillance.

With respect to Defendants Bayan Elashi, Basman Elashi, and Infocom, Defendants make no showing that they were targets of the surveillances or that their communications or activities were

**Memorandum Opinion and Order - Page 12**

subject to electronic surveillance. Without either showing, Defendants Bayan Elashi, Basman Elashi, and Infocom are not aggrieved persons under the Act. Accordingly, the court determines that Defendants Bayan Elashi, Basman Elashi, and Infocom lack standing under the Act to challenge the legality of the FISA-court authorized electronic surveillances of Nadia Elashi and Abubaker, as they were not targets of the surveillances, and their communications or activities were not subject to electronic surveillance. The court now addresses Defendants' request to the court that Defendants' counsel, Mr. Anderson, be permitted to view materials related to the FISA-court authorized surveillances of Abubaker and Nadia Elashi.

### 2. Court's *In Camera* and *Ex Parte* Review of FISA Evidence

With respect to the second issue, whether Defendants' counsel, Mr. Anderson, should be permitted to view materials related to the surveillances, the court determines that it need not disclose the materials relating to the Government's FISA surveillances in order to comply with 50 U.S.C. § 1806(f)-(g) or to comport with due process. The materials submitted *ex parte* and *in camera* are sufficient for the court to determine whether the FISA surveillances were lawfully authorized and conducted without such disclosure. In accordance with 50 U.S.C. § 1806(f), *supra*, Deputy Attorney General James B. Comey filed a declaration in opposition to Defendants' request which states that "it would harm the national security of the United States to disclose or have an adversary hearing with respect to materials submitted to the United States Foreign Intelligence Surveillance Court (USFIC) in connection with this matter . . . ." Decl. and Claim of Privilege of the Deputy Att'y General of the United States at 2. Although this statement is somewhat perfunctory and conclusory, it is all the law requires, *see* 50 U.S.C. § 1806(f), and it therefore satisfies the test for whether

Memorandum Opinion and Order - Page 13

disclosure to Defendants or Defendants' counsel is required or whether the court's *ex parte*, *in camera* review is the appropriate procedure.

In general, *ex parte*, *in camera* review is to be the rule. *United States v. Belfield*, 692 F.2d 141, 147 (D.C. Cir. 1982); *U.S. v. Duggan*, 743 F.2d at 78 (2nd Cir. 1984). The court may disclose portions of the application, order, or other materials relating to the surveillance "only where such disclosure is necessary to make an accurate determination of the legality of the surveillance" or when "due process requires discovery or disclosure." 50 U.S.C. §§ 1806(f)-(g); *see Belfield*, 692 F.2d at 149; *accord Duggan*, 743 F.2d at 78. The court is unaware of any decision in which a court ordered disclosure rather than conducting an *in camera* and *ex parte* review, and the Defendants cite no such case to the court. Courts have uniformly followed the *ex parte* and *in camera* procedure in reviewing the legality of electronic surveillances authorized by FISA. *U.S. v. Nicholson*, 955 F.Supp. 588, 592 (E.D. Va. 1997) (collecting cases and noting that it knew of no instance in which a court had required an adversary hearing or disclosure in determining the legality of a FISA surveillance); *United States v. Thomson*, 752 F.Supp. 75, 79 (W.D.N.Y. 1990) ("No court that has been required to determine the legality of a FISA surveillance has found disclosure or any adversary hearing necessary."); *see also United States v. Ott*, 637 F.Supp. 62, 65-66 (E.D.Ca. 1986) (rejecting motion for disclosure), *aff'd*, 827 F.2d 473 (9th Cir. 1987); *United States v. Megahey*, 553 F.Supp. 1180, 1193-94 (S.D.N.Y. 1982) (denying defendants' request for an adversarial hearing and reviewing the legality of FISA surveillance *in camera, ex parte*); *Rahman*, 861 F.Supp. at 250-51 (no disclosure necessary to determine whether FISA surveillance was lawful); *U.S. v. Isa*, 923 F.2d 1300, 1306-7 (8th Cir. 1991) (court stating that district court properly conducted an *ex parte*, *in camera* review of

Memorandum Opinion and Order - Page 14

the application for surveillance, and that substantial national security interest required the *in camera*, *ex parte* review).

Defendants bring to light no circumstances existing in this case that would warrant a departure from this well-established procedure. The court in *Duggan*, while deciding disclosure in that case was unwarranted, noted that a need to disclose FISA materials "might arise if the judge's initial review revealed potential irregularities such as 'possible misrepresentation of fact, vague identification of the persons to be surveilled, or surveillance records which include[] a significant amount of nonforeign intelligence information, calling into question compliance with the minimization standards contained in the order.'" *Duggan*, 743 F.2d at 78 (quoting S. Rep. No. 95-604, 95th Cong., 2d Sess., at 58 (1977), *reprinted in* 1978 U.S.C.C.A.N. 3904, 3960, alteration in original) ("Senate Report 95-604").

