**22**

# U.S. SENATOR PATRICK LEAHY

CONTACT: Office of Senator Leahy, 202-224-4242      VERMONT

---

Statement Of Sen. Patrick Leahy,
Ranking Member, Judiciary Committee,
Hearing On "NSA III: War Time Executive Power And The FISA Court"
March 28, 2006



Click here to listen    Click for video stream RealMedia

I thank the Chairman for holding this hearing today. We desperately need some answers to basic questions about the President's decision to wiretap Americans on American soil without court approval and without attempting to comply with the Foreign Intelligence Surveillance Act. More than three months and two Committee hearings after the President was forced to acknowledge the program's existence, this Committee remains in the dark with regard to nearly every aspect of the program. As Senator Specter succinctly put it recently, we are still "flying blind on a great deal of this."

We held our first hearing on February 2 with Attorney General Gonzales. His testimony was more obstructionist than enlightening. He flatly refused to discuss anything beyond "those facts the President has publicly confirmed, nothing more." In other words, he refused to tell us anything we did not already know.

The Administration's stonewalling has only gotten worse since then. Three weeks later, the Attorney General wrote an extraordinary letter to Chairman Specter, seeking to alter his live testimony – mainly by making it even less responsive than it was. That letter raised serious additional concerns about the scope of the Administration's domestic spying activities, its shifting legal rationalizations, and the Attorney General's own credibility.

For example, the Attorney General's letter suggests that the Administration is operating other secret programs that invade the rights and liberties of Americans. But it refuses to answer our questions regarding the scope and the purported legal basis of those programs.

The Attorney General's letter admits that "the Department's legal analysis has evolved over time," while once again refusing to answer the basic factual question of when the Administration came up with its theory that the congressional resolution authorizing military force against al Qaeda also authorized warrantless domestic wiretapping of Americans. I can only infer that the Administration's AUMF theory was concocted long after it decided to ignore FISA.

The AUMF says nothing about FISA or about domestic wiretaps. And no members of

Congress I have spoken to understood themselves to be partially repealing FISA's warrant requirement when they voted for the AUMF. So here, four years after the fact, we have an Administration that purports to pride itself on "strict construction" claiming that, unbeknownst to the Congress that passed it, the AUMF's silence on wiretaps overrides FISA's express prohibition, including in wartime, of warrantless domestic wiretaps. I agree with George Will who wrote in a column last month that that after the fact rationalization is both "risible" and "incoherent."

To fulfill our legislative function, we need to know what other invasions into Americans' rights and privacy the Administration believes we authorized, and why. However, the Bush-Cheney Administration continues to stonewall.

The Democratic members of the Committee finally received a response late last Friday to the priority questions we sent the Attorney General following his appearance on February 6. I say we received a "response" because saying we got "answers" would be an exaggeration. What we got, with respect to virtually every question, was some version of "we cannot [answer]" or "we are not able to [answer]" or "we are not in a position [to answer]" or simply, "it would be inappropriate for us [to answer]."

We held our second hearing on the program on February 28. That hearing was an academic panel discussion featuring scholars and former government officials with a great deal of expertise in the law, but no knowledge of the program that they were discussing. We had a good discussion. But it was not oversight.

Nor is our hearing today. Our witnesses are experts in the Foreign Intelligence Surveillance Act, but they have no special knowledge of the President's program to wiretap Americans outside of that Act. They cannot tell us any more than the very little that we already know about what this Administration has been doing for the last four years under its theory of limitless Executive power.

We are stuck at an impasse, lacking information or cooperation from an Administration that refuses to submit to real congressional oversight. This is, of course, nothing new from an obsessively secretive Administration that has classified historical documents for no reason, conducted energy policy and attempted to outsource port security behind closed doors, routinely blocked investigations and audits, repeatedly harassed whistleblowers, and dismissively refused to cooperate with congressional oversight for more than five years. This Administration has a paranoid aversion to openness and accountability that will not be overcome by gentle persuasion.

The Administration tells us, we won't tell you enough to do meaningful oversight over what we're doing, so just trust us. But how can we trust this Administration, when every day brings more evidence of its incompetence, including yesterday's revelation that our borders are not even secure from the simplest scheme to smuggle in a dirty bomb?

So how can we move forward to protect the security and the rights and freedoms of the

American people? I believe that we in Congress need to do three things.

First, if the rule of law means anything, we must insist on real oversight and real accountability. The Chairman said at our last hearing, "we will struggle to try to find out what the program is." With the greatest of respect, that need not be a "struggle." We have the constitutional right to compel information from this Administration by subpoena. During the last two years of the Clinton Administration, this Committee approved the issuance of more than a dozen subpoenas to the Department of Justice and former DOJ officials, both for documents, including legal memoranda, and for live testimony. The question is not whether we *can* find out the extent of the Administration's secret spying on the American people. The question is whether the Republican majority of this Congress has the political will to do so.

Second, if there is a real need for legislation that eases existing restrictions under FISA, we should of course pass it, as we have done on a bipartisan basis with numerous powers requested by this Administration over the past five years. However, we should not rush to give the Administration new powers it has not deigned to request, based on concerns it has not articulated.

Finally, in discussing legislation, we should collectively draw a line in the sand. No new powers should be given to this Administration until we secure a firm assurance that it will faithfully execute and abide by the law as written by Congress. We have spent many hours of the people's time in this Congress, and been subjected to extreme partisan political pressure, responding to the Administration's repeated demands for urgent amendments to FISA, the PATRIOT Act and other laws that limit Americans' civil liberties for the sake of security. Yet, as George Will pointed out, all those debates have been a meaningless charade if the Administration's "monarchical" assertions of essentially unfettered presidential power to conduct the war on terror are taken seriously. If, as the Administration contends, the President can pick and choose which laws he will or will not follow, what is the point of our amending FISA?

We are not here to play charades. We are here to legislate the law of the land. So any further legislation that we enact in this area should, at a minimum, include express provisions that require the President to stop equivocating with vague, expansive and dangerous theories of inherent powers, and to accept that he is fully bound by the legislation as written. We must put an end to police state powers operating outside the law.

# # # # #

| Home | Biography | Vermont | Issues | Press | Office | Services | Search |