UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL ACTION NO. |
| VS. | ) | |
| | ) | 3:04-CR-240-G |
| HOLY LAND FOUNDATION FOR | ) | |
| RELIEF AND DEVELOPMENT (01), | ) | **ECF** |
| SHUKRI ABU BAKER (02), | ) | |
| MOHAMMAD EL-MEZAIN (03), | ) | |
| GHASSAN ELASHI (04), | ) | |
| MUFID ABDULQADER (07), and | ) | |
| ABDULRAHAM ODEH (08), | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendants, the Holy Land Foundation for Relief and Development ("the HLF"), Shukri Abu Baker ("Baker"), Mohammad El-Mezain ("El-Mezain"), Ghassan Elashi ("Elashi"), Mufid Abdulqader ("Abdulqader") and Abdulrahman Odeh ("Odeh") (collectively, "the defendants"), to strike prejudicial surplusage ("Defendants' Motion") from the superseding indictment

in this case. For the reasons stated below, the motion is granted in part and denied in part.

## I. BACKGROUND

This case arose from the defendants' donations to various organizations alleged to be affiliated with or controlled by Hamas, a specially designated terrorist organization. In their motion, the defendants object to two types of surplusage they believe should be stricken from the superseding indictment: (1) references to the defendants' family members who are affiliated with Hamas, and (2) phrases the defendants allege broaden the scope of the indictment. *See* Defendant's Motion at 2. The government argues the references to family members are appropriate because those relationships are relevant to the conspiracy charges against the defendants. *See* Government's Response to Defendants' Joint Motion to Strike Surplusage ("Government's Response") at 4. Similarly, the government posits that the phrases the defendants' allege broaden the scope of the superseding indictment are appropriate and that those phrases are not prejudicial. *Id.* at 5.

## II. ANALYSIS

### A. Legal Standard for Striking Surplusage

Federal Rule of Criminal Procedure 7(d) provides that a court "may strike surplusage from the indictment or information." The advisory committee note to Rule 7(d) explains that the rule is meant to protect defendants "against immaterial or

irrelevant allegations in an indictment or information, which may, however, be prejudicial." However, "[f]or language to be struck from an indictment, it must be irrelevant, inflammatory, and prejudicial." *United States v. Graves*, 5 F.3d 1546, 1550 (5th Cir. 1993), *cert. denied*, 511 U.S. 1081 (1994). If "the charge is not materially broadened and the accused is not misled," then the surplusage should remain in the indictment. *United States v. Quintero*, 872 F.2d 107, 111 (5th Cir. 1989), *cert. denied*, 496 U.S. 905 (1990). Similarly, the court may only strike portions of an indictment to which a defendant specifically objects. *See* Comment to FED. R. CRIM. P. 7(d) ("The authority of the court to strike such surplusage is to be limited to doing so on defendant's motion, in the light of the rule that the guaranty of indictment by a grand jury implies that an indictment may not be amended."). The decision to grant or deny a motion to strike portions of an indictment is left to the sound discretion of the district court. *Graves*, 5 F.3d at 1550.

### B. References to the Defendants' Family Members

The defendants move to have the following five references to their family members stricken from the superseding indictment:

> 1. "The defendant **Shukri Abu Baker**'s brother is Jamal Abu Baker, a.k.a [sic] Jamal Issa, the former HAMAS leader in the Sudan and the current HAMAS leader in Yemen." Superseding Indictment at 7, ¶ 13.
>
> 2. "The defendant **Mohammad El-Mezain** is a cousin of HAMAS Deputy Political Chief and Specially Designated Terrorist Mousa Abu Marook." *Id.* at 7, ¶ 14.

>    3.   "The defendant **Ghassan Elashi** is related by marriage to HAMAS Deputy Political Bureau Chief and Specially Designated Terrorist Mousa Abu Marzook." *Id.* at 7-8, ¶ 15.
>
>    4.   "The defendant **Akram Mishal** is a cousin of HAMAS Political Bureau Chief and Specially Designated Terrorist Khalid Mishal." *Id.* at 8, ¶ 17.
>
>    5.   "The defendant **Mufid Abdulqader** is the half-brother of HAMAS Political Bureau Chief and Specially Designated Terrorist Khalid Mishal." *Id.* at 8, ¶ 18.

*See* Defendants' Motion at 3. The defendants argue that these references to their family members who hold offices within Hamas are highly prejudicial and meant to implicate the defendants with "guilt by association." *Id.* at 4. The government counters that the references to the Hamas-affiliated family members of the defendants are relevant to the defendants' knowledge and intent in committing the conspiracy described in the superseding indictment. *See* Government's Response at 4.

