UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL ACTION NO. |
| VS. | ) | |
| | ) | 3:04-CR-240-G |
| HOLY LAND FOUNDATION FOR | ) | |
| RELIEF AND DEVELOPMENT (01), | ) | **ECF** |
| SHUKRI ABU BAKER (02). | ) | |
| MOHAMMAD EL-MEZAIN (03), | ) | |
| GHASSAN ELASHI (04), | ) | |
| MUFID ABDULQUADER(06), and | ) | |
| ABDULRAHAM ODEH (08), | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendants, the Holy Land Foundation for Relief and Development ("the HLF"), Shukri Abu Baker ("Baker"), Mohammad El-Mezain ("El-Mezain"), Ghassan Elashi ("Elashi"), Mufid Abdulqader ("Abdulqader") and Abdulraham Odeh ("Odeh") (collectively, "the defendants"), to suppress evidence seized from the HLF's offices on December 4, 2001. For the reasons set forth below, the motion is denied.

I. BACKGROUND

This case arose from the defendants' donations to various organizations alleged to be affiliated with or controlled by Hamas, a specially designated terrorist organization. On December 3, 2001, the United States designated the HLF as a specially designated terrorist and specially designated global terrorist. *See* Defendants' Joint Motion and Memorandum to Suppress Evidence ("Defendants' Motion") at 3. On December 4, 2001, in accordance with this terrorist designation and the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq.*, the Office of Foreign Asset Control ("OFAC"), a division of the Department of Treasury, blocked HLF's assets. *Id.* The same day OFAC searched HLF's offices in California, Illinois, New Jersey, and Texas and seized physical property and assets in those locations. *Id.*; Government's Response to Defendants' Joint Motion and Memorandum to Suppress Evidence ("Government's Response") at 2.

OFAC based its seizures entirely on its authority derived from the IEEPA, relevant executive orders, and the blocking notices pertaining to HLF's assets; it did not obtain a search warrant or other judicial approval before engaging in the searches and seizures. Defendant's Motion at 5. In April 2002, the FBI obtained warrants from Magistrate Judge Stickney of this court to search HLF property that had been previously seized by OFAC. See *id.* at Exhibit C.

The defendants argue that OFAC's actions violated their Fourth Amendment rights and that the court should, therefore, suppress all evidence obtained as a result of those searches.  *Id.* at 6.  The government counters that (1) OFAC's conduct did not constitute search and seizure under the Fourth Amendment because it merely secured HLF property to prevent asset flight and took no investigatory action, and (2) OFAC operated under the authority of the IEEPA and executive orders which give the president broad authority to respond to national security threats.  Government's Response at 2-3, 7-8.

## II.  ANALYSIS

As an initial matter, the government argues that the Fourth Amendment was not implicated by OFAC's conduct because no investigative action was undertaken until the FBI obtained a warrant in April 2002.  *Id.* at 2-3.  The government offers no authority for this contention, and the court finds it unpersuasive.  The Fourth Amendment not only prohibits the unauthorized search of property; it also prohibits unauthorized seizure -- an action clearly taken by OFAC.

Whether an action violates the Fourth Amendment, however, is a different question from whether the action simply implicates the amendment's protections.  In this case, the government contends that OFAC did not violate the Fourth Amendment because no warrant was required for OFAC to seize the HLF's property.

This argument is premised on the fact that OFAC derives its authority to seize assets from executive orders and the IEEPA. *Id.* at 7-9.

The defendants dispute this contention, relying heavily on *G.M. Leasing Corporation v. United States*, 429 U.S. 338 (1977), for the proposition that OFAC needed a warrant to seize the HLF's property. *See* Defendants' Motion at 6-9. Specifically, the defendants aver that "the authority to levy or block property does not carry with it the authority to make a warrantless intrusion onto private property." *Id.* at 8, citing *G.M. Leasing*, 429 U.S. at 354. However, the defendants overstate the reach of the general rule announced by *G.M. Leasing*.

In *G.M. Leasing*, the United States Supreme Court distinguished the seizure of automobiles parked in public locations from the seizure of books and records contained on the premises of a private business, finding that the IRS could not enter the offices of an automobile lessor without a warrant. *G.M. Leasing*, 429 U.S. at 352-53. Although the court recognized that some types of businesses may, by their "special nature and voluntary existence," open themselves up to inspection from authorities, the intrusion into the petitioner's business was based solely on the IRS's authority to seize assets to satisfy tax assessments rather than "the nature of its business, its license or any regulation of its activities." *Id.* at 353-54.

The defendants have previously challenged OFAC's search in a civil action. See *Holy Land Foundation for Relief and Development v. Ashcroft*, 219 F. Supp. 2d 57

(D.D.C. 2002), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 1218 (2004). In that case, the court agreed with the defendants that the "administrative search exception" did not apply to HLF because the IEEPA does not provide the "essential safeguards of predictability and implicit notice that satisfy the requirements of the Fourth Amendment." *Id.* at 80. This court respectfully disagrees.

