UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL ACTION NO. |
| VS. | ) | |
| | ) | 3:04-CR-240-G |
| HOLY LAND FOUNDATION FOR | ) | |
| RELIEF AND DEVELOPMENT (01), | ) | **ECF** |
| SHUKRI ABU BAKER (02), | ) | |
| MOHAMMAD EL-MEZAIN (03), | ) | |
| ELASHI GHASSAN (04), | ) | |
| MUFID ABDULQADER (07), and | ) | |
| ABDULRAHAM ODEH (08), | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the motions of the defendants, the Holy Land Foundation

for Relief and Development ("the HLF"), Shukri Abu Baker ("Baker"), Mohammad

El-Mezain ("El-Mezain"), Ghassan Elashi ("Elashi"), Mufid Abdulqader

("Abdulqader") and Abdulraham Odeh ("Odeh") (collectively, "the defendants"), to

compel production of documents related to the government's applications under the

Foreign Intelligence Surveillance Act ("FISA") and to suppress evidence obtained

from that surveillance. For the reasons set forth below, both motions are denied.

## I. BACKGROUND

This case arose from the defendants' donations to various organizations alleged

to be affiliated with or controlled by Hamas, a specially designated terrorist

organization. During its investigation of the HLF and the individual defendants, the

government applied for and obtained orders from the Foreign Intelligence

Surveillance Court ("FISC"). The government's FISA applications, affidavits related

to those applications, the FISC's orders regarding those applications, and information

obtained from the surveillance conducted in accordance with the FISC's orders are all

classified at the secret or top secret level in accordance with the Classified

Information Procedures Act ("CIPA") and Executive Order 13292.

Over a period of several years the government applied for and received orders

allowing Department of Justice ("DOJ") officials to conduct surveillance of the HLF

and the individual defendants. Throughout the surveillance, the government

intercepted and recorded numerous telephonic and facsimile communications

involving the defendants. Because surveillance was continuous during the periods

ordered by the FISC, the government intercepted privileged communications between

the defendants and their attorneys together with communications containing foreign

intelligence information, evidence of alleged criminal conduct and a great deal of information that is not relevant to this case.

In accordance with 50 U.S.C. § 1806(f)-(g), the defendants have moved the court to compel the disclosure of classified information relating to the government's FISA applications, the FISC's orders regarding those applications and other materials related to the applications.  *See* Defendants' Joint Sealed Motion and Memorandum to Compel Production of Foreign Intelligence Surveillance Act Applications, Orders, and Related Documents ("Motion to Compel") at 2.  The primary basis for the defendants' motion to compel is their allegation that the government intentionally misrepresented facts in the FISA applications involved in this case and that such misrepresentations warrant disclosure of those applications so defense counsel may assist the court in determining whether the surveillance was lawfully conducted in accordance with the strictures of FISA and the Constitution.  *Id*. at 4-5.  In addition, the defendants contend their attorneys should be permitted to review the FISA applications and related materials because they have already seen some of those materials.[1]  *Id.* at 2-3.

The defendants have also filed a motion to suppress, in which they aver that the government's surveillance of the defendants was not lawfully authorized and

---

[1]    A description of the government's mistaken production of FISA applications and related materials to defense counsel can be found in Government's Motion for Return of Classified Material and Memorandum in Support (Docket Entry # 205).

conducted; thus, they move the court to suppress any evidence obtained from such

surveillance.  *See* Defendants' Joint Sealed Motion and Memorandum to Suppress

Evidence Obtained or Derived From FISA Surveillance Including Attorney-Client

Privileged Communications and to Conduct an Evidentiary Hearing to Determine the

Extent to Which the Government's Violation of Defendants' Attorney-Client

Privilege has Tainted the Prosecution ("Motion to Suppress") at 1.  Each of the

motions will be addressed in turn.

## II. ANALYSIS

### A. The Motion to Compel

The provisions of FISA allow an individual subject to FISA surveillance to

move to compel the disclosure of FISA applications or related materials.  *See* 50

U.S.C. § 1806(f).  The Attorney General may oppose disclosure by filing an affidavit

stating that such disclosure "would harm the national security of the United States."

