IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | |
| HOLY LAND FOUNDATION FOR | § | |
| RELIEF AND DEVELOPMENT (1) | § | |
| also known as "HLF" | § | NO. 3:04-CR-240-G |
| SHUKRI ABU BAKER (2) | § | |
| MOHAMMAD EL-MEZAIN (3) | § | **ECF** |
| GHASSAN ELASHI (4) | § | |
| MUFID ABDULQADER (7) | § | |
| ABDULRAHMAN ODEH (8) | § | |

## DEFENDANTS' JOINT MOTION AND MEMORANDUM TO COMPEL PRODUCTION OF GOVERNMENT TRANSLATIONS OF DISCOVERY

SHUKRI ABU BAKER, MOHAMMAD EL-MEZAIN, GHASSAN ELASHI, MUFID ABDULQADER AND ABDULRAHMAN ODEH, defendants in the above entitled and numbered cause, through their undersigned attorneys, respectfully move the Court to compel the government immediately to produce to the defense copies of all available translations of Arabic and Hebrew documents produced in discovery in this case that were not previously disclosed to the defense, and to produce any future translations of discovery as those translations become available.

If the government notifies the defendants no later than April 1, 2008, that it does *not* intend to call Col. (Ret.) Jonathan Fighel as an expert witness, the defendants will remove from this request the twenty-one binders of appendices to Col. Fighel's report

that the government previously produced and which are primarily in either Hebrew or Arabic.[1]

The grounds for this motion are in the memorandum that follows.

## BACKGROUND

Defendant Holy Land Foundation for Relief & Development (HLF) was a non-profit charitable organization dedicated to alleviating suffering around the world, particularly the suffering of the people of Palestine. In its Superseding Indictment the government charged the defendants---all but one of whom were employees or officers of HLF---with committing various crimes predicated on acts and events occurring in Palestine and Israel. The official languages of Palestine and Israel are Arabic and Hebrew. Thus, much of the discovery in this case is written in those two languages.

During the first trial in this case the defendants, through the Criminal Justice Act (CJA) and with the approval of the Court, hired numerous Arabic and Hebrew translators to translate the hundreds of thousands of pages of discovery the government produced. To conserve resources, the defendants chose to translate the documents identified as most relevant to these defendants and to the acts charged in the Superseding Indictment. In that regard, the defense focused its efforts on the twenty-one volumes of documents from the Government of Israel (GOI documents) which the government produced in discovery, as well as documents seized from the HLF related to the transactions listed in the

---

[1] These documents appear to be similar to previously produced documents from the Government of Israel (GOI documents). The defense translated the GOI documents before the first trial in this case. Unfortunately, however, the Fighel appendices are not Bates-stamped and are not in the same order as the GOI documents. Therefore, it is impossible for the defense to determine whether the documents in the Fighel appendices have already been translated and the government has been unwilling to tell the defense whether they are the same or different documents. *See* letter from AUSA Jacks to Hollander, 3/27/07, attached as Exhibit 1 hereto.

DEFENDANTS' JOINT MOTION TO COMPEL PRODUCTION OF
GOVERNMENT TRANSLATIONS OF DISCOVERY

indictment. The defense focused on the GOI documents because the government led the defense to believe it intended to rely on many of them.[2] Ultimately, the government only introduced 134 pages---twenty of which were photographs or posters---of the approximately 8,444 pages of GOI documents.

Rather than rely heavily on the GOI documents as the defendants had anticipated, the government introduced translations of documents that the defendants had not believed to be relevant or admissible. For example, much of the government's case concerned documents taken from the homes of two people the government declared to be unindicted co-conspirators, Ismail Elbarasse and Abdel Haleem Ashqar. Although copies of these documents were included in the hundreds of thousands of pages of discovery the government produced before trial, the government did not notify the defendants that it considered Mr. Elbarasse and Mr. Ashqar to be co-conspirators until approximately six weeks before trial.[3] At that point it was too late for defendants to attempt to translate the entirety of these documents. The Elbarasse documents included 75,943 pages and the Ashqar documents included 1,600 pages. Because the government relied so heavily on the Elbarasse and Ashqar documents at the first trial, the defense must have access to the translations of these documents to prepare effectively for the retrial.

---

[2] In a letter dated 4/20/06, the government initially informed the defendants that its expert, Col. Fighel, would rely on "all of the material in the [GOI] binders." During the middle of trial the government announced that it would not call Col. Fighel as a witness.

[3] The list of unindicted co-conspirators was quite extensive, including over two hundred individuals and organizations. It would have been impossible to translate all the discovery documents relating to these individuals. *See* Government's Trial Brief, Doc. No. 656, filed 5/29/07.

