IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 3:04-CR-240-P |
| | § | |
| HOLY LAND FOUNDATION FOR | § | |
| RELIEF AND DEVELOPMENT (1) | § | |
| also known as the "HLF" | § | Supersedes Indictment Returned On |
| SHUKRI ABU BAKER (2) | § | July 26, 2004 |
| MOHAMMAD EL-MEZAIN (3) | § | |
| GHASSAN ELASHI (4) | § | |
| HAITHAM MAGHAWRI (5) | § | |
| AKRAM MISHAL (6) | § | |
| MUFID ABDULQADER (7) | § | |
| ABDULRAHMAN ODEH (8) | § | |

INDICTMENT

The Grand Jury Charges:

INTRODUCTION

At all times material herein:

1. The Harakat al-Muqawamah al-Islamiyya is Arabic for "The Islamic Resistance

Movement" and is known by the acronym HAMAS. HAMAS, which is sometimes

referred to by its followers as "The Movement," is a terrorist organization based in the

West Bank and Gaza Strip (Gaza). HAMAS was founded in 1987 by Sheikh Ahmed

Yassin as an outgrowth of the Palestinian branch of the Muslim Brotherhood. The

Muslim Brotherhood is an international Islamic organization founded in Egypt in 1928

**Superseding Indictment - Page 1**

and is committed to the globalization of Islam through social engineering and violent *jihad* (holy war). HAMAS' published charter states that HAMAS' purpose is to create an Islamic Palestinian state throughout Israel by eliminating the State of Israel through violent *jihad*.

2. HAMAS achieves its goals through a military wing, known as the Izz el-Din al-Qassam Brigades, and a social wing, known as *Dawa* ("preaching" or "calling"). Although these two components have separate responsibilities, the organization operates seamlessly, with each component working to achieve the overall objectives of the terrorist group.

3. HAMAS' military wing is responsible for carrying out suicide bombings and other terrorist attacks within Israel, the West Bank and Gaza. These attacks have targeted civilians and have resulted in the death and injury of hundreds of individuals, including American citizens. HAMAS' social wing operates as a social welfare agency, providing food, medical care and education to Palestinians in order to generate loyalty and support for the organization and its overall goals. HAMAS supports religious and academic institutions that facilitate the teachings of HAMAS and introduce its radical and violent ideology at the earliest stages of spiritual and educational development. This social engineering is critical to winning the hearts and minds of the Palestinian people and to creating a military and operational recruitment pool for HAMAS. Additionally, HAMAS

**Superseding Indictment - Page 2**

rewards past terrorist acts, and provides incentive for future acts, by financially subsidizing family members of HAMAS operatives who are killed, injured or imprisoned, and ensuring that the families are revered in the community.

4. HAMAS' social services are, in large part, administered by local HAMAS affiliated zakat committees and other ostensibly charitable organizations. "Zakat," or "alms giving," is one of the pillars of Islam and is an act incumbent on all practicing Muslims. The membership of these committees and organizations consists of HAMAS members, operatives and activists. HAMAS' social infrastructure is supported by numerous financial sources located around the world, including individuals and entities in the United States. Additionally, due to HAMAS' substantial expenditures and the fungible nature of money, some of the money collected externally under humanitarian banners is routed to military and operational use, in addition to freeing up other funds for specific terrorist acts. Such uses include the provision of weapons, explosives, transportation services, safehouses, and job salaries for operatives.

5. HAMAS' Political Bureau sits above the social and military wings and serves as the highest ranking leadership body in the HAMAS organization. The Political Bureau is responsible for setting policies and guidelines regarding HAMAS' activities, including directing and coordinating terrorist acts. By design, several high-ranking members of the political bureau, such as Khalid Mishal and Mousa Abu Marzook, have resided outside the West Bank and Gaza, and lived in such places as Jordan, Syria and the United States.

**Superseding Indictment - Page 3**

6. The International Emergency Economic Powers Act (IEEPA) confers upon the President the authority to deal with threats to the national security or foreign policy of the United States. On January 23, 1995, pursuant to this authority, the President issued Executive Order 12947, which declared a national emergency resulting from the grave acts of violence committed by foreign terrorists designed to disrupt the Middle East Peace Process. The Executive Order prohibits transactions, including financial transactions, with organizations and individuals named in the Annex to the Order or organizations and individuals declared to be Specially Designated Terrorists by the United States Department of Treasury pursuant to the criteria articulated in the Order. The Executive Order authorizes the Department of Treasury to block all property subject to United States jurisdiction in which there is any interest held by any organization or individual declared to be a Specially Designated Terrorist. Any United States person or entity who possesses any funds in which any interest is held by a Specially Designated Terrorist, must report such interest to the proper United States authorities. Any dealings in those funds after the designation date, or any attempt to avoid acknowledgment of the funds, is unlawful.

7. To implement Executive Order 12947, the United States Department of Treasury, through the Office of Foreign Assets Control, promulgated the Terrorism Sanctions Regulations, which are detailed at Title 31, Code of Federal Regulations, Section 595. Executive Order 12947 and the Terrorism Sanctions Regulations prohibit, among other things: (a) transferring, paying, exporting, withdrawing or otherwise dealing

**Superseding Indictment - Page 4**

in property or interests in property of a Specially Designated Terrorist that are in the

United States, come within the United States, or come within the possession of or control

of United States persons; (b) providing funds, goods or services to a Specially Designated

Terrorist; (c) any transaction for the purpose of, or which has the effect of, evading or

avoiding, or which facilitates the evasion or avoidance of the Terrorism Sanctions

Regulations; (d) any conspiracy formed for the purpose of engaging in a prohibited

transaction.  A willful violation of any of these provisions is a criminal offense.

