# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
October 20, 2010
Lyle W. Cayce
Clerk

No. 09-10875

UNITED STATES OF AMERICA,

        Plaintiff-Appellee

v.

HOLY LAND FOUNDATION FOR RELIEF AND DEVELOPMENT, ET AL.,

        Defendants

NORTH AMERICAN ISLAMIC TRUST,

        Movant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before GARZA and BENAVIDES, Circuit Judges, and CRONE*, District Judge.

EMILIO M. GARZA, Circuit Judge:

    Third-party movant North American Islamic Trust ("NAIT") appeals from the district court's order holding that NAIT's Fifth Amendment rights were violated by its public naming in an attachment to the Government's criminal pre-trial brief but denying NAIT's requested equitable relief, including *inter alia* expungement of NAIT's name and a public declaration by the court that NAIT's rights were violated. The district court instead placed the attachment—which

---

* District Judge of the Eastern District of Texas, sitting by designation.

had been available to the public since its initial filing—and any records related to NAIT's challenge under seal, including the district court's order, finding a Fifth Amendment violation. NAIT argues that the district court erred by sealing its order, by refusing to expunge NAIT's name from the attachment to the pre-trial brief, and by engaging in an irrelevant and erroneous analysis of NAIT's connections to the defendants and other entities. The Government does not contest the holding that NAIT's Fifth Amendment rights were violated or that it should have filed the attachment under seal. The only issue before us, therefore, is one of remedy.

I

A federal grand jury indicted the Holy Land Foundation for Relief and Development ("HLF") and seven individuals (collectively, the "HLF Defendants") on multiple charges stemming from the allegation that the defendants had engaged in a criminal conspiracy to provide support to Hamas, a designated foreign terrorist organization. In May of 2007, the Government filed a pre-trial brief for the purpose of setting forth "an overview of the case, the scope of the conspiracy, and the different kinds of evidence that the government will seek to admit at trial and the evidentiary bases for the admission of that evidence." Under the heading "Breadth of Conspiracy," the Government included the following passage:

> [T]he focal point of this case is the designated terrorist group Hamas . . . . Although the indictment in this case charges the seven named individual defendants and the Holy Land Foundation for Relief and Development, it will be obvious that the defendants were not acting alone. As noted in the case summary, the defendants were operating in concert with a host of individuals and organizations dedicated to sustaining and furthering the Hamas movement. Several of the individuals who hold leading roles in the operation of Hamas are referenced by name in the indictment. A list of unindicted coconspirators is attached to this . . . brief.

That attachment ("Attachment A") bore the title "List of Unindicted Co-conspirators and/or Joint Venturers" and listed the names of 246 individuals and entities, organized under various headings. NAIT was included under the heading "The following are individuals/entities who are and/or were members of the US Muslim Brotherhood." The pre-trial brief described the Muslim Brotherhood as "an international Islamic fundamentalist movement" and stated that "Hamas' founding charter makes clear that Hamas is, in fact, the Palestinian branch of the Muslim Brotherhood." The Government explains that the inclusion of NAIT and other entities was intended to lay the groundwork for the possible admission of statements pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence, which permits the admission of out-of-court statements by coconspirators and joint venturers of a party opponent. The Government concedes that it was an "unfortunate oversight" that Attachment A was not filed under seal.

The first trial against the HLF Defendants ended in a mistrial. Before a second trial commenced, NAIT filed a motion alleging that the inclusion of NAIT in Attachment A violated its Fifth Amendment rights. NAIT sought four forms of relief: a public declaration that its rights had been violated; the expungement of its name from any public document filed or issued by the Government identifying NAIT as an unindicted coconspirator; an injunction forbidding the Government from identifying NAIT as an unindicted coconspirator in any context other than specifically permitted by the district court; and, finally, any other such relief that the court might deem just and equitable to remedy and prevent further violations of NAIT's Fifth Amendment rights.[1] The Government opposed the motion. A second trial was held and a jury convicted HLF and five

---

[1] NAIT's motion was filed in conjunction with the Islamic Society of North America ("ISNA"), which is not a party to this appeal. Another entity, the Council on American Islamic Relations ("CAIR") moved the district court for leave to file an amicus brief requesting that its name and all other unindicted coconspirators be stricken from Attachment A. CAIR's motion was addressed in the order addressing NAIT's motion, but CAIR is not a party to this appeal.