The court conducted its own careful and independent review of the sealed, classified FISA materials submitted in connection with this case and determines that their disclosure or an adversary hearing with respect to the classified materials would be detrimental to national security.[12] Further, the court finds no abuse within the areas of scrutiny articulated in Senate Report 95-604 and discussed in *Duggan*. Finally, the court is satisfied that all the statutory requirements of FISA were met including that (1) the surveillances were authorized by and executed in compliance with a FISA court orders; (2) the FISA court orders complied with the statutory requirements; and (3) the FISA applications were supported by the necessary materials, statements, attachments, and certifications

---

[12]The court conducted an extensive review the classified materials over a period of several days. The classified materials consisted of seven affidavits, seven FISA applications, and seven FISA court orders. Because of the sensitive nature of those classified materials, the court declines to go into detail on the evidence contained in each of those documents.

Memorandum Opinion and Order - Page 15

required by statute. The court reaches its conclusion only after a thorough review of all materials and turns to address whether there was sufficient probable cause to support the Government's FISA applications.

### 3. Probable Cause Requirement of the Fourth Amendment

Defendants seek to suppress the evidence obtained and derived from the FISA surveillances of Nadia Elashi and Abubaker on the grounds that there was not sufficient probable cause to justify the issuance of the FISA court's orders authorizing their electronic surveillances. Although Defendants' short, four-page motion fails to set forth their objection in detail, Defendants' basic contention is that there was insufficient evidence to establish probable cause to believe that Nadia Elashi and Abubaker were agents of a foreign power at the time the FISA court-authorized the FBI's electronically surveillances of them. As earlier discussed, before the FISA court may issue an order approving an application for electronic surveillance under the Act, it must determine, on the basis of the facts submitted by the applicant, that there is probable cause to believe that (1) the target of the electronic surveillance is a foreign power or an agent of a foreign power; (2) each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power; and (3) none of the targets that are "United States persons" were deemed to be an agent of a foreign power solely on the basis of activities protected by the First Amendment. 50 U.S.C. § 1805(a)(3). In determining whether probable cause exists, the FISA court may consider past activities of the target, as well as facts and circumstances relating to current or future activities of the target. 50 U.S.C. § 1805(b). With respect to the executive certification accompanying the FISA application, the FISA court must determine that (1) an authorized member of the executive branch has certified that the FISA surveillance was conducted

Memorandum Opinion and Order - Page 16

for an appropriate purpose; (2) the certification is supported by probable cause; and (3) the application is not clearly erroneous as it applies to a United States person. *Duggan,* 743 F.2d at 73-74 (citing H.R. Rep. No. 95-1283, pt. 1, at 92-93 (1978) ("House Report")); *accord Rahman,* 861 F.Supp at 251. A reviewing court, whether a FISA court or this court, is not to "second guess" the certification.[13] *Duggan,* 743 F.2d at 77.

Having conducted its *ex parte, in camera* review of the submitted FISA materials, the court concludes that there was ample probable cause to believe that (1) Nadia Elashi and Abubaker were agents of a foreign power; (2) each of the facilities or places at which the electronic surveillance had been directed was being used, or was about to be used, by the respective target; and (3) Nadia Elashi and Abubaker were not deemed to be agents of a foreign power solely on the basis of activities protected by the First Amendment. The court sees no basis in this case to suggest that the applications to the FISA court did not meet the statutory requirements. Further, although Defendants do not challenge whether the applications for electronic surveillance met the remaining requirements of the Act, the court determines that all the statutory requirements were satisfied. For the reasons herein stated, the court determines that the surveillances were lawfully authorized and conducted.

---

[13] In particular, the House Report states:

> [I]n determining the legality of a surveillance . . . the trial judge . . . [is] not to make determinations which the issuing judge is not authorized to make. Where the bill specifies the scope or nature of judicial review in the consideration of an application, any review under these subsections is similarly constrained. For example, when reviewing the certifications required by [§ 1804(a)(7)], unless there is a prima facie showing of a fraudulent statement by a certifying officer, procedural regularity is the only determination to be made if a non-U.S. person is the target . . . .

H.R. Rep. No. 95-1283, pt. 1, at 92-93 (1978).

Memorandum Opinion and Order - Page 17

Accordingly, the court **denies** Defendants' Joint Motion to Suppress Evidence – Foreign Intelligence Surveillance Act [FISA] Conversations.

### III.    <u>Conclusion</u>

The court has conducted an *ex parte, in camera* review of the materials submitted by the Government and concludes that the information obtained or derived from the FISA surveillances were lawfully acquired, the FISA surveillances were made in conformity with orders of authorization, and the materials related to the FISA surveillances and submitted to the court for *ex parte, in camera* review need not be disclosed to Defendants or their counsel. For the reasons stated herein, the court **denies** Unopposed Defendants' Motion to Withdraw Motion to Suppress Evidence – Foreign Intelligence Surveillance Act (FISA) Conversations and **denies** Defendants' Joint Motion to Suppress Evidence – Foreign Intelligence Surveillance Act [FISA] Conversations. Accordingly, none of the classified materials is to be disclosed to Defendants or their counsel, and the materials shall remain **under seal**. The court has informed the parties of its ruling on this matter and will release this opinion and order to them at a later date during this trial.

This opinion and order is to be filed **under seal** and **shall not** be made public until the court directs that it be unsealed. As such, copies of the opinion and order may be provided to only counsel for the parties, and no copies are to be provided to or viewed by any person other than the parties to this litigation.

**It is so ordered** this <u>24th</u> day of March, 2005.

Sam A. Lindsay
United States District Judge

Memorandum Opinion and Order - Page 18