The defendants are correct that the government is not permitted to introduce evidence that they are guilty simply because they associate with or are related to individuals affiliated with Hamas. See *United States v. Polasek*, 162 F.3d 878, 884 (5th Cir. 1998) (providing examples of evidence improperly used against defendants who associated with various "'unsavory characters'"). However, the government is allowed to introduce evidence regarding the defendants' relationships if those relationships are pertinent to the criminal conduct alleged in the indictment. See

*United States v. Williams-Hendricks*, 805 F.2d 496, 502-03 (5th Cir.), *rehearing denied*, 808 F.2d 56 (1986).

In this case, the defendants are charged with conspiracy "to provide material support and resources . . . to HAMAS." Superseding Indictment at 13, ¶ 2. The fact that family members of the defendants held positions within Hamas at the time of the alleged conspiracy is circumstantial evidence that the defendants were familiar with Hamas and its terrorist activities. If the mere familial relationship between the defendants and political officials within Hamas is the only evidence the government produces to tie the defendants to the alleged conspiracy, then the defendants cannot be convicted. See *Williams-Hendricks*, 805 F.2d at 503. However, if the government has other evidence that will prove the existence of the alleged conspiracy, it should not be denied the opportunity to show that the defendants provided funds to a specially designated terrorist organization in which their family members held political positions. *Id.* This portion of the motion is therefore denied.

C.  Phrases that Allegedly Broaden the Scope of the Indictment

The defendants move to strike the following portions of the superseding indictment that they believe broaden the scope of the defendants' alleged acts:

> 1.  The phrase "among others." Superseding Indictment at 6, ¶ 11.
>
> 2.  The phrases "including other organizations of the Palestinian Committee, such as the IAP," "and others," and "Certain of these organizations, including." *Id.* at 9, ¶ 21.

3. The phrase "One of the ways." *Id.* at 11, ¶ 24.

4. Two occurrences of the phrase "and elsewhere." *Id.* at 13, ¶ 3.

5. The phrase "among others." *Id.* at 15, ¶ 6.

6. Two occurrences of the phrase "and others." *Id.* at 16, ¶ 7.

7. The phrases "and other organizations and programs" and "and elsewhere." *Id.* at 17, ¶ 9.

8. The phrases "and elsewhere," "and other organizations and programs," and "and elsewhere." *Id.* at 17, ¶ 10.

9. The phrase "among others." *Id.* at 18, ¶ 11.

10. Three occurrences of the phrase "among others" and the phrase "and other organizations." *Id.* at 19, ¶ 12.

11. The phrase "and elsewhere." *Id.* at 22, ¶ 3.

12. Two occurrences of the phrase "among others." *Id.* at 23, ¶ 4.

13. The phrases "to places outside the United States" and "and elsewhere." *Id.* at 27, ¶ 2.

14. Two occurrences of the phrase "among others." *Id.* at 28, ¶ 4.

15. The phrases "to places outside the United States" and "and elsewhere." *Id.* at 30, ¶ 2.

16. The phrase "among others." *Id.* at 34, ¶ 7.

*See* Defendants Motion at 5-7. The defendants contend that the above phrases improperly insinuate that the defendants were engaged in wrongful acts beyond those actually charged in the superseding indictment and may lead the prosecution to attempt to introduce evidence of extraneous activities at trial. *Id.* at 7-8. The government provides two arguments in favor of retaining the language: (1) the prosecution will establish the relevance and appropriateness of the broadening language by offering evidence at trial,[*] and (2) "such words are not inflammatory or prejudicial to the defendants, nor do they serve to enlarge the charge against the defendants." Government's Response at 5.

The Fifth Circuit has held that terms and phrases like those at issue in the superseding indictment are surplusage. See *United States v. Freeman*, 619 F.2d 1112, 1118 (5th Cir. 1980) (stating that language such as "included, but were not limited to, the following," "among others," and "the following and other offenses" is surplusage), *cert. denied*, 450 U.S. 910 (1981). Phrases indicating the defendants are guilty of "other" overt acts or offenses in addition to those specifically detailed in the indictment are clearly prejudicial and should be stricken. *Marsh v. United States*, 344 F.2d 317, 322 (5th Cir. 1965) ("if, instead of striking the words 'and other,' the amendment [to the indictment] had added those words so as to increase the number

---

[*] The irony of presenting this argument -- that the prosecution seeks to offer evidence at trial on matters vaguely referenced but not fully explained in the superseding indictment, which is the precise conduct to which the defendants object -- is apparently lost on the government.