The defendants have admitted that the IEEPA applies to them. *See* Defendant's Motion at 7-8. They argue, however, that a "nonprofit humanitarian organization is not a 'closely regulated' industry" as would be required to support a warrantless search. *Id.* at 10, citing *New York v. Burger*, 482 U.S. 691, 715 (1987). In *Burger*, the Supreme Court found that an administrative scheme allowing inspectors to review the records and inventory of vehicle junkyard operators to ensure that stolen vehicles are not being improperly dismantled did not violate the Fourth Amendment. *Burger*, 482 U.S. at 715-16. The court found that the statute satisfied an important administrative purpose and that it was not unconstitutional simply because inspectors regularly discovered other criminal behavior when conducting statutorily authorized inspections. *Id.*

While the court agrees with the defendants that nonprofit humanitarian organizations are not a closely regulated industry like automotive junkyards or arms dealers, the court believes a more relevant categorization applied to the HLF at the time OFAC executed the blocking order and seized property belonging to the

defendants -- it was a specially designated global terrorist.  *See* Defendant's Motion at 3.  Moreover, the IEEPA clearly gave the defendants notice that the government could use any means specified by the President to "investigate, block . . . regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property" in which the HLF had an interest.  50 U.S.C. § 1702(a)(1)(B).  The court cannot agree with the defendants' assertion, *see* Defendant's Motion at 10, that OFAC's seizure was not based on the government's regulation of the HLF's activities.  Indeed, the court finds that OFAC's seizure was based entirely on the government's regulation of specially designated terrorist organizations in accordance with Executive Orders 12947 and 13224 and the IEEPA.  See *id.* at 7.

Furthermore, even if the court were to conclude that OFAC's actions violated the Fourth Amendment -- which they do not -- the defendants have not shown that the exclusionary rule should apply to the evidence obtained from OFAC's seizure.  In *Arizona v. Evans*, 514 U.S. 1, 12-14 (1995), the Supreme Court noted that the exclusionary rule does not apply to every violation of the Fourth Amendment.[*]  The

---

[*] The Court said:

> In *Whiteley [v. Warden Wyoming State*
>
> (continued...)

court held, "exclusion is appropriate only if the remedial objectives of the [exclusionary] rule are thought most efficaciously served." *Id.* at 13-14.

The primary objective of the exclusionary rule is to deter misconduct by law enforcement. See *United States v. Leon*, 468 U.S. 897, 916 (1984). Consequently, the rule should not be applied where it would "deter objectively reasonable law enforcement activity." *Id.* at 919. As the Supreme Court noted in *Evans*, the good faith exception to the exclusionary rule "applies when an officer conducts a search in objectively reasonable reliance on the constitutionality of a statute that subsequently is declared unconstitutional." 514 U.S. at 14. When these rules are applied to the present case, it is clear the evidence obtained from OFAC's seizure should not be excluded. OFAC reasonably relied on the IEEPA when it seized property from the HLF. The defendants themselves admit OFAC could reasonably rely on the IEEPA to

---

*(...continued)
*Penitentiary*, 401 U.S. 560 (1971)], the Court treated identification of a Fourth Amendment violation as synonymous with application of the exclusionary rule to evidence secured incident to that violation. Subsequent case law has rejected this reflexive application of the exclusionary rule. These later cases have emphasized that the issue of exclusion is separate from whether the Fourth Amendment has been violated, and exclusion is appropriate only if the remedial objectives of the rule are thought most efficaciously served.

*Arizona v. Evans*, 514 U.S. 1, 13-14 (1995) (citations omitted)

seal the HLF's offices to fulfill its asset blocking obligation. *See* Defendant's Motion at 9. They merely object to OFAC seizing and removing assets before obtaining a warrant. The court sees no reason to distinguish between depriving a defendant of property by sealing off the defendant's offices and depriving a defendant of property by transporting the property to a remote location for safekeeping.

In addition, even if it is assumed that the FBI's search of the HLF's property was unconstitutional, the court concludes that the good faith exception applied to that search. The FBI obtained a search warrant and reasonably relied upon that warrant before it searched the materials seized by OFAC. *Id.* at 5. To the extent the defendants hint that the FBI acted improperly when it applied for a search warrant because it did not disclose to the magistrate judge the fact that OFAC seized the HLF's property without a warrant, see *id.*, the court disagrees. The FBI was entitled to reasonably rely on the IEEPA to determine that OFAC's actions were lawful; therefore, it did not improperly omit relevant information in its warrant application.

To summarize, the court finds that the government's regulation of specially designated terrorists is sufficiently comprehensive that the regulatory scheme propagated by 50 U.S.C. § 1702(a)(1)(B) is adequate to put such organizations on notice that their property will be subject to periodic inspections so that a warrant is not required before such a search may be conducted. See *Donovan v. Dewey*, 452 U.S. 594, 599-600 (1981). In the alternative, if OFAC's conduct violated the Fourth

Amendment, the court finds that it reasonably relied upon the IEEPA in seizing the HLF's property so that the good faith exception to the exclusionary rule applies. See *Evans*, 514 U.S. at 14.  Moreover, if the FBI's search of the HLF's property in April 2002 violated the Fourth Amendment, it reasonably relied upon the search warrant issued by Magistrate Judge Stickney so that the good faith exception applies to its conduct as well. *Id.*

### III. CONCLUSION

For the reasons stated above, the defendants' motion to suppress evidence is **DENIED**.

**SO ORDERED**.

May 2, 2007.

_____
A. JOE FISH
CHIEF JUDGE