*Id.*  In this case, the defendants have requested disclosure and the government has

filed the appropriate declaration stating that disclosing the requested FISA materials

or holding an adversarial hearing regarding those materials would harm national

security.  *See* Declaration and Claim of Privilege of the Acting Attorney General of the

United States ¶ 3.  Therefore, this court is obliged to "review in camera and ex parte

the application, order, and such other materials relating to the surveillance as may be

necessary to determine whether the surveillance . . . was lawfully authorized and

conducted." 50 U.S.C. § 1806(f).  If the court is unable to determine the lawfulness of the surveillance, the statute authorizes the court to disclose to the defendants any such materials "necessary to make an accurate determination of the legality of the surveillance." *Id.*

In this case, the court spent several days conducting the *in camera* review required by § 1806(f).  After thoroughly reviewing each of the FISA applications at issue in this prosecution, accompanying affidavits, the FISC's orders and additional materials submitted by the government, the court finds that it does not need the assistance of defense counsel to make an accurate determination of the legality of the surveillance.  This conclusion is not unusual among courts that have faced this situation; indeed, the parties agree that no court has ever ordered that FISA materials be disclosed or that an adversarial hearing be conducted to assist the court in determining the legality of FISA surveillance.  *See* Motion to Compel at 4 n.4; Government's Unclassified Combined Memorandum in Opposition to Defendants' Joint Motion to Suppress Evidence Obtained or Derived From FISA Surveillance, and Defendants' Joint Motion to Compel Production of FISA Applications, Orders, and Related Materials ("Government's Unclassified Response") at 39.

Although the defendants argue fervently that this is a unique case because the government made widespread intentional and reckless misrepresentations to obtain FISA warrants from the FISC, *see* Motion to Compel at 7-12, evidence from the

government has shown that the alleged irregularities have been greatly exaggerated by the defendants, *see* Government's Combined Memorandum in Opposition to Defendants' Joint Motion to Suppress Evidence Obtained or Derived From FISA Surveillance, and Defendants' Joint Motion to Compel Production of FISA Applications, Orders, and Related Materials ("Government's Classified Response") at 63-65, 83, 95-101, 122-28.  The errors in the FISA applications identified by the defendants and documented by the government are not pervasive; nor did the errors materially alter the evidence supporting the FISA warrants involving the defendants. See *id.*

The court reviewed each of the identified errors and found them to be typographical or clerical in nature.  Although the government should have exercised greater care in drafting and editing its applications for FISA warrants before presenting those applications to the FISC, the government acknowledged the errors it made and provided corrected information to the FISC more than six years ago when it discovered the errors.  *See* Notice to the Court (Government's Exhibit 59).  In addition, the FBI conducted an internal investigation of the special agent whom the defendants allege "was guilty of numerous and repeated falsehoods and inaccuracies in the FISA applications in this case," Motion to Compel at 8, and found that allegations of "investigative dereliction" were meritless, Letter dated May 14, 2003 (Government's Exhibit 60).  The court reaches the same conclusion.

- 6 -

Because the errors identified by the defendants did not materially alter the evidence outlined in the FISA applications and because the errors were not pervasive enough to confuse the court as to the quantity or quality of the evidence described in the applications, the court does not believe that disclosing the applications and related materials to defense counsel would assist the court in making an accurate determination of the legality of the surveillance.  Consequently, it would be inappropriate for the court to provide defense counsel with access to the documents under the terms of 50 U.S.C. § 1806(f).

Next the defendants aver that even if they are not entitled to access the documents under the statute, they should obtain the documents as a consequence of the due process clause of the Fifth Amendment.  Motion to Compel at 13.  They posit that the court should weigh the three factors outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), and decide whether defense counsel should receive access to the classified FISA materials.  *Id.*  Applying the standard to the case *sub judice*, the court would consider:  (1) the defendants' interest in disclosure, (2) the risk that the defendants will be erroneously deprived of their right to such disclosure, and (3) the government's interest in preventing disclosure.  *Mathews*, 424 U.S. at 335.