---

DEFENDANTS' JOINT MOTION TO COMPEL PRODUCTION OF
GOVERNMENT TRANSLATIONS OF DISCOVERY

Page 3

In addition to issues related to the Elbarasse and Ashqar documents, the lack of access to translations of significant portions of the discovery prejudiced the defense at the first trial by limiting our ability to respond to misimpressions created by government agents piecing together translated documents from various sources. For example, at the first trial, a government witness implied that Shukri Abu Baker had authored a document which, in fact, he had not authored---and that defense counsel had no reason to translate before trial. *See* Tr. Vol. IV, 7/30/07 at 140-45, attached as Exhibit 2 hereto. To rebut the misimpression the witness's testimony had created, the defense had to hurriedly review the discovery to find the document Mr. Abu Baker had actually written (in Arabic) and translate it overnight so that it would be available during cross examination. The government witness admitted on cross examination that the government had previously translated the same document. *See* Tr. Vol. XI, 8/9/07 at 84-100, attached as Exhibit 3 hereto. It is impossible to know how many other translation issues were missed because the defense did not have access to all translated documents.

In another particularly egregious example, the government, without any notice before trial, introduced evidence that two Palestinian businesses to which HLF had sent large amounts of money were run by Hamas "money changers." *See* Tr. Vol. XV, 8/20/07, at 75-76; Tr. Vol. XX, 8/27/07, at 150-57, attached as Exhibit 4 & 5 hereto.[4] Literally overnight, the defense had to find and translate other relevant documents to show the jury that the government's evidence was wrong. In fact, one of the businesses

---

[4] Two weeks into the trial the government filed its First Supplemental Exhibit List, Doc, No. 741, filed 7/31/07, which included eight summary charts. Two charts identified the businesses at issue, identified individuals associated with these businesses and referenced bank records of funds sent from HLF to them.

DEFENDANTS' JOINT MOTION TO COMPEL PRODUCTION OF
GOVERNMENT TRANSLATIONS OF DISCOVERY

Page 4

sold HLF food items for inclusion in packages that were distributed to people in need during religious holidays and used some of the funds to pay an import tax to Israel to export wheelchairs into Palestine. *See* Tr. Vol. XXII, 8/29/07, at 120-164, attached as Exhibit 6 hereto. These were all documents the government had in its possession since 2002. Given that the relevant documents were in Arabic and the defense had such a short time within which to find the documents, the defense was unable to identify and translate all relevant documents. In its rebuttal closing argument, the government exploited this fact by suggesting that the defense's failure to produce additional documents was due to the fact the documents did not exist: "Ms. Hollander came through and traced two or three transactions and said to projects, here is where this went. Maybe it did and maybe it didn't. We're relying on their records for that. What about all the other transactions? Was there evidence where that went? No." Gov't. rebuttal closing argument, Tr. 9/19/07 at 23. *See also* Gov't. initial closing argument, Tr. Vol. XXX, 9/17/07 at 71 ("They have directed a large amount of that money to be furthered to HAMAS money changers. Ms. Hollander showed you that *some* of that money may have been used to purchase food and produce and other supplies.") (Emphasis added.) This was simply untrue but the defense was not able to find all the relevant documents overnight.

To avoid this problem arising during the retrial and to save the Court the enormous expense of translating thousands of pages of documents the government has already translated, following the status conference in November 2007, defense counsel asked the government to produce its translations of the documents previously produced in discovery. The government initially agreed to provide the defense with copies of all its

---

DEFENDANTS' JOINT MOTION TO COMPEL PRODUCTION OF
GOVERNMENT TRANSLATIONS OF DISCOVERY

translations. However, in late December, the government informed counsel that the prosecutors had changed their mind.[5] Now the government's position is that it will only provide translations of those documents it intends to introduce at trial.

## ARGUMENT

This Court has the inherent authority to order the government immediately to produce to the defense copies of all available translations of Arabic and Hebrew documents produced in discovery in this case that were not previously disclosed to the defense, and to produce any future translations of discovery as those translations become available.[6] *See United States v. Webster*, 162 F.3d 308, 313 (5th Cir. 1998). "[A] district court possesses inherent powers 'reasonably useful to achieve justice,' including certain powers over the administration of civil and criminal discovery." *Id.*, quoting *In re Stone*, 986 F.2d 898, 902 (5th Cir.1993); *see also* Fed. R. Crim. P. 57(b) ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."). As stated in the Advisory Committee Notes to Fed. R. Crim. P. 16, "[Rule 16] is intended to prescribe the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases."

---

[5] In an email dated Friday December 21, 2007, government attorney Barry Jonas stated that the government had "reconsidered your request to have the government provide you with translations of documents seized from the home of Ismail Elbarasse."

[6] Defendants are not asking the Court to order the government to translate additional documents. Rather, the defense seeks only those translations already in the government's possession or those the government creates of its own accord in the future.

---

DEFENDANTS' JOINT MOTION TO COMPEL PRODUCTION OF
GOVERNMENT TRANSLATIONS OF DISCOVERY

Page 6

The exercise of the Court's discretion to order the government to produce translations of the discovery in this case is appropriate as a matter of both judicial economy and fairness. The cost for translations thus far has been enormous. As a result of the government's refusal to provide its translations, the defense must seek additional CJA funds to translate all the documents it has received from the government, particularly the Elbarasse and Ashqar documents. Since the defendants must translate documents that the government has already translated, this will result in double expenses for the United States Government. This simply makes no sense.