8.  On January 25, 1995, HAMAS was designated as a Specially Designated

Terrorist by the President in the Annex to Executive Order 12947.  On August 29, 1995,

former HAMAS Political Bureau Chief and current Deputy Chief Mousa Abu Marzook

was designated as a Specially Designated Terrorist.  On August 22, 2003, current

HAMAS Political Bureau Chief Khalid Mishal was designated as a Specially Designated

Global Terrorist  pursuant to Executive Order 13224.  Executive Order 13224 was issued

on September 23, 2001, pursuant to IEEPA, and prohibits transactions with organizations

and individuals who, inter alia, commit, threaten to commit, or support certain acts of

terrorism.

9.  On October 8, 1997, by publication in the Federal Register, the United States

Secretary of State designated HAMAS as a Foreign Terrorist Organization pursuant to

Section 219 of the Immigration and Nationality Act (INA), as added by the Antiterrorism

and Effective Death Penalty Act of 1996 (AEDPA).  Pursuant to the AEDPA, the

Secretary of State may designate a group as a Foreign Terrorist Organization if the group is (1) a foreign organization; (2) the organization engages in terrorist activity as defined by the INA; and, (3) the terrorist activity of the group threatens the national security of the United States.  The AEDPA, and specifically 18 U.S.C. § 2339B, reflects Congress' recognition of the danger and design of terrorist movements such as HAMAS and, as a result, it is unlawful to provide material support and resources, to include currency or monetary instruments, financial services, personnel, transportation and other provisions, to any component of HAMAS.

10.  The Muslim Brotherhood (HAMAS' parent organization) has maintained a presence in the United States since at least the early 1980s.  During the times relevant to this Indictment, the Muslim Brotherhood in the United States had approximately ten to fifteen working committees, including a Palestinian Committee whose designed purpose was to support HAMAS.  The Palestinian Committee had authority over several organizations, each with a specific purpose in its mandate to support HAMAS, such as propaganda, community relations and fundraising.

11.  In or around 1988, shortly after the founding of HAMAS, **The Holy Land Foundation For Relief and Development** ("HLF") was created by the defendants **Shukri Abu-Baker, Mohammad El-Mezain** and **Ghassan Elashi,** to fulfill the fundraising component of the Palestinian Committee.  From 1989 until 1992, the **HLF** was located in California and, until 1991, was known as the Occupied Land Fund

(hereinafter all references to the Occupied Land Fund will be as the **HLF**).  In 1992, the **HLF** relocated to Richardson, Texas and became incorporated in Texas.  The **HLF** represented itself to be a non-profit, tax exempt, charitable organization designed primarily to assist needy individuals in the West Bank and Gaza.  In addition to the main office in Richardson, Texas, the **HLF** maintained offices in New Jersey, California, Illinois, Jerusalem, the West Bank and Gaza, and maintained a presence in other locations, such as Lebanon and Jordan.

12.  The Islamic Association for Palestine (IAP) was the propaganda organization of the Palestinian Committee.  It had offices in several cities throughout the United States, including Dallas and Chicago.

13. The defendant **Shukri Abu Baker** was the President, Secretary and Chief Executive Officer of the **HLF**.  The defendant **Shukri Abu Baker**'s brother is Jamal Abu Baker, a.k.a Jamal Issa, the former HAMAS leader in the Sudan and the current HAMAS leader in Yemen.

14.  The defendant **Mohammad El-Mezain** was the original Chairman of the Board until in or about 1999, when he became Director of Endowments for the **HLF**. The defendant **Mohammad El-Mezain** is a cousin of HAMAS Deputy Political Chief and Specially Designated Terrorist Mousa Abu Marzook.

15.  The defendant **Ghassan Elashi** was the original Treasurer, and became the Chairman of the Board of the **HLF** in 1999.  He was also an incorporator of the IAP.  The

**Superseding Indictment - Page 7**

defendant **Ghassan Elashi** is related by marriage to HAMAS Deputy Political Bureau Chief and Specially Designated Terrorist Mousa Abu Marzook.

16. The defendant **Haitham Maghawri** was the Executive Director of the **HLF**.

17. The defendant **Akram Mishal** was the Project and Grants Director for the **HLF**. The defendant **Akram Mishal** is a cousin of HAMAS Political Bureau Chief and Specially Designated Global Terrorist Khalid Mishal.

18. The defendant **Mufid Abdulqader** was a top fundraiser for the **HLF**. The defendant **Mufid Abdulqader** is the half-brother of HAMAS Political Bureau Chief and Specially Designated Global Terrorist Khalid Mishal.

19. The defendant **Abdulrahman Odeh** was the New Jersey representative of the **HLF**.

<u>The HLF's Relationship with HAMAS</u>

20. During HAMAS' and the **HLF**'s beginnings, and in furtherance of their designed objective, the **HLF** provided significant financial resources to HAMAS leaders and key strategists. In April 1988, prior to its incorporation, the **HLF** sent approximately $100,000 to HAMAS' future Political Bureau Chief Mousa Abu Marzook and his associates. Additionally, from 1988 through 1989, the **HLF** wire transferred approximately $670,000 to an account held by the Islamic Center of Gaza, located in Gaza. The Islamic Center of Gaza was established by HAMAS spiritual leader and founder Sheik Ahmed Yassin, and was used by him to coordinate and conduct HAMAS

**Superseding Indictment - Page 8**

activities. During the time that the funds were being transferred to the Islamic Center of Gaza from the **HLF**, Sheik Yassin was arrested and convicted in Israeli court for the kidnapping and murder of an Israeli soldier.