3

individuals defendants.[2] After the second trial and more than two years after the filing of the Government's pre-trial brief, the district court issued a sealed opinion and order addressing NAIT's motion. The court held that NAIT's motion was properly filed and its Fifth Amendment rights had been violated by its public naming in Attachment A. The court held that the Government did not argue or establish any legitimate government interest that warranted publicly identifying NAIT and 245 other individuals and entities as unindicted coconspirators or joint venturers, and that the Government had less injurious means than those employed, such as anonymously designating the unindicted coconspirators as "other persons," asking the court to file the document under seal, or disclosing the information to the defendants pursuant to a protective order. The court declined to expunge the mention of NAIT; rather, it ordered the sealing of Attachment A and "all pleadings, records, documents, orders, and other papers concerning . . . NAIT's Motion . . . including this Order."

## II

NAIT argues that the district court erred by including its findings only in a sealed order, rather than issuing a publicly available order memorializing the holding that NAIT's Fifth Amendment rights were violated. It argues that, by sealing the order, the district court deprived NAIT of an effective remedy for the violation of its rights. Because the order is sealed, NAIT complains, it cannot inform others that its public naming in the indictment was wrongful, and, therefore, the injuries it bore as a result of its public naming in the proceedings persist in the form of continued damage to its reputation. Moreover, NAIT argues, the decision to seal the order violates the common law right to public access to judicial records. Although the Government argues that the district court acted within its discretion in sealing the order, it has nevertheless stated

---

[2] The two other individual defendants were not tried at that time.

4

that it is not ultimately opposed to the unsealing of the district court's opinion and order in its entirety.[3]

A district court has supervisory authority over its records, and we review the court's decision to seal a judicial record for abuse of discretion. *See SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993). A court may deny access to records if the records become a vehicle for improper purposes. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978) (listing various types of improper purposes that favor denying the public access to judicial records). Nevertheless, a court must use caution in exercising its discretion to place records under seal. *See Fed. Sav. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987) ("The district court's discretion to seal the record of judicial proceedings is to be exercised charily . . . ." (citing *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984)). Its decision must be made in light of the "strong presumption that all trial proceedings should be subject to scrutiny by the public." *United States v. Ladd*, 218 F.3d 701, 704 (7th Cir. 2000).

The Government argues that, although NAIT does have standing to protect its own reputational interests, it does not have standing to assert the public's right of access because it is not "a third party whose sole interest in litigation is access to the documents." *United States v. Hickey*, 185 F.3d 1064, 1066 (9th Cir. 1999). We disagree, however, with any suggestion that the public's right of access to judicial records is relevant only when asserted by a third party, such as a journalist, with no direct stake in the proceedings. The principle of public access to judicial records furthers not only the interests of the outside public, but also the integrity of the judicial system itself. *See Van Waeyenberghe*, 990 F.2d at 849-50 (contrasting public's right to information about judicial proceedings to right to access to judicial records). The right to public access "serves to promote trustworthiness of the judicial process, to curb

---

[3] Neither party has challenged the district court's decision to seal Attachment A.

judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *Littlejohn v. BIC Corp.*, 851 F.2d 673, 682 (3d Cir. 1988). "Public confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir. 2008) (quoting *United States v. Cianfrani*, 573 F.2d 835, 851 (3d Cir. 1978)) (alteration omitted). The public's right to access, therefore, is relevant regardless of who opposes keeping a record under seal. In *Van Waeyenberghe*, for example, the SEC appealed a district court order sealing a portion of its record in settled litigation between the SEC and an individual against whom the SEC had filed an injunctive action. We reversed the sealing order on the ground that the district court had failed to weigh the public's common law right of access to the records. 990 F.2d at 850. We did not treat it as material that the SEC was defending the public's right to access, as opposed to a third party.