- 7 -

of offenses charged, clearly the amendment would be prejudicial to the defendants and not 'merely a matter of form.'"). However, some of the alleged surplusage is not prejudicial. For example, the two occurrences of the phrase "to places outside the United States" to which the defendants object do not imply any additional wrongful conduct and, therefore, are not prejudicial.

### III.  CONCLUSION

For the reasons set forth above, the defendants' motion to strike the portions of the superseding indictment referring to family members of the defendants is **DENIED**, and the defendants' motion to strike the portions of the superseding indictment that include phrases that broaden the scope of the indictment is **GRANTED** in part and **DENIED** in part. As a result of this ruling, the superseding indictment is modified as follows:

> 1.  The first sentence of paragraph 11 on page 6 is modified to read, "In or around 1988, shortly after the founding of HAMAS, **The Holy Land Foundation For Relief and Development ("HLF")** was created by the defendants **Shukri Abu-Baker, Mohammad El-Mezain** and **Ghassan Elashi,** to fulfill the fundraising component of the Palestinian Committee."
>
> 2.  The first three sentences of paragraph 21 on page 9 are modified to read, "As previously described, the **HLF** was deeply involved with a network of Muslim Brotherhood organizations dedicated to furthering the radical violent agenda espoused by HAMAS. These organizations served in different capacities, such as propaganda development and distribution, banking, and creating fundraising forums through which the **HLF** raised

money.  The **HLF** sponsored conventions, seminars, rallies and teleconferences in support of radical Islamic causes, including HAMAS.

3. The first sentence of paragraph 24 on page 11 is modified to read, "The HLF supported HAMAS by subsidizing HAMAS' vital recruitment and reward efforts in the West Bank and Gaza."

4. Paragraph 3 on page 13 is modified to read, "The defendants **HLF**, **Shukri Abu Baker**, **Mohammad El-Mezain**, **Ghassan Elashi**, **Haitham Maghawri**, **Akram Mishal**, **Mufid Abdulqader** and **Abdulrahman Odeh** provided material support and resources to the designated Foreign Terrorist Organization HAMAS by raising funds in the United States and sending those funds to organizations and programs in the West Bank and Gaza, which operated on behalf of, or under the control of, HAMAS."

5. The second sentence of paragraph 6 on pages 15-16 is modified to read, "The defendants **HLF**, **Shukri Abu Baker**, **Mohammad El-Mezain**, **Ghassan Elashi**, **Haitham Maghawri**, **Akram Mishal**, **Mufid Abdulqader** and **Abdulrahman Odeh** in following counter-surveillance measures outlined in a manual they possessed entitled "The Foundation's Policies and Procedures," did the following: retained the services of a security company to search the premises of the **HLF** for listening devices; directed the defendant **Haitham Maghawri** to take training on advanced methods in the detection of wiretaps; shredded documents; maintained incriminating documents at off-site locations, including on the premises of Infocom, a related entity of which the defendant **Ghassan Elashi** was an officer and HAMAS leader Mousa Abu Marzook was a major investor; the defendants **Shukri Abu Baker** and **Akram Mishal** traveled overseas while falsely posing as Infocom employees; and in conversations between themselves and others, the defendants **HLF**, **Shukri Abu Baker**, **Mohammad El-Mezain**, **Ghassan Elashi**, **Haitham Maghawri**, **Akram Mishal**, **Mufid Abdulqader**

and **Abdulrahman Odeh** often spoke in code in order to conceal the true nature of their conversation."

6.   Paragraph 7 on page 16 is modified to read, "In order to provide the **HLF** with a cloak of legitimacy and to conceal its relationship to HAMAS, the defendant **Shukri Abu Baker** discussed with the defendant **Ghassan Elashi** the need to provide minimal support to legitimate charitable causes. In furtherance of the conspiracy, and in order to conceal the existence of the conspiracy, the defendants **HLF**, **Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** carried out this plan, while providing a substantial amount of their financial assistance to organizations and programs, which operated on behalf of, or under the control of, HAMAS, and to families of HAMAS "martyrs" and detainees."

7.   Paragraph 9 on page 17 is modified to read, "In furtherance of the conspiracy, the defendants **HLF**, **Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** wire transferred and caused to be wire transferred money from the **HLF** bank accounts in the Northern District of Texas, to zakat committees located in the West Bank and Gaza, which were acting on behalf of, or under the control of, HAMAS."