In their argument for disclosure, the defendants identify their interest in obtaining the FISA applications as a need to determine whether the government's surveillance violated their rights.  Motion to Compel at 14.  Because they argue that

their rights can be preserved only if an adversarial hearing is held, they urge that there is a high risk that their rights will be erroneously violated. *Id.* The court disagrees. The court has, as a neutral arbiter, thoroughly reviewed the FISA applications at issue to ensure that the defendants' constitutional and statutory rights were not violated by the government during its FISA investigation. Moreover, the court concludes that the government's interest in preventing disclosure of the national security information involved outweighs the defendants' need to have the information.

The defendants argue that the government's interest in preventing disclosure should be granted little weight because defense counsel have obtained the security clearance required to view the materials.[2] *Id.* at 21. Even if the defendants were correct, "Congress has a legitimate interest in authorizing the Attorney General to invoke procedures designed to ensure that sensitive security information is not unnecessarily disseminated to *anyone* not involved in the surveillance operation in question, whether or not she happens for unrelated reasons to enjoy security clearance." *United States v. Ott*, 827 F.2d 473, 477 (9th Cir. 1987) (emphasis in original). The defendants' due process rights cannot "turn[] on the qualifications of [their] counsel." *Id.*

---

[2] Defense counsel's assumption that they have the appropriate security clearance is incorrect. Defense counsel have been cleared to view material classified at the secret level, but some of the FISA materials involved in this case are classified at the top secret level. Therefore, defense counsel do not have the required security clearance to view all the information contained in the FISA applications and related materials.

The information contained in the FISA applications is incredibly sensitive. Defense counsel properly note that they have access to all the discovery in the case and "the resources to investigate."  Motion to Compel at 12.  This puts defense counsel in a unique position to be able to identify confidential sources who provided evidence to the government against their clients.  Although the court commends counsel on their excellent track record in dealing with classified information, see *id.* at 21, the mere fact that disclosure to defense counsel might allow them to determine the identities of human sources or the identities and intelligence gathering methods of foreign governments who have shared information with the United States would harm our nation's intelligence gathering capabilities by discouraging cooperative sources and governments from sharing national security information in the future, see *In Camera, Ex Parte* Declaration of Joseph Billy, Jr. ¶¶ 38, 48-51.

In *C.I.A. v. Sims*, 471 U.S. 159, 175 (1985), the Supreme Court recognized the compelling government interest "'in protecting both the secrecy of information important to our national security *and the appearance of confidentiality* so essential to the effective operation of our foreign intelligence service.'"  (Emphasis added). Discussing the Central Intelligence Agency's need to protect its intelligence gathering methods, the Court wrote, "If potentially valuable intelligence sources come to think that the Agency will be unable to maintain the confidentiality of its relationship to them, many could well refuse to supply information to the Agency in the first place."

*Id.*  This reasoning applies equally to all United States departments and agencies involved in gathering information to protect national security.

The court finds that disclosing the information contained in the FISA applications and related materials would pose a substantial threat to national security by damaging the government's ability to gather vital intelligence information. Accordingly, the government's interest in preventing that disclosure outweighs the defendants' interest in obtaining the information.  The motion to compel is denied.

### B.  The Motion to Suppress

The defendants offer several arguments in favor of their motion to suppress the evidence obtained from FISA surveillance.  First, they contend that the surveillance violated the Fourth Amendment because the primary purpose of the surveillance was to conduct a criminal investigation rather than obtaining foreign intelligence information.  *See* Motion to Suppress at 8.  The same question raised by the defendants here has been thoroughly analyzed by the Foreign Intelligence Surveillance Court of Review ("FISCR").  *In re Sealed Case,* 310 F.3d 717, 721-36 (FISCR 2002) (per curiam).

In *In re Sealed Case,* the government asked the FISCR to interpret the amended version of FISA after the passage of the PATRIOT Act.  The PATRIOT Act amended FISA to require that a "significant purpose" of FISA surveillance be the procurement of foreign intelligence information.  *See* 50 U.S.C. § 1804(a)(7)(B).  In its appeal to

the FISCR, the government argued that before the PATRIOT Act's amendment,

gathering foreign intelligence information simply had to be one purpose of FISA

surveillance.  *In re Sealed Case*, 310 F.3d at 721-22.  Although the government

recognized that pre-PATRIOT Act courts had required that obtaining foreign

intelligence information be the primary purpose of FISA surveillance and not simply

one of the purposes, the government posited that those courts misinterpreted FISA

and the Fourth Amendment.  *Id.* at 722.