Further, the government has had years to translate and review the discovery in this case. Defense counsel has had far less time to work with the discovery, and, because defense counsel do not speak Arabic or Hebrew, it has been difficult to find important and exculpatory documents in the tens of thousands of pages of foreign language discovery. Requiring the government to produce the translations it currently has and to produce future translations as they become available will facilitate trial preparations, level the playing field, and minimize trial interruptions due to translation disputes.

The defendants anticipate that the government will argue that the defense has no need for its translations as the defendants themselves speak Arabic and, thus, can translate the discovery themselves. This argument is without merit for three reasons. First, none of the defendants or defense counsel speak or read Hebrew, thus they have no means for translating the Hebrew documents short of hiring professional translators. Second, although the defendants can read the Arabic documents, there is simply too much material in Arabic for them to translate. It also makes no sense for them to be

burdened with this task if the government already has the translations, paid for at taxpayer expense. The defendants already spend a great deal of time reviewing Arabic documents, watching videos that are in Arabic and otherwise assisting counsel to prepare for trial. Third, throughout this case, the government has refused to shoulder the burden of identifying all the exculpatory evidence within the discovery it has provided to the defendants. It has been the government's position that since the defense has the discovery, that obligation falls to the defense. If the documents were in English, this might be acceptable; however, since a vast number of documents will never be translated, counsel cannot have any assurance that we will find the exculpatory information.

It is unacceptable for the government to foist its constitutional obligation off onto the defense while at the same time refusing to produce the translations necessary for defense counsel to meaningfully look for exculpatory evidence.

## CONCLUSION

Wherefore, the defendants respectfully request that the Court order the government immediately to produce to the defense copies of all available translations of Arabic and Hebrew documents produced in discovery in this case that were not previously disclosed to the defense, and to produce any future translations of discovery as those translations become available. If the government notifies the defendants no later than April 1, 2008, that it does *not* intend to call Jonathan Fighel as an expert witness, the defendants will remove from this request the twenty-one binders of appendices to Mr. Fighel's report that the government previously produced and which are primarily in either Hebrew or Arabic.

Respectfully submitted,

/s/Nancy Hollander

NANCY HOLLANDER
New Mexico Bar Card No. 1185
Email: nh@fbdlaw.com
JOHN W. BOYD
New Mexico Bar Card No. 286
Email: jwb@fbdlaw.com
THERESA M. DUNCAN
New Mexico Bar Card No. 12444
Email: tmd@fbdlaw.com
FREEDMAN BOYD
HOLLANDER GOLDBERG & IVES P.A.
20 First Plaza, Suite 700
Albuquerque, New Mexico 87102
Office: 505.842.9960
Fax: 505.842.0697
ATTORNEYS FOR DEFENDANT
SHUKRI ABU BAKER (02)

JOSHUA L. DRATEL
New York Bar Card No. 1795954
AARON J. MYSLIWIEC
New York Bar Card No. 4168670
Law Office Of Joshua L. Dratel
2 Wall St.
3rd Floor
New York, NY 10005
Office: 212.732.0707
Email: jdratel@joshuadratel.com
ATTORNEYS FOR DEFENDANT
MOHAMMAD EL-MEZAIN (03)

LINDA MORENO
Florida Bar 0112283
LINDA MORENO, P.A.
P.O. Box 10985
Tampa, Fl 33679
Office: 813.247.4500
Email: linbianca@aol.com

JOHN D. CLINE
California Bar No. 237759
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104-1500
(415) 626-3939 (Telephone)
(415) 875-5700 (Facsimile)
jcline@jonesday.com (Email)
ATTORNEYS FOR DEFENDANT
GHASSAN ELASHI (04)

MARLO P. CADEDDU
Texas Bar Card No. 24028839
LAW OFFICE OF MARLO P. CADEDDU, P.C.
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
Office: 214.220.9000
Fax: 214.744.3015
Email: cadeddulaw@sbcglobal.net
ATTORNEY FOR DEFENDANT
MUFID ABDULQADER (07)

GREG WESTFALL
Texas Bar Card No. 00788646
WESTFALL, PLATT & CUTRER
101 Summit Avenue, #910
Fort Worth, TX 76102
Office: 817.877.1700
Fax: 817.877.1710
Email: westfall@wpcfirm.com
ATTORNEY FOR DEFENDANT
ABDULRAHMAN ODEH (08)

## CERTIFICATE OF CONFERENCE

I certify that counsel has discussed the relief requested in the instant motion with Mr. Barry Jonas, counsel for the government, and the government opposes it.

/s/ Nancy Hollander

NANCY HOLLANDER

---

DEFENDANTS' JOINT MOTION TO COMPEL PRODUCTION OF
GOVERNMENT TRANSLATIONS OF DISCOVERY

Page 10

CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Nancy Hollander
NANCY HOLLANDER