21. As previously described, the **HLF** was deeply involved with a network of Muslim Brotherhood organizations dedicated to furthering the radical violent agenda espoused by HAMAS. These organizations served in different capacities, such as propaganda development and distribution, banking, and creating fundraising forums through which the **HLF** raised money. The **HLF** sponsored conventions, seminars, rallies and teleconferences in support of radical Islamic causes, including HAMAS. At these conventions, seminars, rallies and teleconferences, pro-HAMAS sheiks, Muslim Brotherhood members and HAMAS officials from overseas were employed to inflame the audience and enhance fundraising. The HLF paid for the travel to the United States of several of these speakers and HAMAS officials, including current HAMAS leader Mahmoud Zahar and former HAMAS spokesperson Jamil Hammami. At these events, participants, including the defendant **Mufid Abdulqader**, praised HAMAS through speeches, songs and violent dramatic skits depicting the killing of Jewish people.

22. In October 1993, in response to a United States sponsored Middle East peace initiative between the Israeli government and the Palestinian Liberation Organization, known as the Oslo Accords, and other significant events, the principals of the **HLF** met with other members of the United States based Palestinian Committee in Philadelphia,

**Superseding Indictment - Page 9**

Pennsylvania.  The purpose of the meeting was to determine their course of action in support of HAMAS' opposition to the peace plan and to decide how to conceal their activities from the scrutiny of the United States Government.  As noted in prior paragraphs, HAMAS is opposed to any peaceful solution to the Palestinian territorial conflict, as such a proposition is at odds with HAMAS' goal of annihilating the State of Israel and establishing an Islamic state in all of historic Palestine.  During the meeting, the defendants **Shukri Abu Baker**, **Ghassan Elashi** and **Haitham Maghawri,** and others known and unknown to the Grand Jury, expressed their support for "The Movement," (as previously stated, a term known to refer to HAMAS, whose full name is the Islamic Resistance Movement) and affirmed that the United States should be used as a fundraising platform to further "The Movement's" goals.  The attendees acknowledged the need to avoid scrutiny by law enforcement officials in the United States by masquerading their operations under the cloak of charitable exercise.  To that end, the attendees discussed the need to conceal their true motives and objectives by giving nominal amounts to other non-Palestinian charities.  The defendant **Shukri Abu Baker** reflected this understanding when he stated, "In the past we gave the Islamists $100,000 and we gave the others $5,000."  The attendees noted the danger of attracting the terrorist perception, which would undoubtedly compromise their efforts in supporting the violent *jihad.*

**Superseding Indictment - Page 10**

23.  In 1994, a dispute arose between the **HLF** and another HAMAS fundraising entity in the United States.  Then HAMAS Political Chief Mousa Abu Marzook resolved the dispute and determined that the **HLF** would be the primary fund-raising organization for HAMAS in the United States.

24. The **HLF** supported HAMAS by subsidizing HAMAS' vital recruitment and reward efforts in the West Bank and Gaza.  Although this financial initiative was spread broadly across the Palestinian population in order to promote HAMAS' appeal throughout the entire Palestinian community, those directly involved in furthering HAMAS' agenda were treated more favorably.  In 1992, the Government of Israel deported over 400 members of HAMAS and other Islamic terrorist organizations to southern Lebanon in response to a surge in violence by HAMAS militants against Israeli soldiers, police and civilians.  The **HLF** provided financial assistance to the deportees, and publically lauded itself for its response to the deportation.  Deceased HAMAS leader Sheik Abdel Rantisi was one of the deportees whose family received financial assistance from the  **HLF**.

25.  In furtherance of HAMAS' goal of garnering the support of the Palestinian people, the **HLF** sponsored orphans and needy families in the West Bank and Gaza. While the program was mantled with a benevolent appearance, the **HLF** specifically sought orphans and families whose relatives had died or were jailed as a result of furthering HAMAS' violent campaign, including suicide bombings.  This type of support

**Superseding Indictment - Page 11**

was critical to HAMAS' efforts to win the hearts and minds of the Palestinian people and
to create an infrastructure solidifying HAMAS' presence.

## COUNT ONE

Conspiracy to Provide Material Support to a Foreign Terrorist Organization -
(18 U.S.C. § 2339B(a)(1))

1.  Paragraphs one (1) through twenty-five (25) of the Introduction to this Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.  Beginning from on or about October 8, 1997, and continuing until the date of the Indictment, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **Holy Land Foundation for Relief and Development (HLF), Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh**, and others known and unknown to the Grand Jury, knowingly conspired to provide material support and resources, as those terms are defined in Title 18, United States Code, Section 2339A(b), to wit, currency and monetary instruments, to HAMAS, a designated Foreign Terrorist Organization, in violation of Title 18, United States Code, Section 2339B(a)(1).

## MANNER AND MEANS OF THE CONSPIRACY

3.  The defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** provided material support and resources to the designated Foreign Terrorist Organization HAMAS by raising funds in the United States and sending those funds to organizations and programs in the West Bank and Gaza which operated on behalf of, or

**Superseding Indictment - Page 13**

under the control of, HAMAS.