Here, the district court did not explain why it chose to seal its opinion and order holding that NAIT's rights were violated. Both NAIT and the Government suggest that the district court may have been trying to shield NAIT from further reputational harm related to its public naming in this case. Regardless of the intention behind the district court's decision, however, its effect was to leave NAIT hamstrung in its ability to mitigate the damage done by its public identification as a possible coconspirator in the activities of the HLF Defendants. NAIT was publicly identified in Attachment A for over two years, and the public took note. The district court's order and opinion included the important context that NAIT's public naming had been held to be in violation of its Fifth Amendment rights. NAIT's interests, therefore, would have been better served by leaving the order unsealed. The Government has no countervailing interest in sealing the order and in fact does not object to unsealing it.

Because the power to seal court records must be used sparingly in light of the public's right to access, because NAIT's interest in mitigating its reputational injuries favored disclosure, and because there is no countervailing Government interest in nondisclosure, the district court's decision to seal its opinion and order finding that NAIT's rights were violated constituted an abuse of its discretion.

### III

NAIT argues that the district court erred in declining to expunge its name from inclusion in Attachment A. It argues that expungement from the brief is the only means to guard conclusively against further wrongful reputational injury. The Government argues that the district court acted within its discretion in concluding that expungement was not warranted. We review a district court's decision not to expunge a name from a judicial document for abuse of discretion. *See United States v. Int'l Harvester Co.*, 720 F.2d 418, 419 (5th Cir. 1983).

We have considered claims by third parties who were identified as coconspirators in public court records before, and have left little doubt that expungement is sometimes an appropriate remedy. *See In re Smith*, 656 F.2d 1101, 1107 (5th Cir. 1981) (ordering district court to "permanently obliterate and strike . . . any and all identifying reference to or name of" petitioner in certain judicial records); *United States v. Briggs*, 514 F.2d 794, 808 (5th Cir. 1975) (remanding with directions to expunge any mention of appellants from indictment). Nevertheless, a district court has broad discretion to consider the circumstances of each case, and a decision not to expunge will not necessarily be an abuse of that discretion. *Int'l Harvester*, 720 F.2d at 420. In reviewing a decision not to expunge, our inquiry is not whether naming the unindicted party was "wise policy," *id.*, but merely whether the conclusion that expungement was unnecessary was within the range of the district court's discretion. In deciding whether to expunge the name of a third party, the district court may consider,

7

*inter alia,* the degree to which the inclusion of the name is merely repetition of allegations raised by the Government and subjected to judicial scrutiny in other proceedings. For that reason, we concluded in *International Harvester* that it was not an abuse of discretion to decline to expunge the naming of an alleged coconspirator where the coconspirator himself was accused of essentially the same wrongdoing in a separate indictment, leveled directly at him. 720 F.2d at 420. NAIT, unlike the accused coconspirator in *International Harvester*, has not been indicted for any activities that could have formed the basis for its inclusion in Attachment A. As such, it has not had the opportunity to vindicate itself in formal criminal proceedings. As the district court observed, however, the proceedings at trial did include some context for NAIT's inclusion, in the form of evidence tending to support some past ties between NAIT and the HLF.

Also important to the remedy inquiry—though we have never said so explicitly—is the particular context in which an accusation was made. Our jurisprudence has never recognized a general right not to be implicated as a possible coconspirator in another's criminal case. Rather, we have always paid attention to both the source and the method of the accusation. In *Briggs,* this Court examined the claims of three individuals who had been publicly identified as unindicted coconspirators in a grand jury indictment. Our analysis focused not only on the harm done to the accused individuals, but also the powers and responsibilities of the grand jury itself. We noted that there was no authority for the proposition that a federal grand jury was "empowered to accuse a named private person of crime by means of an indictment which does not make him a defendant." *Id.* at 801. In evaluating our authority to order expungement, we noted the unique status of the grand jury as an institution that "has been variously viewed as an arm of the court, as an instrumentality of the people, and as an adjunct of the judiciary but with the power to act, within certain bounds, independently of the traditional branches of government." *Id.* at 806.