8.   Paragraph 10 on page 17 is modified to read, "In furtherance of the conspiracy, the defendants **HLF**, **Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** wire transferred money from the **HLF** bank accounts in the Northern District of Texas, to the **HLF** offices in the West Bank and Gaza for further distribution to zakat committees located in the West Bank and Gaza, which were acting on behalf of, or under the control of, HAMAS, as well as for direct payment to individuals whom the **HLF** supported on behalf of

HAMAS, including the family members of "martyrs" and prisoners."

9.   The portion of paragraph 11 on pages 17-18 up to the colon is modified to read, "In furtherance of the conspiracy and to accomplish its purposes, on or about the dates listed below, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** committed the following overt acts by issuing and causing to be issued wire transfers in the amounts indicated, among others, to be sent from the **HLF** bank accounts in the Northern District of Texas to the following organizations, which operated on behalf of, or under the control of, HAMAS."

10.   The portion of paragraph 12 on pages 18-19 up to the colon is modified to read, "In furtherance of the conspiracy and to accomplish its purposes, on or about the dates listed below, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** committed the following overt acts by issuing and causing to be issued wire transfers in the amounts indicated to be sent from the **HLF** bank accounts in the Northern District of Texas to the **HLF** offices in the West Bank and Gaza, which were then further distributed to zakat committees and to family members of individuals who were either "martyred" or jailed for terrorist related activities."

11.   Paragraph 3 on page 22 is modified to read, "In furtherance of the conspiracy, on or about January 25, 1995, and continuing until the date of this Indictment, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** made regular monetary payments to zakat committees and individuals located in the West Bank and Gaza who were

acting on behalf of, or under the control of, a Specially Designated Terrorist, namely HAMAS."

12.     The portion of paragraph 4 on page 23 up to the colon is modified to read, "In furtherance of the conspiracy, and in order to accomplish its purposes, on or about the dates listed below, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** committed the following overt acts by contributing funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, to wit, by issuing and causing to be issued wire transfers in the amounts indicated from the **HLF** bank accounts in the Northern District of Texas, to the following organizations, which operated on behalf of, or under the control of, HAMAS."

13.     Paragraph 2 on page 27 is modified to read, "Beginning from on or about January 25, 1995, and continuing until the date of the Indictment, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** and others known and unknown to the Grand Jury, in offenses involving interstate and foreign commerce, transmitted and transferred, and attempted to transmit and transfer, funds from a place within the United States, namely the Northern District of Texas, to places outside the United States, including the West Bank and Gaza, with the intent to promote the carrying on of a specified unlawful activity, to wit, by contributing funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, in violation of Title 50, United States Code, Sections 1701 through 1706 (IEEPA), and punishable under Section 206 of IEEPA (also known as Title 50, United States Code, Section 1705(b))."

14.     The portion of paragraph 4 on page 28 up to the colon is modified to read, "In furtherance of the conspiracy, and in order to accomplish its purposes, on or about the dates listed below, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** committed the following overt acts by contributing funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, by issuing and causing to be issued wire transfers in the amounts indicated from the **HLF** bank accounts in the Northern District of Texas, to the following organizations located within the West Bank and Gaza, which operated on behalf of, or under the control of, HAMAS."

15.     The portion of paragraph 2 on page 30 up to the colon is modified to read, "On or about each of the dates set forth below, for each count below, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh**, aided and abetted by each other and others known and unknown to the Grand Jury, in offenses involving interstate and foreign commerce, transmitted and transferred, and attempted to transmit and transfer, funds in the amounts indicated, from a place within the United States, namely the Northern District of Texas, to places outside the United States, including the West Bank and Gaza, with the intent to promote the carrying on of a specified unlawful activity, to wit, by willfully contributing funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, in violation of Title 50, United States Code, Sections 1701 through 1706 (IEEPA), and punishable under Section 206 of IEEPA (also known as Title 50, United States Code, Section 1705(b))."

  16. The portion of paragraph 7 on page 34 up to the colon is modified to read, "In furtherance of the conspiracy, and in order to accomplish its purposes, on or about the dates listed below, the defendants **Shukri Abu Baker** and **Ghassan Elashi** committed the following overt acts by signing and filing the following false Returns of Organization Exempt from Income Tax, Form 990, with the Internal Revenue Service."

 Before trial, the government shall produce a redacted version of the superseding indictment, incorporating the changes required by this memorandum opinion and order, to be read and distributed to the jury.

 **SO ORDERED**.

December 8, 2006.

                _____
                A. JOE FISH
                CHIEF JUDGE