After thoroughly analyzing the legislative history of FISA, judicial

interpretations of the statute, the legislative history of the PATRIOT Act and briefs

from the government, the American Civil Liberties Union ("ACLU") and the

National Association of Criminal Defense Lawyers ("NACDL"),[3] the court found that

the pre-PATRIOT Act version of FISA did not require the primary purpose of

surveillance to be the acquisition of foreign intelligence information.  *Id.* at 727

("FISA as passed by Congress in 1978 clearly did *not* preclude or limit the

government's use of foreign intelligence information, which included evidence of

certain kinds of criminal activity, in a criminal prosecution.") (emphasis in original).

As the FISCR recognized, the original FISA statute "did not contemplate the

'false dichotomy'" between foreign intelligence information and evidence of criminal

---

[3]        Because FISA proceedings are handled *ex parte*, the FISCR accepted
briefs from the American Civil Liberties Union ("ACLU") and the National
Association of Criminal Defense Lawyers ("NACDL") as *amici curiae*.  *Id.* at 719.

activity that would have required the government to make the primary purpose of surveillance the procurement of foreign intelligence information.  *Id.* at 735.  Indeed, such a dichotomy would have been impossible as the FISA's definition of foreign intelligence information implicitly includes evidence of foreign intelligence crimes. *Id.*; *see also* 50 U.S.C. § 1801(e).  Accordingly, the court disagrees with the defendants' contention that the government's surveillance of the defendants was improper because the primary purpose of the investigation was not the acquisition of foreign intelligence information.[4]

The defendants' next argument builds on their first.  They aver that the PATRIOT Act's amendment of FISA -- allowing a "significant purpose" of a FISA investigation to be the procurement of foreign intelligence instead of requiring that the primary purpose of the investigation be the gathering of foreign intelligence information -- violates the Fourth Amendment.  *See* Motion to Suppress at 12.  The FISCR also extensively discussed this issue in *In re Sealed Case*, 310 F.3d at 736-46. After discussing the arguments presented by the ACLU and the NACDL, the constitutional standards presented in various cases interpreting the Fourth Amendment and FISA, and relevant Supreme Court precedent, the FISCR concluded,

---

[4]     To be clear, the court makes no finding that the primary purpose of the government's FISA surveillance *was* the procurement of evidence to support criminal charges instead of the obtainment of foreign intelligence information.  Rather, even if the court assumes the defendants' allegation on this point is true, it concludes that the government's surveillance would not have violated FISA.  See *In re Sealed Case*, 310 F.3d at 735.

> Even without taking into account the President's inherent constitutional authority to conduct warrantless foreign intelligence surveillance, we think the procedures and government showings required under FISA, if they do not meet the minimum Fourth Amendment warrant standards, certainly come close.  We, therefore, believe firmly, applying the balancing test drawn from [*United States v. United States District Court for the Eastern District of Michigan, Southern Division*, 407 U.S. 297 (1972)], that FISA as amended is constitutional because the surveillances it authorizes are reasonable.

*Id.* at 746.

This court concurs.  The amended version of FISA does not violate the Fourth Amendment.[5]  In addition, after reviewing the FISA materials at issue in this case, the court concludes that the gathering of foreign intelligence information was a significant purpose of all government surveillance involving the defendants.

The defendants' next three arguments in favor of suppression require an analysis of the FISA applications.  They argue (1) that the FISA applications fail to establish probable cause that the defendants are agents of a foreign power, (2) that the government intentionally or recklessly included material falsehoods or omissions in the applications, and (3) that the government might not have included the

---

[5]        Even if the court found the amendment to be unconstitutional, there is no evidence that the government failed to act in good faith.  As the Supreme Court noted in *Arizona v. Evans*, 514 U.S. 1, 13 (1995), the good faith exception to the exclusionary rule "applies when an officer conducts a search in objectively reasonable reliance on the constitutionality of a statute that subsequently is declared unconstitutional."  Therefore, even if the statute were declared unconstitutional, the government's surveillance would have been lawfully conducted.

required certifications with the FISA applications.  *See* Motion to Suppress at 26-33.