4. In furtherance of the conspiracy, the defendants **HLF, Shukri Abu Baker,**

**Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid**

**Abdulqader** and **Abdulrahman Odeh,** participated in fundraising events at various

forums, including conventions, services at mosques, seminars and other programs. The

**HLF** sponsored speakers at these events whose mission was to raise funds for the **HLF**.

Prior to the designation of HAMAS as a Foreign Terrorist Organization, the speakers

sponsored by the **HLF** often praised the efforts of HAMAS and its violent activities

against Israel, and encouraged financial support for those efforts. After HAMAS'

designation, upon instruction by the **HLF**, the speakers changed tactics by using

inflammatory language which was designed to support HAMAS and its violent activities

without openly mentioning HAMAS. Some of the speakers sponsored by the **HLF**

included founding HAMAS leaders, prominent HAMAS spokesmen and other speakers

belonging to the Muslim Brotherhood. Furthermore, at some of the fund-raising events,

the speakers, including the defendant **Mufid Abdulqader**, performed skits and songs

which advocated the destruction of the State of Israel and glorified the killing of Jewish

people.

5. In furtherance of the conspiracy, the defendants **HLF, Shukri Abu Baker,**

**Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid**

**Abdulqader** and **Abdulrahman Odeh** provided financial support to the families of

**Superseding Indictment - Page 14**

HAMAS "martyrs," detainees and activists knowing and intending that such assistance would support HAMAS' terrorist infrastructure. In screening potential aid recipients and in providing funds, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** distinguished between needy Palestinian families generally, and those Palestinian families who had a relative "martyred" or jailed as a result of terrorist activities. In some cases, the defendants specifically targeted families for financial aid who were related to known HAMAS terrorists who had been killed or jailed by the Israelis. In this manner, the defendants effectively rewarded past, and encouraged future, suicide bombings and terrorist activities on behalf of HAMAS.

6.  In furtherance of the conspiracy, and in order to conceal the existence of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh**, took several steps which were inconsistent with the activities of a legitimate charity. The defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** in following counter-surveillance measures outlined in a manual they possessed entitled "The Foundation's Policies and Procedures," did the following: retained the services of a security company to search the premises of the **HLF** for listening devices; directed the defendant **Haitham Maghawri** to take training on

**Superseding Indictment - Page 15**

advanced methods in the detection of wiretaps; shredded documents; maintained incriminating documents at off-site locations, including on the premises of Infocom, a related entity of which the defendant **Ghassan Elashi** was an officer and HAMAS leader Mousa Abu Marzook was a major investor; the defendants **Shukri Abu Baker** and **Akram Mishal** traveled overseas while falsely posing as Infocom employees; and in conversations between themselves and others, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain,  Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** often spoke in code in order to conceal the true nature of their conversation.

7.  In order to provide the **HLF** with a cloak of legitimacy and to conceal its relationship to HAMAS, the defendant **Shukri Abu Baker** discussed with the defendant **Ghassan Elashi** the need to provide minimal support to legitimate charitable causes.  In furtherance of the conspiracy, and in order to conceal the existence of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** carried out this plan, while providing a substantial amount of their financial assistance to organizations and programs, which operated on behalf of, or under the control of, HAMAS, and to families of HAMAS "martyrs" and detainees.

8.  In furtherance of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid**

**Superseding Indictment - Page 16**

**Abdulqader** and **Abdulrahman Odeh** maintained information on the arrest and prosecution of HAMAS activists in Israel, the West Bank and Gaza, including individuals who were members of the zakat committees to which the **HLF** sent money.

9.  In furtherance of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** wire transferred and caused to be wire transferred money from the **HLF** bank accounts in the Northern District of Texas, to zakat committees located in the West Bank and Gaza which were acting on behalf of, or under the control of, HAMAS.

10.  In furtherance of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** wire transferred money from the **HLF** bank accounts in the Northern District of Texas, to the **HLF** offices in the West Bank and Gaza for further distribution to zakat committees located in the West Bank and Gaza which were acting on behalf of, or under the control of, HAMAS, as well as for direct payment to individuals whom the **HLF** supported on behalf of HAMAS, including the family members of "martyrs" and prisoners.

<u>OVERT ACTS (1) - (8)</u>

11.  In furtherance of the conspiracy and to accomplish its purposes, on or about the dates listed below, the defendants **HLF, Shukri Abu Baker, Mohammad El-**

**Superseding Indictment - Page 17**

**Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** committed the following overt acts by issuing and causing to be issued wire transfers in the amounts indicated to be sent from the **HLF** bank accounts in the Northern District of Texas to the following organizations, which operated on behalf of, or under the control of, HAMAS:

| Overt Act | Date | Amount | Organization |
|---|---|---|---|
| (1) | 11/7/97 | $9,691 | Qalqilia Zakat Committee |
| (2) | 1/26/98 | $95,000 | Islamic Charity Society of Hebron |
| (3) | 3/27/98 | $7,218 | Tolkarem Zakat Committee |
| (4) | 3/27/98 | $11,773 | Nablus Zakat Committee |
| (5) | 1/12/99 | $50,000 | Islamic Charity Society of Hebron |
| (6) | 7/8/99 | $5,306 | Tolkarem Zakat Committee |
| (7) | 4/11/00 | $12,604 | Ramallah Zakat Committee |
| (8) | 6/14/01 | $40,586 | Jenin Zakat Committee |

OVERT ACTS (9) - (14)

12. In furtherance of the conspiracy and to accomplish its purposes, on or about the dates listed below, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** committed the following overt acts by issuing and causing to be issued wire transfers in the amounts indicated to be sent from the **HLF** bank accounts in

**Superseding Indictment - Page 18**

the Northern District of Texas to the **HLF** offices in the West Bank and Gaza, which

were then further distributed to zakat committees and to family members of individuals

who were either "martyred" or jailed for terrorist related activities:

| Overt Act | Date | Amount |
|---|---|---|
| (9) | 11/24/98 | $47,376 |
| (10) | 12/21/99 | $117,506 |
| (11) | 11/20/00 | $200,000 |
| (12) | 12/7/00 | $220,660 |
| (13) | 3/8/01 | $374,755 |
| (14) | 6/11/01 | $192,403 |

In violation of Title 18, United States Code, Section 2339B(a)(1).