In *In re Smith*, we extended *Briggs* beyond the limited context of grand jury indictments to encompass at least some statements made by prosecutors. 656 F.2d at 1106-07. We held that the Fifth Amendment rights of an unindicted third party were violated by his naming as the recipient of bribes in factual resumes presented by the Government during two guilty plea hearings. *Id.* The expansion of *Briggs* was justified, we concluded, because we could "think of no reason to distinguish between an official defamation originating from a federal grand jury or an Assistant United States Attorney."[4] *Id.* at 1106. We ordered that the mention of the third party be expunged and "that all pleadings, records, documents, orders and other papers concerning" the motion to strike and seal be sealed themselves. *Id.* at 1107.

In contrast, the Seventh Circuit reversed a district court's order sealing the identities of unindicted coconspirators whose statements were admitted pursuant to Rule 801(d)(2)(E). *Ladd*, 218 F.3d at 706. The court distinguished the case from *United States v. Smith*, in which the Third Circuit upheld the sealing of the identities of parties named in a bill of particulars. 776 F.2d 1104, 115 (3d Cir. 1985). Unlike the alleged coconspirators in *United States v. Smith*, the Seventh Circuit observed, the coconspirators in *Ladd* had been subject to a judicial determination confirming their connection to the defendant's activities:

> For coconspirator statements to be admitted pursuant to Rule 801(d)(2)(E), the Government must prove by a preponderance of the evidence that a conspiracy existed, that both the declarant and the defendant were members of the conspiracy, and that the statements were made in the course and in furtherance of the conspiracy. The district court, in admitting the statements, found that those

---

[4] Although *In re Smith* is the law of this circuit, we note that its expansion of the narrow holding of *Briggs* has left the law in this area somewhat unsettled, with no clear boundaries regarding when prosecutors are permitted to refer publicly to unindicted alleged coconspirators by name and when they may not. Because the Government has not appealed the ruling that NAIT's Fifth Amendment rights were violated, we do not have the occasion to clarify that issue here.

9

> requirements had been met. The status of coconspirator was, therefore, grounded in an evidentiary basis far more solid than the assertion of the United States Attorney.

*Ladd*, 218 F.3d at 704-05 (citations and footnote omitted). The court concluded that "[b]ecause the hearsay statements of the unindicted coconspirators were admitted into evidence, the public interest in disclosure outweighs the privacy interests of the coconspirators." *Id.* at 706.

Just as the context of a party's naming as a possible coconspirator is relevant to whether the naming was wrongful and whether it should be sealed, context is relevant to whether the naming of a party should be expunged. The allegations against NAIT were not raised in an indictment or in a factual resume offered during a plea proceeding, but rather in a Government brief in a fully contested case. Although NAIT appears to have been mentioned in anticipation of a possible Rule 801(d)(2)(E) dispute, no actual Rule 801(d)(2)(E) determination involving NAIT was ever made. It should be clear, therefore, that NAIT's inclusion in the brief was simply an untested allegation of the Government, made in anticipation of a possible evidentiary dispute that never came to pass. The allegation did not improperly enjoy the imprimatur of grand jury approval, nor was it erroneously conceded, implicitly or explicitly, as part of any plea. The allegation was offered in furtherance of a legitimate purpose—albeit a purpose that could have been equally well-served by filing Attachment A under seal. *See United States v. Anderson*, 55 F. Supp. 2d 1163, 1169 (D. Kan. 1999) ("The government clearly had a substantial interest in identifying these coconspirators for 801(d)(2)(E) purposes."). It is clear that the Government's procedural error, therefore, was its failure to file Attachment A under seal, not its decision to try to characterize the scope of the charged conspiracy or to lay the groundwork for relying on Rule 801(d)(2)(E). In light thereof, the district court did not abuse its discretion in declining to expunge the mention of NAIT in the newly sealed attachment.

## IV

NAIT argues that the district court's order and opinion contained an erroneous and irrelevant analysis of its ties to the HLF Defendants, and, therefore, simply unsealing the full opinion and order is not a sufficient remedy. The district court's analysis, NAIT argues, essentially tars it with the same brush of guilt by association that the Government used in its pre-trial brief, and we, therefore, should vacate that portion of the order.

As we discuss more fully above, judicial records are subject to a general presumption that they will be available to the public. The benefits of this policy—to both the public and the courts—are legion. Sometimes, however, the result is the inclusion of statements and information that may be embarrassing, irrelevant, or prone to mischaracterization. Nevertheless, our role, when considering an appeal from a district court, is to review that court's decision, *see* 28 U.S.C. §§ 1291-1292 (establishing jurisdiction for appeals from final and interlocutory decisions), not to edit it.