After conducting a review of the applications, affidavits and the FISC's orders related

thereto, the court finds that the applications establish probable cause to find that the

defendants were agents of a foreign power and that the government included the

certifications required by 50 U.S.C. § 1804(a)(7).  For the reasons discussed *supra*,

the court also finds that the errors identified by the defendants did not materially

alter the evidence outlined in the FISA applications.  Likewise, the erroneous

statements were not necessary to support the FISC's finding of probable cause; even if

all erroneous information had been omitted, the applications still support a finding

that the government had probable cause to believe the defendants were agents of a

foreign power as that term is defined by 50 U.S.C. § 1801(b).

Finally, the defendants argue that the government did not follow the

minimization procedures it proposed for its surveillance of the defendants and, even

if the government had followed the procedures, they were inadequate.  Motion to

Suppress at 33.  Accordingly, the defendants complain that the government

intercepted communications protected by the attorney-client privilege and that the

prosecution has had access to these communications.  *Id.* at 34-35.  To remedy the

taint caused by the prosecution's access to privileged communications, the defendants

ask that the court suppress all privileged communications and seek a hearing to

determine whether the prosecution has been tainted by these communications.  *Id.* at 37-39.

The government responds by asserting, "The question of taint, however, is not an appropriate matter for this motion.  Instead, it should be addressed in a separate motion, which can be separately addressed by government lawyers (other than the current prosecutors) who can read the communications at issue."  Government's Unclassified Response at 35.  The court disagrees.  Questions of privilege and taint are directly relevant to determining whether communications -- and evidence derived therefrom -- should be suppressed.  Therefore, it was proper for the defendants to raise such issues in a motion to suppress.  The court sees no reason why the defendants should be required to file a separate motion to suppress for matters of privilege and taint.

Although the prosecution is correct that it would be appropriate for a taint attorney to review the communications identified by the defendants in the attachments to their motion to suppress -- such a review would presumably be limited to determining whether the government believes the communications are privileged and should be suppressed -- the government offers no reason why a taint attorney was not available to review the communications identified by the defendants and respond to *this* motion.  See *id.* at 36.  In addition, the government does not respond to the defendants' allegation that the prosecutors involved in this case have been tainted.

Even if the prosecution needed separate counsel to review the communications to make a determination as to privilege, it would not need additional attorneys to tell the prosecutors whether they themselves have been tainted by privileged communications.

Because the government has not responded to the defendants' allegations of taint, it appears that it is necessary to hold an evidentiary hearing to determine the extent to which the prosecutors have been tainted by having access to privileged communications.  See *In re United States*, 878 F.2d 153, 157-58 (5th Cir.), *cert. denied*, 493 U.S. 991 (1989) (whether the attorney-client privilege has been breached and the prejudice a defendant has suffered as a result of such a breach are issues to be addressed at a pretrial evidentiary hearing).  At the hearing, the government should be prepared to (1) identify all communications listed in Attachments A, B and C to the defendants' motion to suppress to which the prosecution team has had access, and (2) explain any and all uses the prosecution made of those communications.  Similarly, the defendants should be prepared to explain how the government's access to and use of any of these communications has prejudiced them.  Both parties should be ready to discuss what, if any, remedies should be imposed to rectify any prejudice the court may find.

III.  <u>CONCLUSION</u>

For the reasons stated above, the defendants' motion to compel production of FISA applications and materials related thereto is **DENIED**.  The portion of the defendants' motion to suppress seeking suppression of non-privileged communications is **DENIED**, and the portion seeking suppression of privileged communications will be considered at a hearing on **Thursday, July 12, 2007** at **1:30 p.m.**

**SO ORDERED**.

July 11, 2007.

_____
A. JOE FISH
CHIEF JUDGE

- 17 -