<u>COUNTS TWO THROUGH TEN</u>

Providing Material Support to a Foreign Terrorist Organization -
(18 U.S.C. § 2339B(a)(1))

1.  Paragraphs one (1) through twenty-five (25) of the Introduction to this

Indictment and paragraphs three (3) through ten (10) of Count One are hereby re-alleged

and incorporated by reference as though fully set forth herein.

2.  On or about the dates set forth below, for each count below, in the Dallas

Division of the Northern District of Texas and elsewhere, the defendants **HLF, Shukri**

**Abu Baker, Ghassan Elashi, Haitham Maghawri** and **Akram Mishal** aided and

abetted by each other and others known and unknown to the Grand Jury, did knowingly

provide and attempt to provide material support and resources, as those terms are defined

in Title 18, United States Code, Section 2339A(b), to wit, currency and monetary

instruments, to HAMAS, a designated Foreign Terrorist Organization, by issuing and

causing to be issued wire transfers in the amounts indicated, from the defendant **HLF**

bank accounts in the Northern District of Texas, to the following organizations, which

operated on behalf of, or under the control of, HAMAS:

| Count | Date | Amount | Organization |
|-------|------|--------|--------------|
| 2 | 8/18/98 | $11,962 | Ramallah Zakat Committee |
| 3 | 8/21/98 | $24,211 | Islamic Charity Society of Hebron |
| 4 | 12/31/98 | $8,389 | Jenin Zakat Committee |
| 5 | 5/21/99 | $12,115 | Ramallah Zakat Committee |

**Superseding Indictment - Page 20**

| 6  | 10/13/99 | $25,000  | Islamic Charity Society of Hebron |
| 7  | 12/10/99 | $10,152  | Jenin Zakat Committee |
| 8  | 4/11/00  | $10,711  | Nablus Zakat Committee |
| 9  | 4/11/00  | $7,417   | Qalqilia Zakat Committee |
| 10 | 1/17/01  | $16,674  | Nablus Zakat Committee |

In violation of Title 18, United States Code, Sections 2339B(a)(1) and 2.

## COUNT ELEVEN

Conspiracy to Provide Funds, Goods and Services to a Specially Designated Terrorist -
(50 U.S.C. §§ 1701-1706)

1.  Paragraphs one (1) through twenty-five (25) of the Introduction to this
Indictment and three (3) through ten (10) of Count One are hereby re-alleged and
incorporated by reference as though fully set forth herein.

2.  Beginning from on or about January 25, 1995, and continuing until the date of
the Indictment, in the Dallas Division of the Northern District of Texas and elsewhere,
the defendants **HLF, Shukri Abu Baker, Ghassan Elashi, Haitham Maghawri,
Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh,** and others known and
unknown to the Grand Jury, knowingly and willfully conspired, confederated and agreed
to violate Executive Order 12947, by contributing funds, goods and services to, and for
the benefit of, a Specially Designated Terrorist, namely HAMAS, in violation of Title 50,
United States Code, Sections 1701 through 1706, and Title 31, Code of Federal
Regulations, Section 595.201 *et. seq.*

## MANNER AND MEANS OF THE CONSPIRACY

3.  In furtherance of the conspiracy, on or about January 25, 1995, and continuing
until the date of this Indictment, the defendants **HLF, Shukri Abu Baker, Ghassan
Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman
Odeh** made regular monetary payments to zakat committees and individuals located in
the West Bank and Gaza who were acting on behalf of, or under the control of, a

**Superseding Indictment - Page 22**

Specially Designated Terrorist, namely HAMAS.

OVERT ACTS

4.  In furtherance of the conspiracy, and in order to accomplish its purposes, on or about the dates listed below, the defendants **HLF, Shukri Abu Baker, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** committed the following overt acts by contributing funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, to wit, by issuing and causing to be issued wire transfers in the amounts indicated from the **HLF** bank accounts in the Northern District of Texas, to the following organizations, which operated on behalf of, or under the control of, HAMAS:

| Overt Act | Date | Amount | Organization |
|-----------|------|--------|--------------|
| (1) | 4/3/95 | $30,000 | Islamic Charity Society of Hebron |
| (2) | 4/22/96 | $9,758 | Islamic Science & Culture Com. |
| (3) | 11/20/96 | $8,434 | Islamic Charity Society of Hebron |
| (4) | 8/5/97 | $34,563 | Ramallah Zakat Committee |
| (5) | 11/7/97 | $10,690 | Nablus Zakat Committee |
| (6) | 3/27/98 | $12,179 | Qalqilia Zakat Committee |
| (7) | 4/3/98 | $24,173 | Jenin Zakat Committee |
| (8) | 6/26/98 | $75,000 | Islamic Charity Society of Hebron |
| (9) | 1/20/99 | $10,100 | Ramallah Zakat Committee |