We, however, note that some of the information included in the order, although relevant to a Rule 801(d)(2)(E) inquiry, had one occurred, is irrelevant to the question of whether NAIT's Fifth Amendment rights were violated. Those rights were violated regardless of whether NAIT was in some manner, and at some point, associated with the HLF Defendants. Moreover, the district court's statement that there was "ample evidence to establish the association[] of . . . NAIT with HLF, the Islamic Association of Palestine ("IAP"), and Hamas" went outside the bounds of both what was required to resolve the Fifth Amendment question and what would have been required to resolve a Rule 801(d)(2)(E) issue. Had a Rule 801(d)(2)(E) issue actually arisen, the court would have engaged in a bounded inquiry into NAIT's involvement in a specific joint venture with a defendant, in the context of determining the admissibility of specific statements. Because no such Rule 801(d)(2)(E) issue arose during the trial, there was no judicial determination that evaluated NAIT's connection to

the case pursuant to a clear, circumscribed legal standard. *Cf. Ladd*, 218 F.3d at 705 (discussing disclosure of identity of unindicted coconspirator in context of elements of Rule 801(d)(2)(E) admission). Unlike a finding of Rule 801(d)(2)(E) "joint venturer" status, a broadly worded conclusion regarding a party's "association" with various other entities is not grounded in any legal rule that would give that conclusion substance and boundaries. As such, the district court's statements regarding NAIT's "association" with the HLF Defendants and other parties went beyond what was relevant to the any hypothetical evidentiary issue and may have obfuscated the underlying Fifth Amendment issue.

We note, as well, that the district court's findings do not amount to a ruling that NAIT took part in a criminal conspiracy to support Hamas. In fact, the Government has gone so far as to argue that it never, in the course of this litigation, labeled NAIT a criminal coconspirator.[5] The Government argues that it only asserted that NAIT was at least a "joint venturer" with the defendants. *See United States v. Layton*, 855 F.2d 1388, 1399 (9th Cir. 1988); *United States v. Saimiento-Rozo*, 676 F.2d 146, 149-50 (5th Cir. 1982); *United States v. Regilio*, 669 F.2d 1169, 1174 n.4 (7th Cir. 1981). One can qualify as a "joint venturer" for the purposes of Rule 801(d)(2)(E) merely by engaging in a joint plan—distinct from the criminal conspiracy charged—that was non-criminal in nature. *Saimiento-Rozo*, 676 F.2d at 149-50. Therefore, even if NAIT could have been accurately characterized as a joint venturer, that characterization does not carry an inherently criminal connotation.

We do not go so far as to "vacate" the analysis of the opinion and order, because our review is of its holding, not every step of its reasoning or its choice of words. Rather, we simply note that the district court included discussion of

---

[5] This argument stems from the tension between the characterization of Attachment A in the brief—which implied that it was a list of coconspirators—and the heading of Attachment A, which stated that it included joint venturers as well. Because the issue of whether NAIT's Fifth Amendment rights were violated was not contested, we need not reexamine that tension here.

issues that were not relevant to the disposition of the motion, which is obviously not a criminal adjudication. Any other conclusion on this record, beyond this narrow determination, would be legally premature.

V

NAIT seeks two additional forms of relief. First, it asks that we "publicly affirm" the district court's conclusion that its rights were violated. Second, it asks that we order that the district court make a public declaration that NAIT's rights were violated. As to the first request, we cannot affirm or reverse the district court's holding that NAIT's rights were violated, because the Government has not appealed it. The district court's ruling on that issue is the final determination thereof. As to the second request, it would be unnecessary to require the district court to make a public declaration of its earlier Fifth Amendment conclusion, because that conclusion will itself be public when the district court's opinion and order is unsealed.

VI

For the foregoing reasons, we REVERSE the district court's order only insofar as it requires that the opinion and order be sealed. All other requests for relief are DENIED. The case is REMANDED to the district court to unseal its order in accordance with this opinion.