**Superseding Indictment - Page 23**

| (10) | 2/16/99 | $20,000 | Islamic Charity Society of Hebron |
| (11) | 3/3/99 | $38,385 | Islamic Charity Society of Hebron |
| (12) | 12/14/99 | $17,996 | Ramallah Zakat Committee |
| (13) | 6/3/99 | $8,406 | Jenin Zakat Committee |
| (14) | 1/17/01 | $11,450 | Tolkarem Zakat Committee |

In violation of Title 50, United States Code, Sections 1701 through 1706 and Title 31, Code of Federal Regulations, Section 595.201 *et. seq.*

**Superseding Indictment - Page 24**

COUNTS TWELVE THROUGH TWENTY-ONE

Providing Funds, Goods and Services to a Specially Designated Terrorist -
(50 U.S.C. §§ 1701-1706)

1.  Paragraphs one (1) through twenty-five (25) of the Introduction to this Indictment; paragraphs three (3) through ten (10) of Count One; and paragraph three (3) of Count Eleven are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.  On or about the dates listed below, for each count below, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **HLF, Shukri Abu Baker, Ghassan Elashi, Haitham Maghawri** and **Akram Mishal,** aided and abetted by each other and others known and unknown to the Grand Jury, willfully contributed funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, by issuing and causing to be issued wire transfers in the amounts indicated, from the **HLF** bank accounts in the Northern District of Texas, to the following organizations, which operated on behalf of, or under the control of, HAMAS:

| Count | Date | Amount | Organization |
|-------|------|--------|--------------|
| 12 | 10/20/98 | $12,342 | Ramallah Zakat Committee |
| 13 | 12/31/98 | $50,000 | Islamic Charity Society of Hebron |
| 14 | 12/31/98 | $11,138 | Nablus Zakat Committee |
| 15 | 6/3/99 | $8,408 | Jenin Zakat Committee |
| 16 | 9/23/99 | $12,308 | Ramallah Zakat Committee |

**Superseding Indictment - Page 25**

| 17 | 9/23/99 | $36,066 | Islamic Charity Society of Hebron |
| 18 | 12/13/99 | $8,049 | Tolkarem Zakat Committee |
| 19 | 12/14/99 | $12,570 | Nablus Zakat Committee |
| 20 | 1/17/01 | $10,494 | Qalqilia Zakat Committee |
| 21 | 6/11/01 | $6,225 | Qalqilia Zakat Committee |

In violation of Title 50, United States Code, Sections 1701 through 1706; Title 31, Code of Federal Regulations, Section 595.201 et. seq.; and Title 18, United States Code, Section 2.

**Superseding Indictment - Page 26**

## COUNT TWENTY-TWO

Conspiracy to Commit Money Laundering -
(18 U.S.C. § 1956(h))

1. The allegations of paragraphs one (1) through twenty-five (25) of the Introduction to this Indictment; paragraphs three (3) through ten (10) of Count One; and paragraph three (3) of Count Eleven are hereby re-alleged and incorporated by reference as though fully set forth herein.

2. Beginning from on or about January 25, 1995, and continuing until the date of the Indictment, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **HLF, Shukri Abu Baker, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** and others known and unknown to the Grand Jury, in offenses involving interstate and foreign commerce, transmitted and transferred, and attempted to transmit and transfer, funds from a place within the United States, namely the Northern District of Texas, to places outside the United States, including the West Bank and Gaza, with the intent to promote the carrying on of a specified unlawful activity, to wit, by contributing funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, in violation of Title 50, United States Code, Sections 1701 through 1706 (IEEPA), and punishable under Section 206 of IEEPA (also known as Title 50, United States Code, Section 1705(b)).

3. In furtherance of the conspiracy, between January 25, 1995, through December 4, 2001, the defendants **HLF, Shukri Abu Baker, Ghassan Elashi, Haitham**

**Superseding Indictment - Page 27**

Maghawri, **Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** transmitted and caused to be transmitted and transferred at least $12,400,000 to various organizations and programs, which operated on behalf of, or under the control of, HAMAS.

OVERT ACTS

4.  In furtherance of the conspiracy, and in order to accomplish its purposes, on or about the dates listed below, the defendants **HLF, Shukri Abu Baker, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** committed the following overt acts by contributing funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, by issuing and causing to be issued wire transfers in the amounts indicated  from the **HLF** bank accounts in the Northern District of Texas, to the following organizations located within the West Bank and Gaza, which operated on behalf of, or under the control of, HAMAS:

| Overt Act | Date | Amount | Organization |
|---|---|---|---|
| (1) | 4/3/95 | $30,000 | Islamic Charity Society of Hebron |
| (2) | 4/22/96 | $9,758 | Islamic Science & Culture Com. |
| (3) | 11/20/96 | $8,434 | Islamic Charity Society of Hebron |
| (4) | 8/5/97 | $34,563 | Ramallah Zakat Committee |
| (5) | 11/7/97 | $10,690 | Nablus Zakat Committee |
| (6) | 3/27/98 | $12,179 | Qalqilia Zakat Committee |
| (7) | 4/3/98 | $24,173 | Jenin Zakat Committee |

**Superseding Indictment - Page 28**

| (8) | 6/26/98 | $75,000 | Islamic Charity Society of Hebron |
| (9) | 1/20/99 | $10,100 | Ramallah Zakat Committee |
| (10) | 3/3/99 | $38,385 | Islamic Charity Society of Hebron |
| (11) | 12/14/99 | $17,996 | Ramallah Zakat Committee |
| (12) | 4/11/00 | $8,409 | Jenin Zakat Committee |
| (13) | 1/17/01 | $11,450 | Tolkarem Zakat Committee |

In violation of Title 18, United States Code, Section 1956(h).

**Superseding Indictment - Page 29**

COUNTS TWENTY-THREE THROUGH THIRTY-TWO

Money Laundering -
(18 U.S.C. § 1956(a)(2)(A))

1. The allegations of paragraphs one (1) through twenty-five (25) of the

Introduction to this Indictment; paragraphs three (3) through ten (10) of Count One; and

paragraph three (3) of Count Eleven are hereby re-alleged and incorporated by reference

as though fully set forth herein.

2. On or about each of the dates set forth below, for each count below, in the

Dallas Division of the Northern District of Texas and elsewhere, the defendants **HLF,**

**Shukri Abu Baker, Ghassan Elashi, Haitham Maghawri** and **Akram Mishal,** aided

and abetted by each other and others known and unknown to the Grand Jury, in offenses

involving interstate and foreign commerce, transmitted and transferred, and attempted to

transmit and transfer, funds in the amounts indicated, from a place within the United

States, namely the Northern District of Texas, to places outside the United States,

including the West Bank and Gaza, with the intent to promote the carrying on of a

specified unlawful activity, to wit, by willfully contributing funds, goods and services to,

or for the benefit of, a Specially Designated Terrorist, namely HAMAS, in violation of

Title 50, United States Code, Sections 1701 through 1706 (IEEPA), and punishable under

Section 206 of IEEPA (also known as Title 50, United States Code, Section 1705(b)):

**Superseding Indictment - Page 30**

| Count | Date | Amount | Organization |
|-------|------|--------|--------------|
| 23 | 10/20/98 | $12,342 | Ramallah Zakat Committee |
| 24 | 12/31/98 | $50,000 | Islamic Charity Society of Hebron |
| 25 | 12/31/98 | $11,138 | Nablus Zakat Committee |
| 26 | 6/3/99 | $8,408 | Jenin Zakat Committee |
| 27 | 9/23/99 | $12,308 | Ramallah Zakat Committee |
| 28 | 9/23/99 | $36,066 | Islamic Charity Society of Hebron |
| 29 | 12/13/99 | $8,049 | Tolkarem Zakat Committee |
| 30 | 12/14/99 | $12,570 | Nablus Zakat Committee |
| 31 | 1/17/01 | $10,494 | Qalqilia Zakat Committee |
| 32 | 6/11/01 | $6,225 | Qalqilia Zakat Committee |

In violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

**Superseding Indictment - Page 31**

## COUNT THIRTY-THREE

Conspiracy to Impede and Impair the Internal Revenue Service and
to File False Return of Organization Exempt from Income Tax -
(18 U.S.C. § 371)

1. The allegations of paragraphs one (1) through twenty-five (25) of the

Introduction to this Indictment; paragraphs three (3) through ten (10) of Count One; and

paragraph three (3) of Count Eleven are hereby re-alleged and incorporated by reference

as though fully set forth herein.

2. Section 501(c)(3) of the Internal Revenue Code grants authorized charitable

organizations tax exempt status, which exempts them from having to pay any income tax

on the donations they receive.  The organizations are required to file an annual

informational return, Form 990, entitled "Return of Organization Exempt from Income

Tax,"  with the Internal Revenue Service.  In that form, the organization must report the

amount of their donations and how those donations are distributed.   The return is signed

under the penalty of perjury.

3. In September 1989, the defendant **Ghassan Elashi** filed an application with the

Internal Revenue Service to obtain tax exempt status for the **HLF** pursuant to Section

501(c)(3) of the Internal Revenue Code.  Tax exempt status was conferred on the **HLF** in

January 1990.

**Superseding Indictment - Page 32**

4. In or around and between January 1990 and continuing until the date of the Indictment, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **Shukri Abu Baker** and **Ghassan Elashi**, and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate and agree together with themselves and others

   a. to defraud the United States of America and the Internal Revenue Service ("IRS"), an agency thereof, by impeding, impairing, defeating and obstructing the lawful governmental functions of the IRS in the ascertainment, evaluation, assessment and collection of corporate income taxes, in violation of Title 18, United States Code, Section 371; and

   b. to willfully make and subscribe, and aid and assist in the preparation and presentation of, United States Returns of Organization Exempt from Income Tax, Form 990, which were verified by written declarations that they were made under the penalties of perjury and were filed with the IRS, which returns they did not believe to be true and correct as to every material matter in that the returns reported payments to Program Services when in fact the payments were going to HAMAS, in violation of Title 26, United States Code, Section 7206(1).

<u>MANNERS AND MEANS OF THE CONSPIRACY</u>

5. In furtherance of the conspiracy, between 1992 and 2001, the HLF received over $57,000,000 in contributions, gifts and grants.

**Superseding Indictment - Page 33**

6. In furtherance of the conspiracy, between 1992 and 2001, the defendants **Shukri Abu Baker** and **Ghassan Elashi** reported approximately $36,230,891 on Line 13 of the HLF's "Returns of Organization Exempt from Income Tax"(Form 990), as payments to Program Services, which the HLF ostensibly distributed as grants to various legitimate projects, including assistance to non-profit medical/dental clinics, orphanages, schools, refugee camps and community centers overseas, when in fact the donations were distributed to individuals and programs associated with, and organizations operating on behalf of, or under the control of, HAMAS, a terrorist organization.

OVERT ACTS

7. In furtherance of the conspiracy, and in order to accomplish its purposes, on or about the dates listed below, the defendants **Shukri Abu Baker** and **Ghassan Elashi** committed the following overt acts by signing and filing the following false Returns of Organization Exempt from Income Tax, Form 990, with the Internal Revenue Service:

| Overt Act | Year | Date Filed |
|-----------|------|-----------|
| (1) | 1995 | 8/19/96 |
| (2) | 1996 | 8/18/97 |
| (3) | 1997 | 4/13/98 |
| (4) | 1998 | 3/11/99 |

**Superseding Indictment - Page 34**

(5)        1999        5/8/00

(6)        2000        8/7/01


In violation of Title 18, United States Code, Section 371.

## COUNTS THIRTY-FOUR THROUGH THIRTY-SIX

Filing False Returns of Organization Exempt from Income Tax -
(26 U.S.C. § 7206(1))

1.   The allegations of paragraphs one (1) through twenty-five (25) of the Introduction to this Indictment; paragraphs three (3) through ten (10) of Count One; paragraph three (3) of Count Eleven; and paragraphs two (2), three (3), five (5) and six (6) of Count Thirty-Three are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.   On or about the dates specified below, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants as listed below, did knowingly and willfully make and subscribe United States Returns of Organizations Exempt from Income Tax, Form 990, for the **HLF**, for the years listed below, which were verified by written declarations that they were made under the penalties of perjury and were filed with the Internal Revenue Service, which informational tax returns each defendant did not believe to be true and correct as to every material matter in that the returns reported payments to Program Services on Line 13 of said returns, whereas each defendant then and there well knew and believed the payments were not used for program services as required by their 501(c)(3) status:

| Count | Year | Date filed | Defendant |
|-------|------|------------|-----------|
| 34 | 1998 | 3/11/99 | **Shukri Abu Baker** |
| 35 | 1999 | 5/8/00 | **Ghassan Elashi** |

**Superseding Indictment - Page 36**

| 36 | 2000 | 8/7/01 | **Ghassan Elashi** |

In violation of Title 26, United States Code, Section 7206(1).

<u>FORFEITURE</u>

As a result of committing one or more of the money laundering or monetary

transaction offenses in violation of Title 18, United States Code, Section 1956, alleged in

Counts Twenty-Two through Thirty-Two of this Indictment, the defendants, as listed

below, shall forfeit to the United States of America, all property, real and personal,

involved in the money laundering or monetary transaction offenses, and all property

traceable to such property, including but not limited to the following:

Defendants **HLF, Shukri Abu Baker, Ghassan Elashi, Haitham Maghawri,**

**Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** shall forfeit at least

$12,400,000 in United States currency.  That sum represents a portion of the sum of

monies sent from a place within the United States, namely the Northern District of Texas,

to places outside the United States, including the West Bank and Gaza and other places,

as well as monies that were destined for places outside the United States, with the intent

to promote the carrying on of a specified unlawful activity, to wit, willfully contributing

funds, goods and services to, or for the benefit of, a Specially Designated Terrorist,

namely HAMAS, as set forth in Counts Eleven though Twenty-One, for which the

defendants are jointly and severally liable.

By virtue of the commission of one or more of the felony offenses charged in

Counts Twenty-Two through Thirty-Two of this Indictment by the defendants **HLF,**

**Shukri Abu Baker, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid**

**Superseding Indictment - Page 38**

**Abdulqader** and **Abdulrahman Odeh,** any and all interests which the defendants have in the above described sums are vested in the United States and are hereby forfeited to the United States pursuant to Title 18, United States Code, Section 982(a)(1).

In the event that any property, real or personal, involved in the offenses and described in Counts Twenty-Six through Thirty-Eight of this Indictment, or any property traceable to such property, as a result of any act or omission of the defendants:

    (1)    cannot be located upon exercise of due diligence;

    (2)    has been transferred or sold to, or deposited with a third party;

    (3)    has been placed beyond the jurisdiction of the court;

    (4)    has been substantially diminished in value; or

    (5)    has been co-mingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section

982(b)(1) to seek forfeiture of any other property of said defendants up to the value of the

above property.

_Sharon Thornton_

FOREPERSON

RICHARD B. ROPER
United States Attorney

_James T. Jacks_

JAMES T. JACKS
First Assistant United States Attorney
1100 Commerce St., Third Floor
Dallas, Texas 75242
214.659.8600
214.767.2846 (Facsimile)
Texas State Bar No. 10449500

_Nathan F. Garrett_

NATHAN F. GARRETT
Special Assistant United States Attorney
1100 Commerce St., Third Floor
Dallas, Texas 75242
214.659.8600
214.767.2846 (Facsimile)
Missouri State Bar No. 46500

_Barry Jonas_

BARRY JONAS
Trial Attorney
Department of Justice,
Counter-terrorism Section
950 Pennsylvania Ave.
Washington, D.C. 20530
214.659.8600
214.767.2846 (Facsimile)
New York State Bar No. 2307734

_Elizabeth J. Shapiro_

ELIZABETH J. SHAPIRO
Trial Attorney
Department of Justice
20 Massachusetts Ave.
Washington, D.C. 20530
214.659.8600
214.767.2846 (Facsimile)
Washington, DC Bar. No. 418925

Superseding Indictment - Page 40